

**LEASON ELLIS** INTELLECTUAL PROPERTY ATTORNEYS

August 5, 2022

**VIA ECF**

Honorable Nelson S. Román
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:   08/05/2022

One Barker Avenue
White Plains, New York 10601
**T**   914.821.8011
schwimmer@leasonellis.com

_____

**Martin B. Schwimmer**
PARTNER

<div style="text-align:center">

*Re:*   *CDC Newburgh Inc. v. STM Bags, LLC et al*, Civil Action No. 7:22-cv-01597-NSR

</div>

Dear Judge Román:

As counsel for Defendant Lienau Sales & Marketing LLC ("Lienau") in this action, in accordance with Your Honor's Individual Rules 3.A.ii and 3.F, we respectfully submit this letter requesting Your Honor's authorization to file a counterclaim against Plaintiff CDC Newburgh Inc. under New York State Civil Rights Law § 70-a ("Anti-SLAPP") and a pre-motion conference for leave to address this issue in Lienau's motion to dismiss. Dkt. 28 (opening brief due August 15, 2022). The grounds for Lienau's anticipated counterclaim and dismissal for violation of Anti-SLAPP follow.

Plaintiff's defamation suit is one of four it and related companies have filed in this District against four different trademark owners since December 2021. It should be dismissed as unlikely to succeed, brought in bad faith, and seeking to improperly discourage Defendants from publicly protesting Plaintiff's pattern of deceptive behavior on Amazon, and like ecommerce marketplaces.

All of the Counts asserted by Plaintiff (Dkt. 29) arise from Leinau (acting as a disclosed agent for co-defendant STM Bags, LLC ("STM")) submitting forms to Amazon.com requesting a takedown of certain product listings by Plaintiff.  Plaintiff alleges, in relevant part, that the takedown requests defame it, because its products do not infringe STM's trademarks and are not counterfeit.

**Plaintiff's Pattern of Responding to Takedown Notices With Bad-Faith Defamation Suits**

Leinau's opening brief in support of its motion to dismiss will establish that Plaintiff is not likely to prevail in its defamation cause.  Leinau's takedown requests were demand letters, privileged as pre-litigation communications. Further, Plaintiff will not be able to establish bad faith as Leinau's statements on the takedown forms contained, in part, opinions about a legal conclusion, based on accurate disclosed facts. The statements do not imply that the opinion was based on undisclosed facts. Moreover, Plaintiff's allegations of Lienau's bad faith are conclusory and not supported by any fact allegations that Leinau had actual knowledge that the goods were not counterfeit.

Additionally, Leinau will show that Plaintiff's suit is part of a pattern of bad-faith filings by Plaintiff and related companies. While researching its motion to dismiss this case, Leinau discovered three separate actions filed by Plaintiff or related entities within the previous 8 months, all of which assert defamation suits against various trademark owners who protested Plaintiff's allegedly infringing activities through the use of takedown procedures provided by ecommerce marketplaces including Amazon, Walmart, and eBay.  *See Executive Park Partners, LLC v. Benicci, Inc.*, 22-CV-02560 (PMH) (S.D.N.Y. 2022); *Unlimited Cellular v. Copper Compression LLC*, 22-cv-01400-VB (S.D.N.Y. 2022); *Unlimited Cellular v. Red Points Solutions SL*, 21-cv-10638-NSR (S.D.N.Y. 2021).

{11946/619917-000/03133285.2}

<div style="writing-mode:vertical-rl; text-align:center">MEMO ENDORSED</div>

# LEASON ELLIS

Honorable Nelson S. Román
August 5, 2022
Page 2

That Plaintiff acted in bad faith is evidenced by its decision to forego the expedient measure of responding to (an allegedly erroneous) takedown notice four times. Pursuant to, for example, Amazon's trademark policy (as was communicated to Plaintiff by Amazon), Plaintiff could have contacted the trademark owner STM and upon some showing of documentation, ask that the requests be withdrawn. Alternately (and probably preferably for it as a non-authorized seller), Plaintiff could have contacted Amazon directly to request reinstatement of the listings. Amazon's published policy is to reinstate listings if it receives support for legitimacy of sourcing, for example, invoices establishing that the seller obtained its goods lawfully.

Rather, Plaintiff purposefully did neither (presumably so in all four disputes). Leinau will show that within ninety minutes of receipt of the first takedown notice at bar, Plaintiff emailed Leinau and threatened it with a suit for alleged unspecified damages in an email signed by its "litigations manager." To the best of both Defendants' knowledge, to this day Plaintiff has never contacted either STM (or its agent Lienau) or Amazon with regard to support for any authenticity of these listings (even though to simply supply an invoice to Amazon would have likely resulted in the reinstatement of its listings[1]).

Based on the averments in the four complaints, it would have been drastically simpler for Plaintiff to respond to four takedown notices with four sets of invoices (if its sales were indeed lawful and product authentic). Instead, Plaintiff immediately, drastically escalated all four incidents by threatening and then filing four lawsuits. Plaintiff's pattern of conduct sends a chilling message to all trademark owners – which is that it will respond to all takedown notices with a defamation suit.

**Takedown Notices Expeditiously Advance the Public Interest In Trademark Enforcement**

Takedown notices are favored by public policy.  They help parties avoid litigation.  But they also are practically and sometimes legally a mandatory first step in enforcing trademark rights. Civil suits are of course expensive and not practical alternatives for small and medium businesses. Demand letters sent directly to alleged infringers are not always an effective available option in ecommerce marketplaces because listings, for example, on Amazon, tend to provide neither email nor street addresses for sellers.[2] Indeed, takedown notices act as demand letters and are the most efficient and effective means by which a trademark owner provides an Amazon seller with actual notice of a trademark owner's claims arising from product sales on Amazon.

Furthermore, trademark owners *must* notify Amazon if the rights owner wishes to preserve rights against Amazon itself. Amazon, as an intermediary, is liable under the *Tiffany v. eBay* standard *only when it is placed on actual notice of a specific infringement. Tiffany (NJ) Inc. v. eBay, Inc.*

---

[1] Because the unauthorized resale of any non-genuine STM goods by CDC would still constitute trademark infringement under prevailing law, though an invoice demonstrating lawful purchase might have been sufficient for Amazon to reinstate the listings, the production of such materials would not be sufficient to resolve STM's independent claims of infringement against CDC

[2] Plaintiff contends in its Amended Complaint that trademark owners are obligated to make trap purchases before taking policing actions. Trap buys are not required by courts or by Amazon, and are often impractical, for example, here where ten different product ASINs (Amazon Standard Identification Numbers) are involved.

{11946/619917-000/03133285.2}

# LEASON ELLIS

Honorable Nelson S. Román
August 5, 2022
Page 3

600 F.3d 93, 107-109 (2d Cir. 2010). Amazon clearly identifies the procedure under which it "accepts" notice that its listings infringe trademark rights. The takedown process is the only reliable means of placing Amazon on actual notice of a specific infringement and is a prerequisite to bringing suit against an intermediary ecommerce marketplace.

**The Integrity of the Amazon Marketplace is a Matter of Public Concern**

By filing its takedown requests, Leinau was acting on its rights to make speech that, while certainly in its and STM's interests, also were in the public interest. Public interest is to be construed broadly under the Anti-SLAPP statute. N.Y. Civil Rights Law § 76-a(1)(a).

The Amazon website is a public market as any Internet user can access it and view the listings (and the putative sources of those listings). The prerequisites for a user to leave comments on the site are minimal, which comments often concern the authenticity of the products or lack thereof. Furthermore, there exists an "ecosystem" for Amazon sellers on and outside the Amazon site, who discuss, among other subjects, practices for navigating Amazon's trademark policies including how to respond to takedown notices. In their totality, Amazon listings, user comments, seller commentary, and the dialogue between sellers, trademark owners, and Amazon, constitute a public forum about those ecommerce listings.

The public Amazon marketplace forum and Amazon's public practices resonate throughout the ecommerce world. Amazon sets the pace in all aspects for ecommerce – including for brand protection. Plaintiff acknowledges in its amended complaint that the communications and decisions within Amazon's takedown process have public ramifications, when it alleges that Defendants' actions will result in changes to Plaintiff's reputation but also to "Plaintiff's status with Amazon and potentially other online sales platforms . . . ."[3] (Dkt. 29 at ¶ 44).

The integrity of Amazon's marketplace is a matter of legitimate public concern. Amazon's Brand Protection Reports notes that it has spent $900 million and employs 12,000 employees to ensure brand integrity. *See* https://brandservices.amazon.com/progressreport (stating that a critical component of its brand protection strategy relies on providing the notice and takedown tools to brand owners).

Few trademark owners will risk filing takedown notices if they believe that they will have to defend against even a meritless defamation suit. The chilling effect of these suits will degrade the brand integrity of Amazon's marketplace as well as WalMart and eBay and other U.S. ecommerce marketplaces. Ecommerce is not going away anytime soon. If the takedown system is eviscerated by the prospect of bad faith defamation suits, those consumers will simply be at the mercy of those who abuse marketplace brand protection policies and who abuse the legal system as well.

As the Anti-SLAPP claim is also an affirmative defense to (and involves overlapping facts with) Plaintiff's defamation claim, Lienau respectfully requests that it be granted a pre-motion conference for leave to brief, and submit a factual affidavit in support of, the Anti-SLAPP defense, as part of its motion to dismiss, with an overall increased limit of 30 pages for the opening brief due August 15, 2022.

---

[3] The reference to other platforms confirms the clear relevance of the other three lawsuits, *supra* at 1-2.

# LEASON ELLIS

Respectfully submitted,

Martin Schwimmer
PARTNER

**The Court GRANTS grants Def. Lienau leave to address, and submit a factual affidavit in support of, the anti-SLAPP issue as part of its motion to dismiss. The Court further GRANTS Def. Lienau and Plaintiff leave to file their moving papers and opposition papers, respectively, in excess of the 25-page limitation, but not to exceed 30 pages.**

**The Clerk of the Court is directed to terminate the motion at ECF No. 33.**

**Dated: August 5, 2022
        White Plains, NY**

SO ORDERED:

HON. NELSON S. ROMÁN
UNITED STATES DISTRICT JUDGE