IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CDC NEWBURGH INC., | |
|       Plaintiff, | |
| v. | Case No. 7:22-cv-1597-NSR |
| STM BAGS LLC; and LIENAU SALES AND MARKETING, LLC (d/b/a LIENAU), | **JURY TRIAL DEMANDED** |
|       Defendants. | |
| STM BAGS LLC, | |
|       Counterclaim Plaintiff, | |
| v. | |
| CDC Newburgh Inc.; and JOHN DOES 1-10, | |
|       Counterclaim Defendants. | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT STM BAGS LLC TO FIRST AMENDED COMPLAINT

Defendant STM BAGS LLC ("STM"), by and through its undersigned counsel, responds to Plaintiff's First Amended Complaint as follows:

## ANSWER

### THE PARTIES

1.      The allegations set forth in paragraph one are admitted.

2.      The allegations set forth in paragraph two are admitted.

3.      The allegations set forth in paragraph three are admitted.

**JURISDICTION AND VENUE**

4.      The allegations set forth in paragraph four are legal conclusions and require no response.

5.      STM admits that its products are sold in this District, and that Plaintiff has been engaged in the unauthorized sale of STM's products in this District.  The remaining allegations set forth in paragraph five are denied.

6.      The allegations set forth in paragraph four are legal conclusions and require no response.

**NATURE OF THE ACTION**

7.      STM admits that Amazon.com was notified of Plaintiff's unauthorized sale of products purporting to be the same as STM's products.  The remaining allegations set forth in paragraph seven are denied.

**FACTS**

8.      The allegations set forth in paragraph eight are admitted.

9.      The allegations set forth in the first sentence of paragraph nine are admitted.  The allegations contained in the second sentence of paragraph nine are denied to the extent that they refer to facts underlying the case at issue.  The remaining allegations set forth in the second sentence of paragraph nine, to the extent that the same are legal conclusions, require no response.

10.      The allegations set forth in paragraph ten are denied for lack of information.

11.      The allegations set forth in paragraph eleven are admitted.

12.      The allegations set forth in paragraph twelve are denied for lack of information, insofar as Plaintiff is attempting to summarize the knowledge of unnamed individuals "familiar with e-commerce," and it is impossible for STM to confirm the accuracy of the same.  The

allegations set forth in paragraph twelve are further denied insofar as Plaintiff appears to suggest that a seller of genuine products is unable to respond to a notice listing removal by Amazon and quickly mitigate any damage otherwise caused by such removal.

13.     The allegations set forth in paragraph thirteen are denied for lack of information.

14.     The allegations set forth in paragraph fourteen are denied for lack of information.

15.     The allegations set forth in paragraph fifteen are denied.

16.     The allegations set forth in paragraph sixteen are denied for lack of information.

17.     The allegations set forth in paragraph seventeen are denied for lack of information.

18.     The allegations set forth in paragraph eighteen are admitted.

19.     The allegations set forth in paragraph nineteen are denied for lack of information, insofar as STM does not claim to know the full array of services offered by Lienau at a given time.

20.     The allegations set forth in paragraph twenty are denied for lack of information.

21.     The allegations set forth in paragraph twenty-one are admitted to the extent that Defendant Lienau has served as a representative of STM, with authority from STM, for which Defendant Lienau is compensated.  The remaining allegations set forth in paragraph twenty-one are denied.

22.     The allegations set forth in paragraph twenty-two are denied for lack of information concerning Defendant Lienau's financial interests.

23.     The allegations set forth in paragraph twenty-three are denied for lack of information concerning "relevant regards."

24.      The allegations set forth in paragraph twenty-four are denied for lack of information.

25.      The allegations set forth in paragraph twenty-five are denied for lack of information.

26.      The allegations set forth in paragraph twenty-six are denied for lack of information, and specifically denied insofar as Plaintiff alleges that any action was taken by Defendant Lienau "in retaliation for Plaintiff's demand for retraction."

27.      The allegations set forth in paragraph twenty-seven are denied.

28.      The allegations set forth in paragraph twenty-eight are denied.

29.      The allegations set forth in paragraph twenty-nine are denied.

30.      The allegations set forth in paragraph thirty are denied.

31.      The allegations set forth in paragraph thirty-one are denied.

32.      The allegations set forth in paragraph thirty-two are denied.

33.      The allegations set forth in paragraph thirty-three are denied.

**COUNT I**
**(Defamation)**

34.      STM restates its responses to the allegations set forth in paragraphs 1-33 as if fully set forth herein.

35.      The allegations set forth in paragraph thirty-five are denied, insofar as the timing and nature of the reports speak for themselves.

36.      The allegations set forth in paragraph thirty-six are denied.

37.      The allegations set forth in paragraph thirty-seven are denied.

38.      The allegations set forth in paragraph thirty-eight are denied.

39.     The allegations set forth in paragraph thirty-nine are denied for lack of information.

40.     The allegations set forth in paragraph forty are denied.

41.     The allegations set forth in paragraph forty-one are denied.

42.     The allegations set forth in paragraph forty-two are denied.

43.     The allegations set forth in paragraph forty-three are denied.

44.     The allegations set forth in paragraph forty-four are denied.

45.     The allegations set forth in paragraph forty-five are denied.

## COUNT II
### (Tortious Interference – Prospective Business Relations)

46.     STM restates its responses to the allegations set forth in paragraphs 1-45 as if fully set forth herein.

47.     The allegations set forth in paragraph forty-seven are denied.

48.     The allegations set forth in paragraph forty-eight are denied.

49.     The allegations set forth in paragraph forty-nine are denied.

50.     The allegations set forth in paragraph fifty are denied.

51.     The allegations set forth in paragraph fifty-one are denied.

52.     The allegations set forth in paragraph fifty-two are denied.

53.     The allegations set forth in paragraph fifty-three are denied.

## COUNT III
### (Declaratory Judgment of Non-Infringement)

54.     STM restates its responses to the allegations set forth in paragraphs 1-53 inclusive, as though fully set forth herein.

55.     STM admits that a present, genuine and justiciable controversy exists between STM and Plaintiff.  The remaining allegations set forth in paragraph fifty-five are denied.

56.   The allegations set forth in paragraph fifty-six are denied.

57.   The allegations set forth in paragraph fifty-seven are denied.

58.   The allegations set forth in paragraph fifty-eight are denied.

### COUNT IV
### (Common Law Unfair Competition)

59.   STM restates its responses to the allegations set forth in paragraphs 1-58

inclusive, as though fully set forth herein.

60.   The allegations set forth in paragraph sixty are denied.

61.   The allegations set forth in paragraph sixty-one are denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean

hands.

### Second Affirmative Defense

Plaintiff's damages, if any, were caused in whole or in part by the conduct of Plaintiff,

such that the same must be reduced by the comparative fault of Plaintiff, and Plaintiff is entitled

to no recovery from STM.

### Third Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel and

laches.

### Fifth Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted.

<u>**Sixth Affirmative Defense**</u>

Plaintiff's claims are barred by the doctrine of unjust enrichment.

<u>**Seventh Affirmative Defense**</u>

Plaintiff has suffered no actual injury.

<u>**Eighth Affirmative Defense**</u>

STM was not the proximate or legal cause of Plaintiff's damages, if any.

<u>**Ninth Affirmative Defense**</u>

Plaintiff's theories of recovery do not permit an award of attorney fees in favor of Plaintiff.

<u>**Tenth Affirmative Defense**</u>

STM is not responsible for Plaintiff's claimed damages for defamation, if any, inasmuch as any statement by STM to any third-party concerning Plaintiff was, in fact, true.

<u>**Eleventh Affirmative Defense**</u>

Any allegation set forth in Plaintiff's First Amended Complaint and not expressly admitted by STM is hereby denied.

WHEREFORE, STM prays the Court dismiss Plaintiff's First Amended Complaint with prejudice and at cost to Plaintiff, and further enter judgment in favor or STM and against Plaintiff for all attorney fees, court costs and expenses incurred in defending Plaintiff's First Amended Complaint, and for such further and additional relief as the Court deems just and equitable in the premises.

<u>**COUNTERCLAIMS**</u>

Defendant-Counterclaim Plaintiff STM Bags LLC ("STM") sues Plaintiff-Counterclaim Defendant CDC Newburgh, Inc. ("CDC Newburgh") and John Does 1-10 ("Doe Defendants")

(collectively, "Counterclaim Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 15 U.S.C. § 1125; false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(l)(b); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement.  These claims arise out of Counterclaim Defendants' infringement of STM's trademarks in connection with Counterclaim Defendants' unlawful and unauthorized advertisement and sale of STM®, STM Goods® and DUX® brand products on the Internet, including the unauthorized sale of potentially defective, damaged, used, and poor quality products bearing the STM®, STM Goods® and DUX® marks, which products are not covered by the STM warranty.

## PARTIES, JURISDICTION, AND VENUE

1.      Counterclaim Plaintiff STM is a Colorado limited liability company with its principal place of business in Poway, California.

2.      Counterclaim Defendant CDC Newburgh is a New York corporation with its principal place of business in Newburgh, New York, who operates and does business throughout the United States on www.amazon.com ("Amazon").

3.      The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of the Doe Defendants are unknown to STM.  Therefore, STM sues the Doe Defendants by a fictitious name.  STM is informed and believes, and on that basis alleges, that the Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, STM will seek leave to amend its Counterclaims accordingly.

## FACTUAL ALLEGATIONS

### Counterclaim Plaintiff And Its Trademarks

4.      STM develops, manufactures, markets, and sells premium mobile device, smartphone, and tablet cases and accessories under the STM® brand, the STM Goods® brand and DUX® brand.  STM sells such products exclusively through a network of authorized dealers ("Authorized Dealers").

5.      STM devotes a significant amount of time, energy, and resources toward protecting the value of the STM®, STM Goods® and DUX® brands, products, names, and reputation.  By distributing its products exclusively through its own website and through Authorized Dealers, STM is able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the STM®, STM Goods® and DUX® brands.  In the highly competitive mobile device accessories and outdoor products industries, quality, customer support, and warranties are fundamental to a customer's decision to purchase a product.

6.      To promote its brands, STM has established through use in commerce several trademarks, including several trademarks which have been registered with the United States Patent and Trademark Office (collectively, the "STM Trademarks"), including, but not limited to:  U.S. Trademark Reg. Nos. 4,532,588; 4,005,830; 5,777,610; 4,636,983; 5,412,682; 4,826,440; 5,729,584; 5,729,585; 4,587,377; 5,410,527; 3,150,771; 6,309,599; 6,567,386; 5,397,362; and 5,052,114.

7.      The registrations for the STM Trademarks are valid, subsisting and in full force and effect.

8.      Pursuant to 15 U.S.C. § 1065, the STM Trademarks serve as conclusive evidence of STM's ownership of the marks and exclusive right to use and direct the use of the marks in

commerce and in connection with the sale and distribution of STM® and DUX® brand products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

9.      STM actively uses, advertises, and markets the STM Trademarks in commerce throughout the United States.

10.     Consumers recognize the STM Trademarks as being associated with mobile device cases and accessories on the leading edge of innovation, quality, and durability, in those industries.

11.     Because of the quality, reliability, and durability of STM products, consumers trust the STM®, STM Goods® and DUX® brands and associate these brand names with high quality, reliable, and durable products.

12.     For all of these reasons, the STM Trademarks are widely recognized by the general consuming public of the United States and STM is recognized as the source of products bearing the STM Trademarks.

13.     Due to the superior quality and exclusive distribution of STM products, and because STM is uniquely recognized as the source of these high quality products, the STM Trademarks have considerable value.

**Online Marketplaces and the Challenges They Present to STM Product Quality**

14.     E-commerce retail sales have exploded over the past decade.  From 2007 to 2017, the percentage of retail sales that were completed through e-commerce channels rose from 3.1% to 8.2%.  https://www.digitalcommerce360.com/2017/02/l 7/us-e-commerce-sales-grow-156-2016/; https://fred.stlouisfed.org/series/ECOMPCTSA.

15.     In 2016, consumers spent $394.86 billion on e-commerce sales, a 15.6% increase from 2015.  *Id.*  The massive growth in e-commerce is being driven largely by sales on online

marketplaces.  For example, in 2016 United States consumers spent $147.0 billion in e-commerce sales on Amazon, a 31.3% increase from 2015.  *Id.*

16.    While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

17.    For example, consumers who purchase products through the online marketplaces cannot touch, inspect, or interact with the product before purchasing it and cannot select a different product if the one they initially select is damaged or has been tampered with.  Instead, consumers must trust that the product they choose over the Internet will arrive and be of the quality they expect and typically receive from the manufacturer.

18.    The online marketplaces also allow third parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers.  As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her identity to the consuming public.  This effectively prevents the manufacturer and the consumer from being able to reach unauthorized sellers, like Counterclaim Defendants, and address quality concerns.

19.    It is common for these unauthorized sellers to sell diverted products of inferior or otherwise questionable quality in shipments to unwitting consumers.  *See* https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.  Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust marketplaces and assume that the products they are buying through the marketplaces are genuine.  *See* https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

20.     Because these diverters operate anonymously on marketplaces and undertake great measures to maintain anonymity, manufacturers have no ability to exercise control over the products they sell.  A manufacturer's inability to exercise control over the quality of its products presents serious risks to the satisfaction and safety of consumers.

21.     The reality of online marketplaces also poses threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

22.     When purchasing products on a marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers. Indeed, on some marketplaces all sellers are listed under one product listing.

23.     When a customer purchases a product on a marketplace and receives a damaged, defective, or poor quality product, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller.

**STM Has Implemented Quality Controls to Combat the Problems Presented by the Online Marketplaces, Protect the Value of Its Trademarks, and to Ensure Customers Receive the Genuine, High Quality Products They Expect From STM**

24.     Recognizing the risks to consumers and to the STM reputation caused by the unauthorized sale of its products on the online marketplaces, STM has implemented quality controls that apply to its products sold in both brick and mortar retail settings and online, with the twin aims of protecting consumers and the value and goodwill associated with the STM Goods® and DUX® brands.

25.     The goal of these quality controls is to ensure that consumers who purchase STM products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the STM Goods® and DUX® names - including the STM warranty, quality, and reliability.

26.     The quality controls seek to minimize the likelihood that poor quality products will reach consumers.  Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and also protects the value and goodwill associated with the STM Trademarks.

27.     STM abides by its quality control requirements and requires its Authorized Dealers to abide by the quality control requirements.

28.     STM's ability to exercise these quality controls is essential to the integrity, safety, and quality of STM products, as well as the value of the STM Trademarks and other intellectual property.

### Authorized Dealers Are Required to Adhere to STM's Quality Control, Sales Methods and Customer Service Requirements

29.     STM maintains its strict quality controls over its products by conducting all sales either directly or through its Authorized Dealers.

30.     STM Authorized Dealers are required to abide by STM's Authorized Dealer Policy (the "STM Policy").

31.     Authorized Dealers are prohibited from selling products on third-party websites, including marketplaces such as Amazon, eBay, NewEgg.com, etc., without express prior written authorization from STM.

32.     These restrictions are essential to STM's ability to exercise its quality controls over STM's products, because they allow STM to know which of its Authorized Dealers are approved to sell online and where its Authorized Dealers are selling online.  If a quality issue arises through an online sale, STM can identify the Authorized Dealer that made the sale, contact the Authorized Dealer, and address the issue immediately.  STM is unable to take such action

against unauthorized sellers because it does not know who these sellers are and cannot obtain

their cooperation in addressing any product quality issues that may arise.

33.    In addition to restricting where and how Authorized Dealers can sell STM's

products,  the STM Policy also requires Authorized Dealers to adhere to STM's quality control

requirements related to returns and warranties applicable to STM's products.

34.    The STM Policy further imposes strict requirements related to product and brand

representation, including how the STM Trademarks, trade names and product images and

descriptions may be used and displayed.

35.    STM's quality control requirements are legitimate and substantial and have been

implemented so that STM can control the quality of goods manufactured and sold under the

STM Trademarks, so as to protect consumers, as well as the value and goodwill associated with

the STM Trademarks.

36.    STM's quality control requirements are also material, as they are designed to

protect consumers and prevent them from receiving poor quality products.  Consumers would

find it material and relevant to their purchasing decision to know whether a STM product they

were considering buying was being sold by an Authorized Dealer who is subject to STM's

quality control requirements, or whether the product is being sold by an unauthorized seller who

is not subject to, and does not abide by, STM's quality controls and over whom STM is unable to

exercise its quality controls.

**Genuine STM Products Come With A Limited Warranty;
Counterclaim Defendant's Products Do Not**

37.    STM products purchased from STM and Authorized Dealers come with the STM

Warranty.  The STM Warranty provides that a customer can receive a repair or replacement

14

product if a product has a defect in manufacturing, materials, or workmanship during the warranty period applicable to the product.

38.     As discussed above, STM cannot ensure the quality of the products sold by unauthorized sellers, like Counterclaim Defendants, who are not subject to STM's control.  For this reason, the STM Warranty is not available for STM products sold by unauthorized sellers, like Counterclaim Defendants, who do not comply with STM's quality controls and standards.

39.     The STM Warranty is a material component of genuine STM products.

40.     Consumers would find it material and relevant to their purchasing decision to know whether a STM product they were considering buying was covered by the STM Warranty. If a consumer knew a product did not come with the STM Warranty, the consumer would be less likely to purchase the product.

**Counterclaim Defendants Do Not Abide by STM's Quality Controls and Customer Service Requirements**

41.     By their own admission, Counterclaim Defendants have been selling and attempting to sell STM's products to consumers without authority to do so.  Counterclaim Defendants are not STM Authorized Dealers, and therefore do not abide by STM's quality control measures that are imposed upon genuine STM products.

42.     Counterclaim Defendants do not comply with STM's quality control requirements because they have not provided STM their business information or given STM an opportunity to vet them to determine if they meet STM's high level of standards that they demand of their Authorized Dealers.

43.     Counterclaim Defendants do not comply with STM's quality control requirements because they sell products on their Amazon storefront without prior approval.

44.     Counterclaim Defendants also do not comply with STM's quality control requirements because they have not disclosed to STM where they acquire products that bear the STM Trademarks.  Counterclaim Defendants' failure to provide such information prevents STM from determining if any products Counterclaim Defendants have sold are authentic, or subject to a recall or consumer safety information effort.

45.     Counterclaim Defendants do not comply with STM's quality control requirements because, upon information and belief, they sell products as "new" that have been previously sold, and potentially opened or repackaged.

46.     Counterclaim Defendants' failure to abide by these quality controls interferes with STM's quality controls and prevents STM from exercising control over the quality of products Counterclaim Defendants sell bearing the STM Trademarks.  STM is unable to audit Counterclaim Defendants to ensure they are complying with STM's quality controls and/or close their account if they fail to comply with STM's quality control requirements.

47.     Counterclaim Defendants' failure to comply with these quality controls also interferes with STM's quality controls because it prevents STM from being able to obtain Counterclaim Defendants' assistance with any recall or consumer safety information efforts that may arise related to any products they are selling or have sold in the past.

48.     Counterclaim Defendants also do not comply with STM's customer service requirements because they are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on how to use STM Products safely and properly.

49.     Counterclaim Defendants also do not comply with STM's customer service requirements because they do not, and are unable to, provide the advice to consumers that STM

requires of its Authorized Dealers and do not provide the type of ongoing support and response to consumer inquiries that STM requires of its Authorized Dealers.

**Counterclaim Defendants are Infringing on the STM Trademarks by Selling Products Bearing the STM Trademarks That Are Not Subject To, Do Not Abide By, And Interfere With STM's Quality Controls And Customer Service Requirements**

50.     For all of the reasons set forth above, the products Counterclaim Defendants sell bearing the STM Trademarks fail to adhere to the extensive and legitimate quality controls that STM exercises over STM products to protect consumers and its brand goodwill.

51.     The products sold by Counterclaim Defendants are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements.

52.     Because the products Counterclaim Defendants sell are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are materially different from genuine STM products.

53.     Because the products Counterclaim Defendants sell are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are not genuine STM products.

54.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to, and does, create customer confusion because customers who purchase products from Counterclaim Defendants believe they are purchasing genuine STM products, when, in fact, they are not.

55.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks infringes on the STM Trademarks and diminishes their value.

56.     Despite these facts, Counterclaim Defendants have sold products bearing the STM Trademarks through their Amazon storefront without STM's authorization and over its objection.

57.     Upon information and belief, through their interactive Amazon storefront, Counterclaim Defendants have advertised and marketed infringing products bearing the STM Trademarks to consumers in New York and across the nation.

58.     Upon information and belief, through their interactive Amazon storefront, Counterclaim Defendants have accepted and fulfilled orders of infringing products bearing the STM Trademarks from consumers in New York.

59.     Upon information and belief, through their interactive Amazon storefront, Counterclaim Defendants have shipped infringing products bearing the STM Trademarks to consumers in New York and across the nation.

**Counterclaim Defendants Are Infringing On The STM Trademarks By Selling Products Bearing The STM Trademarks That Do Not Come With The STM Warranty**

60.     As set forth above, genuine STM products purchased from STM and its Authorized Dealers who comply with STM's quality controls come with the STM Warranty.

61.     Because Counterclaim Defendants are not Authorized Dealers of STM products and do not comply with STM's quality controls, the products they sell bearing the STM Trademarks do not come with the STM Warranty.

62.     Because the products Counterclaim Defendants sell do not come with the STM Warranty, they are materially different from genuine STM products.

63.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to, and does, create customer confusion because customers who purchase products from Counterclaim Defendants believe they are purchasing genuine STM products that come with the STM Warranty, when, in fact, they are not.

64.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks infringes on the STM Trademarks and diminishes their value.

65.    Despite these facts, Counterclaim Defendants have sold products bearing the STM Trademarks through their Amazon storefront without STM's consent.

**STM Has Suffered Significant Harm As A Result Of Counterclaim Defendants' Conduct**

66.    As set forth above, the unauthorized sale of products bearing the STM Trademarks through unauthorized sellers, such as Counterclaim Defendants, has caused significant harm to the STM® and DUX® brands.

67.    When a consumer receives a non-genuine, damaged, or poor quality product that does not come with the STM Warranty from an unauthorized seller, such as Counterclaim Defendants, the consumer associates that negative experience with STM.  As such, Counterclaim Defendants' ongoing sale of unauthorized products bearing the STM Trademarks harms the STM® and DUX® brands.

68.    STM has suffered, and will continue to suffer, significant monetary harm as a result of Counterclaim Defendants' actions, including, but not limited to, loss of sales, damage to their intellectual property, and damage to their existing and potential business relations.

69.    STM has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

70.    STM is entitled to injunctive relief because Counterclaim Defendants will continue to attempt to unlawfully sell STM products and infringe on the STM Trademarks, causing continued irreparable harm to STM's reputation, goodwill, relationships, intellectual property, and brand integrity.

71.    Counterclaim Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

72.     Counterclaim Defendants' willful violations of the STM Trademarks and continued pattern of misconduct demonstrate intent to harm STM.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)(l)(a)**

73.     STM hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

74.     STM is the owner of the STM Trademarks.

75.     STM has registered the STM Trademarks with the United States Patent and Trademark Office.

76.     The STM Trademarks are valid and subsisting trademarks in full force and effect.

77.     Counterclaim Defendants willfully and knowingly used, and continue to use, the STM Trademarks in interstate commerce for purposes of selling products bearing the STM Trademarks on the Internet without STM's consent.

78.     The products Counterclaim Defendants sell bearing the STM Trademarks are not authorized for sale by STM.

79.     The products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty.

80.     STM has established and implemented legitimate and substantial quality controls that genuine STM products must comply with.

81.     STM abides by these quality controls and requires all of its Authorized Dealers to abide by these quality controls.

82.     STM's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

83.     The products Counterclaim Defendants sell bearing the STM Trademarks are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements.

84.     Because the products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are materially different from genuine STM Products.

85.     Because the products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are not genuine STM products.

86.     Counterclaim Defendants' unauthorized sale of products bearing the STM's Trademarks interferes with STM's quality controls and ability to exercise quality control over products bearing the STM Trademarks.

87.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer come with the STM Warranty and are subject to and abide by STM's quality controls when, in fact, they do not.

88.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer for sale are genuine STM Products when, in fact, they are not.

89.     Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer for sale are sponsored by, authorized by, or otherwise connected with STM when, in fact, they are not.

90.     Counterclaim Defendants' unauthorized use of the STM Trademarks has infringed upon and materially damaged the value of the STM Trademarks and caused significant damage to STM's business relationships.

91.     As a proximate result of Counterclaim Defendants' actions, STM has suffered, and continues to suffer immediate and irreparable harm.  STM has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

92.     STM is entitled to recover its damages caused by Counterclaim Defendants' infringement of the STM Trademarks and disgorge Counterclaim Defendants' profits from their willfully infringing sales and unjust enrichment.

93.     STM is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Counterclaim Defendants' infringement and unless Counterclaim Defendants are permanently enjoined, STM will suffer irreparable harm.

94.     STM is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Counterclaim Defendants willfully, intentionally, maliciously, and in bad faith infringed on the STM Trademarks.

**SECOND CAUSE OF ACTION**
**False Advertising**
**15 U.S.C. § 1125(a)(l)(b)**

95.     STM hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

96.    STM is the owner of the STM Trademarks.

97.    STM has registered the STM Trademarks with the United States Patent and Trademark Office.

98.    The STM Trademarks are valid and subsisting trademarks in full force and effect.

99.    Through their Amazon storefront, Counterclaim Defendants have willfully and knowingly used, and continue to use, the STM Trademarks in interstate commerce for purposes of advertising, promoting, and selling STM products without STM's consent.

100.    Counterclaim Defendants' advertisements and promotions of their products unlawfully using the STM Trademarks have been disseminated to the relevant purchasing public.

101.    Counterclaim Defendants have used, and continue to use, the STM Trademarks to falsely advertise that the products they sell, including, but not limited to, falsely advertising that the products they sell come with the STM Warranty when, in fact, they do not.

102.    STM products purchased from STM and its Authorized Dealers who comply with STM's quality controls come with the STM Warranty.

103.    STM cannot exercise its quality controls over products sold by unauthorized sellers, such as Counterclaim Defendants.  As such, products bearing the STM Trademarks that are sold by unauthorized sellers who do not comply with STM's quality controls do not come with the STM Warranty.

104.    The products Counterclaim Defendants sell bearing the STM Trademarks are not authorized for sale by STM.

105.    The products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty.

106.    Counterclaim Defendants falsely advertise that the products they sell bearing the STM Trademarks come with the STM Warranty.  As discussed above, Counterclaim Defendants' product listings specifically state they come with the STM Warranty.  Counterclaim Defendants also advertise that the products they sell are "New" products that come with the STM Warranty.

107.    This representation is false because the products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty.

108.    Counterclaim Defendants' use of the STM Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the STM Trademarks misrepresents the nature, characteristics, qualities, and origin of Counterclaim Defendants' products because it suggests that the products come with the STM Warranty when, in fact, they do not.

109.    Counterclaim Defendants' use of the STM Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Counterclaim Defendants offer for sale are genuine and authentic STM Products that come with the STM Warranty when, in fact, they are not.

110.    Counterclaim Defendants' use of the STM Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Counterclaim Defendants offer for sale are sponsored, authorized, or otherwise connected with STM when, in fact, they are not.

111.    Counterclaim Defendants' unauthorized and deceptive use of the STM Trademarks is material and likely to influence customers to purchase the products they sell, as

consumers are likely to believe that products Counterclaim Defendants advertise using the STM Trademarks are genuine STM Products that come with the STM Warranty when, in fact, they do not.

112.    Counterclaim Defendants' unauthorized use of the STM Trademarks in advertising, and otherwise, infringes on the STM Trademarks.

113.    As a proximate result of Counterclaim Defendants' actions, STM has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

114.    STM is entitled to recover its damages caused by Counterclaim Defendants' infringement of the STM Trademarks and disgorge Counterclaim Defendants' profits from their willfully infringing sales and unjust enrichment.

115.    STM is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Counterclaim Defendants' infringement and unless Counterclaim Defendants are permanently enjoined, STM will suffer irreparable harm.

116.    STM is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Counterclaim Defendants willfully, intentionally, maliciously, and in bad faith infringed on the STM Trademarks.

## THIRD CAUSE OF ACTION
### Unfair Competition 15 U.S.C. § 1125(a)

117.    STM hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

118.    STM is the owner of the STM Trademarks.

119.    STM has registered the STM Trademarks with the United States Patent and Trademark Office.

120.    The STM Trademarks are valid and subsisting trademarks in full force and effect.

121.    Counterclaim Defendants have willfully and knowingly used, and continue to use, the STM Trademarks in interstate commerce for purposes of selling STM Products without STM's consent.

122.    The products Counterclaim Defendants advertise and sell bearing the STM Trademarks are not authorized for sale by STM.

123.    The products Counterclaim Defendants advertise and sell bearing the STM Trademarks do not come with the STM Warranty.

124.    STM has established and implemented legitimate and substantial quality controls that genuine STM Products must comply with.

125.    STM abides by these quality controls and requires all of its Authorized Dealers to abide by these quality controls.

126.    STM's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

127.    The products Counterclaim Defendants advertise and sell bearing the STM Trademarks are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements.

128.    Because the products Counterclaim Defendants advertise and sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are materially different from genuine STM Products.

129.    Because the products Counterclaim Defendants advertise and sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by,

and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants advertise and sell are not genuine STM Products.

130.    Counterclaim Defendants' unauthorized advertisement and sale of products bearing the STM Trademarks interferes with STM's quality controls and ability to exercise quality control over products bearing the STM Trademarks.

131.    Counterclaim Defendants' unauthorized advertisement and sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer come with the STM Warranty and are subject to and abide by STM's quality controls when, in fact, they are not.

132.    Counterclaim Defendants' unauthorized advertisement and sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants advertise and offer for sale are genuine STM Products when, in fact, they are not.

133.    Counterclaim Defendants' unauthorized advertisement and sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with STM when, in fact, they are not.

134.    Counterclaim Defendants' unauthorized use of the STM Trademarks has infringed upon and materially damaged the value of the STM Trademarks and caused significant damage to STM's business relationships.

135.    As a proximate result of Counterclaim Defendants' actions, STM has suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

136.    STM is entitled to recover their damages caused by Counterclaim Defendants'
infringement of the STM Trademarks and disgorge Counterclaim Defendants' profits from their
willfully infringing sales and unjust enrichment.

137.    STM is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no
adequate remedy at law for Counterclaim Defendants' infringement and unless Counterclaim
Defendants are permanently enjoined, STM will suffer irreparable harm.

138.    STM is entitled to enhanced damages and attorneys' fees under 15 U.S.C.
§ 1117(a) because Counterclaim Defendants willfully, intentionally, maliciously, and in bad faith
infringed on the STM Trademarks.

**FOURTH CAUSE OF ACTION**
**Trademark Dilution 15 U.S.C. § 1125(c)**

139.    STM hereby incorporates the allegations contained in the foregoing Paragraphs as
if fully set forth herein.

140.    STM is the owner of the STM Trademarks.

141.    STM has registered the STM Trademarks with the United States Patent and
Trademark Office.

142.    The STM Trademarks are valid and subsisting trademarks in full force and effect.

143.    STM has expended substantial time, effort, money, and resources advertising and
promoting STM Products with the STM® trademark.

144.    STM markets, advertises, and sells products using the STM® and DUX®
trademarks throughout the United States.

145.    The STM® and DUX® Trademarks are the means by which STM Products are
distinguished from others in the marketplace.

146.    The STM name, brand, and image is well-recognized by consumers throughout the United States for STM's mobile device cases and accessories, and outdoor products.

147.    Consumers recognize and associate the STM name with quality.

148.    STM has implemented legitimate and substantial quality controls that it requires all of its Authorized Dealers to follow to protect the STM name and brand.

149.    Because of the quality, durability, and dependability of STM Products and STM's use of the STM® trademark, consumers trust the STM name and STM Products.

150.    As a result of STM's long, continuous, and exclusive use of the STM® and DUX® Trademarks, the STM® and DUX® Trademarks have acquired a secondary meaning associated by consumers and the public.

151.    STM is widely recognized as the designated source of goods bearing the STM® and DUX® Trademark.

152.    For these reasons, the STM® and DUX® Trademarks are famous, distinctive, and widely recognized marks by the consuming public.

153.    After the STM® and DUX® Trademarks became famous, Counterclaim Defendants willfully and knowingly used, the STM® and DUX® Trademarks in commerce for purpose of selling products on the Internet without STM's consent.

154.    The products Counterclaim Defendants sell bearing the STM® and DUX® Trademarks do not come with the STM Warranty and are not subject to, do not abide by, and interfere with STM's quality controls.

155.    The products Counterclaim Defendants sell bearing the STM® and DUX® Trademarks are materially different from genuine STM Products sold by STM and its Authorized Dealers.

156.     Because the products Counterclaim Defendants sell do not come with the STM Warranty and are not subject to, do not abide by, and interfere with STM's quality controls, consumers who purchase products from Counterclaim Defendants are more likely to receive a poor quality, damaged, or defective product and are more likely to have an unsatisfactory customer experience.

157.     Consumers who receive poor quality products that do not come with the STM Warranty from Counterclaim Defendants associate that negative experience with STM and the STM® and DUX® Trademarks.

158.     As a result, Counterclaim Defendants' unauthorized and willful use of the STM Trademarks has tarnished and diluted the STM Trademarks.

159.     As a proximate result of Counterclaim Defendants' actions, STM has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

160.     STM is entitled to recover its damages caused by Counterclaim Defendants' infringement of the STM® and DUX® Trademarks and disgorge Counterclaim Defendants' profits from their willfully infringing sales and unjust enrichment.

161.     STM is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Counterclaim Defendants' infringement and unless Counterclaim Defendants are permanently enjoined, STM will suffer irreparable harm.

162.     STM is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Counterclaim Defendants willfully, intentionally, maliciously, and in bad faith infringed on the STM® and DUX® Trademarks.

## FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement

163.    STM hereby incorporates the allegations contained in the foregoing Paragraphs as if fully set forth herein.

164.    STM is the owner of the STM Trademarks.

165.    STM has registered the STM Trademarks with the United States Patent and Trademark Office.

166.    The STM Trademarks are valid and subsisting trademarks in full force and effect.

167.    The STM Trademarks are distinctive and widely recognized by the consuming public.  STM Products are sold and purchased through STM's Authorized Dealers throughout the United States, including New York.

168.    STM is widely recognized as the designated source of goods bearing the STM Trademarks.

169.    Counterclaim Defendants willfully and knowingly used, and continue to use, the STM Trademarks in interstate commerce for purposes of selling STM Products on the Internet without STM's consent.

170.    The products Counterclaim Defendants sell bearing the STM Trademarks are not authorized for sale by STM.

171.    The products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty.

172.    STM has established and implemented legitimate and substantial quality controls that genuine STM Products must comply with.

173.    STM abides by these quality controls and requires all of its Authorized Dealers to abide by these quality controls.

174.   STM's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

175.   The products Counterclaim Defendants sell bearing the STM Trademarks are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements.

176.   Because the products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are materially different from genuine STM Products.

177.   Because the products Counterclaim Defendants sell bearing the STM Trademarks do not come with the STM Warranty, and are not subject to, do not abide by, and interfere with STM's quality controls and customer service requirements, the products Counterclaim Defendants sell are not genuine STM Products.

178.   Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks interferes with STM's quality controls and ability to exercise quality control over products bearing the STM Trademarks.

179.   Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer come with the STM Warranty and are subject to and abide by STM's quality controls when, in fact, they do not.

180.   Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it

suggests that the products Counterclaim Defendants offer for sale are genuine STM Products when, in fact, they are not.

181.    Counterclaim Defendants' unauthorized sale of products bearing the STM Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Counterclaim Defendants offer for sale are sponsored by, authorized by, or otherwise connected with STM when, in fact, they are not.

182.    Counterclaim Defendants' unauthorized use of the STM Trademarks has infringed upon and materially damaged the value of the STM Trademarks and caused significant damage to STM's business relationships.

183.    As a proximate result of Counterclaim Defendants' actions, STM has suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

184.    Plaintiffs are entitled to recover exemplary damages because Counterclaim Defendants have acted with fraud, malice, and willful and wanton conduct.

## PRAYER FOR RELIEF

WHEREFORE, STM prays for relief and judgment as follows:

A.    Judgment in favor of STM and against Counterclaim Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    That a permanent injunction be issued enjoining Counterclaim Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Counterclaim Defendants,

and all of those in active concert and participation with Counterclaim Defendants (the "Enjoined Parties") as follows:

    (i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all STM products;

    (ii)    Prohibiting the Enjoined Parties from using the STM Trademarks and other intellectual property in any manner, including advertising on the Internet;

    (iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all STM products as well as any products bearing the STM Trademarks or STM name, or using STM Patents;

    (iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the STM Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Counterclaim Defendants have sold bearing this trademark;

    (v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any STM products, or the STM Trademarks;

(vi)   Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any uses of the STM Trademarks which associate STM Products or the STM Trademarks with the Enjoined Parties or the Enjoined Parties' website; and

(vii)   Requiring the Enjoined Parties to take all action to remove unauthorized uses of the STM Trademarks from the Internet, including from the website www.amazon.com.

C.   An award of attorneys' fees, costs, and expenses;

D.   Such other and further relief as the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Defendant STM BAGS LLC demands a trial by jury on all issues so triable.

DATED:  August 15, 2022.

SHERMAN & HOWARD L.L.C.

s/ James G. Sawtelle
James G. Sawtelle (Admitted Pro Hac Vice)
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940
Email:  jsawtelle@shermanhoward.com

ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIM PLAINTIFF STM BAGS LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2022, I filed a true and correct copy of the foregoing

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT**

**STM BAGS LLC TO FIRST AMENDED COMPLAINT** through the Court's CM/ECF

System which will send notification to the following:

      Jason B. Lattimore, Esq.
      The Law Offices of Jason B. Lattimore, Esq. LLC
      23 Madison Avenue, Suite 400
      Morristown, NJ  07906
      Email:  jason@lattimorelaw.com

      Robert M. Isackson, Esq.
      Martin B. Schwimmer, Esq.
      Stefanie M. Garibyan, Esq.
      Leason Ellis LLP
      One Barker Avenue
      White Plains, NY  10601
      Email:  isackson@leasonellis.com
             schwimmer@leasonellis.com
             garibyan@leasonellis.com

                    <u>s/ Donna L. Fouts</u>
                    Donna L. Fouts, Practice Assistant