## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CDC NEWBURGH INC.,

      *Plaintiff*,

v.

STM BAGS LLC; AND LIENAU SALES AND
MARKETING, LLC (D/B/A LIENAU),

      *Defendants*.

Civil Action No. 7:22-cv-1597-NSR

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIENAU SALES AND MARKETING, LLC'S MOTION TO DISMISS AND ADD A COUNTERCLAIM

Defendant Lienau Sales and Marketing, LLC (d/b/a Lienau) ("Lienau") through its undersigned counsel, submit this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (Dkt. 29) of Plaintiff CDC Newburgh Inc. ("CDC"), pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the Anti-SLAPP statute. N.Y. Civil Rights Law §§ 70-a, 76-a.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARDS ........................................................................................... 7

SUMMARY OF ARGUMENT .................................................................................. 7

ARGUMENT ....................................................................................................... 8

A.    PLAINTIFF HAS FAILED TO STATE A DEFAMATION CLAIM BECAUSE LIENAU'S STATEMENTS, CONTAINED IN REPORTS TO AMAZON SEEKING PLAINTIFF'S RESPONSE CONSTITUTE PRIVILEGED UNACTIONABLE LEGAL OPINION. ..... 8

    1.    Introduction ................................................................................ 8

    2.    The Context of the Statements Illustrates That Pursuant to Amazon's Brand Policy, Lienau Communicated a good-faith legal opinion to Amazon To Ascertain The Authenticity of Plaintiff's Goods, Which Plaintiff Refused To Do .............. 10

    i.    The Reports Themselves Show the Accurate Wording of the Statements And Not Plaintiff's Misquotation ................................................................ 10

    ii.    Plaintiff Materially Mischaracterizes Amazon's Policy As "Automatic" even though the outcome is dependent on a Seller's Response ................................. 11

    3.    The Accurate Statements Read As Opinions On Their Faces ............................. 13

    4.    The Statements Are Privileged Demand Letters.................................... 14

    5.    Plaintiff Has Not Alleged A Factual Basis For Bad Faith Such that Its Prelitigation Communications Would Lose their Qualified Privilege................. 15

    i.    Plaintiff did not allege that Lienau had actual knowledge that the goods were not counterfeit ............................................................................... 16

    ii.    Lienau investigated the nature of the Goods, did not shield itself from information, and *requested* that Amazon ask Plaintiff ..................................... 17

B.    PLAINTIFF HAS NOT ADEQUATELY PLEADED THE ELEMENTS SUFFICIENT TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS. .............................................................. 20

C.    PLAINTIFF LACKS STANDING TO BRING A DECLARATORY JUDGMENT ACTION OF NON-INFRINGEMENT BECAUSE THERE IS NO LANHAM ACT DISPUTE BETWEEN PLAINTIFF AND LIENAU. ................................................. 23

D.   PLAINTIFF DOES NOT PLEAD ANY ACTIONABLE THEORY OF PALMING OFF OR MISAPPROPIRATION UNDER NEW YORK STATE UNFAIR COMPETITION LAW. ...................................................................................................................... 25

E.   PLAINTIFF'S DEFAMATION SUIT WAS INTENDED TO HARRASS AND INTIMIDATE LIENAU FROM POLICING AND ASSERTING STM'S TRADEMARK RIGHTS IN A PUBLIC FORUM, AND THUS VIOLATES NEW YORK'S ANTI-SLAPP STATUTE ........................................................................................... 26

    1.   The Defamation Cause of Action Was Brought in Bad Faith ............................. 28

    2.   Takedown Notices Expeditiously Advance the Public Interest In Trademark Enforcement ...................................................................................................... 28

    3.   The Integrity of the Amazon Marketplace is a Matter of Public Concern ........... 29

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) ................................................................. 20

*Ace Arts, LLC v. Sony/ATV Music Publishing, LLC*,
   56 F. Supp. 3d 436 (S.D.N.Y. 2014) ...................................................... 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 7

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) .................................................... 20

*Biro v. Conde Nast*,
   963 F.Supp.2d 255 (S.D.N.Y. 2013) ...................................................... 16

*Brimelow v. New York Times Co.*,
   No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ...................... 19

*Brimelow v. The New York Times Co.*,
   142 S. Ct. 1210 (2022) .......................................................................... 19

*BYD Co. Ltd. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1,
   2022) .................................................................................................. 7, 11

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018) .................................................... 25

*Carroll v. Trump*,
   No. 20-CV-7311 (LAK), 2022 WL 748128 (S.D.N.Y. Mar. 11, 2022). ...... 27

*Celle v. Filipino Rep. Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ................................................................. 10

*Chandok v Klessig*,
   632 F.3d 803 (2d Cir. 2011) ....................................................... 15, 18, 19

*Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ........................................................... 23

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) ............................................................. 13, 14

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001) ................................................................. 9

*Coleman v. Grand*,
No. 21-800 (2d Cir.) ........................................................................................................... 27

*Conti v. Doe*,
535 F. Supp. 3d 257 (S.D.N.Y. 2021) .......................................................... 15, 16, 18

*Dongguk Univ. v. Yale Univ.*,
734 F.3d 113 (2d Cir. 2013) ............................................................................................ 20

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
556 F.2d 113 (2d Cir. 1977) ................................................................................... 17, 18

*Executive Park Partners, LLC v. Benicci, Inc.*,
22-CV-02560 (PMH) (S.D.N.Y. 2022) .................................................................... 1

*Frascatore v. Blake*,
344 F. Supp. 3d 481 (S.D.N.Y. 2018) ......................................................................... 9

*Front, Inc. v. Khalil*,
24 N.Y.3d 713 (N.Y. 2015) .......................................................................................... 15

*Germain v. M & T Bank Corp.*,
111 F. Supp. 3d 506 (S.D.N.Y. 2015) .................................................................. 10

*Godinger Silver Art Ltd. v. Hirschkorn*,
433 F. Supp. 3d 417 (E.D.N.Y. 2019) ................................................................... 21

*Grayson v. Ressler & Ressler*,
271 F. Supp. 3d 501 (S.D.N.Y. 2017) .................................................................... 23

*Liberman v Gelstein*,
80 N.Y.2d 429 (N.Y. 1992) .................................................................................. 15, 19

*Lindell v. Mail Media Inc.*,
No. 1:21-CV-667-PAC, 2021 WL 5910000, (S.D.N.Y. Dec. 10, 2021) ..................... 9

*Lombardo v. Dr. Seuss Enters., L.P.*,
No. 16 Civ. 9974 (AKH), 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017) ............... 15, 16, 20, 21

*Margolies v. Rudolph et al.*,
No. 21-CV-02447-SJB, 2022 WL 2062460 (E.D.N.Y. June 6, 2022) .............................. 27, 29

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007). ..................................................................................................... 24

*MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*,
No. 20-CV-1360 (MKB), 2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021) ..................... 21

v

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
   457 F. Supp. 3d 207 (E.D.N.Y. 2020)................................................................... 26

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................. 10

*Novagold Res. V. J Capital Research LLC*, 20-CV-2875 (LDH) (PK),
   2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ....................................................... 27

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................................................... 9

*Sasson v. Hachette Filipacchi Presse*,
   No. 15-CV-00194 (VM)(SN), 2016 WL 1599492 (S.D.N.Y. Apr. 20, 2016) ........... 7

*Shipping Fin. Servs. Corp. v. Drakos*,
   140 F.3d 129 (2d Cir. 1998) ................................................................................... 7

*Tiffany (NJ) Inc. v. eBay, Inc.*
   600 F.3d 93 (2d Cir. 2010) ................................................................................... 15

*Unlimited Cellular, Inc. v. Copper Compression LLC*,
   22-cv-01400-VB (S.D.N.Y. 2022) .......................................................................... 1

*Unlimited Cellular, Inc. v. Red Points Solutions SL*,
   21-cv-10638-NSR (S.D.N.Y. 2021) ........................................................................ 1

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
   890 F. Supp. 2d 398 (S.D.N.Y. 2012) .................................................................. 24

**Statutes**

N.Y. Civil Rights Law § 70-a .......................................................................... 1, 2, 34

N.Y. Civil Rights Law § 76-a ................................................................................ 1, 2

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................................................. 1, 7, 27

Fed. R. Civ. P. 12(b)(6).................................................................................. passim

## PRELIMINARY STATEMENT

This lawsuit is one of four filed within the Southern District of New York within the past nine months in which Plaintiff or related companies sued four different trademark owners or representatives of trademark owners, for, *inter alia*, defamation, in response to their protests of Plaintiff's unauthorized sale of goods on the ecommerce websites Amazon, eBay, and Walmart, using those sites' published takedown notice procedures.[1]

Plaintiff alleges that it is an unauthorized reseller of goods on Amazon.com ("Amazon"). Co-Defendant STM Bags, LLC ("STM") manufactures goods under its trademarks STM and DUX.  Defendant and movant Lienau Sales and Marketing, LLC ("Lienau") is an independent, commissions-based sales representative retained by STM to sell its products on Amazon and police Amazon listings to ensure that no infringing products are sold under its client's trademarks.

In February 2022, Lienau, utilizing Amazon's brand registry process,[2] notified Amazon via takedown report (a "Report") that it believed that an entity named Plaza Accessories ("Plaza") was making unauthorized use of the STM trademark in relation to certain mobile phone case products (the "Products").  Lienau's Report stated plainly that Lienau and STM had reviewed the matter and that it had determined that Plaza had not purchased the Products directly from STM or its two authorized sellers. Accordingly, pursuant to Amazon's infringement reporting procedure, Lienau reported that it assumed the Products were counterfeit and requested that Amazon

---

[1] Plaintiff filed this lawsuit on February 25, 2022.  Between mid-December 2021 and March 2022, it filed two other suits alleging defamation against two trademark owners, *Unlimited Cellular, Inc. v. Red Points Solutions SL*, 21-cv-10638-NSR (S.D.N.Y. 2021) and *Unlimited Cellular, Inc. v. Copper Compression LLC*, 22-cv-01400-VB (S.D.N.Y. 2022), and a third against an agent that monitors Amazon listings for multiple trademark owners, *Executive Park Partners, LLC v. Benicci, Inc.*, 22-CV-02560 (PMH) (S.D.N.Y. 2022).
[2] Amazon's Brand Registry Program is a suite of tools and services provided to brand owners and their agents to protect their intellectual property on Amazon, whether those brand owners are sellers on Amazon or not.  Declaration of Martin S. Schwimmer, dated Aug. 15, 2022 ("Schwimmer Decl.") Ex. 3 (Amazon Brand Registry).

temporarily suspend the listing pending Plaza's submission of documentation of authenticity to STM or Amazon.

Amazon processed Lienau's Report and sent a Notice to Plaza that it had **_temporarily_** removed the listing because of the Report it had received (a "Notice"). The Notice advised Plaza that its Products could be relisted if it provided the trademark owner or Amazon with proof that the Products were authentic.

Upon information and belief, Plaza never responded to Amazon regarding the Goods.  First Declaration of Temple Powers, dated Aug. 15, 2022 ("Powers Decl.") ¶ 21.  Accordingly, the listings were not reinstated.

For the reasons that follow, Plaintiff's remaining four causes of action in this case are not viable and should be dismissed with prejudice, as Plaintiff has already failed to cure the deficiencies after amending its Complaint.  Pursuant to the Court's Order, Lienau also seeks leave to file a Counterclaim pursuant to N.Y. Civil Rights Law §§ 70-a, 76-a. *See* Dkt. 34.

Procedural History

Plaintiff initially asserted six causes of action against Lienau (*see generally* Dkt. 1). Lienau's pre-motion letter pointed out their deficiencies (*see* Dkt. 21).  On consent, Plaintiff then filed a First Amended Complaint asserting only four causes of action (*see generally* Dkt. 29 ("FAC")).  On August 5, 2022, the Court granted Lienau's request (Dkt. 33) to seek leave to file a counterclaim against Plaintiff for violation of ANTI-SLAPP laws and address that issue in the present motion.  *See* Dkt. 34.

Plaintiff's Allegations in the First Amended Complaint

Plaintiff alleges that it is a "non-authorized reseller" of "various consumer products" that it does not purchase from manufacturers directly but is nevertheless "lawfully" allowed to "resell" on Amazon and other platforms "often at a discount."  FAC ¶¶ 8-10.

Amazon purportedly removes product listings when trademark owners submit reports of counterfeit sales (i.e., counterfeit-reports), but allegedly does not remove authentic products that are sold by unauthorized resellers. *Id.* ¶¶ 12-13. According to Plaintiff, "trademark owners" take advantage of "Amazon's automatic takedown policy" to remove listings "without actually confirming that the goods are counterfeit" or "knowing the goods are authentic." *Id.* ¶ 14.

"On information and belief," when Amazon removes an unauthorized reseller's product "in response to a counterfeiting report," Amazon's algorithm takes this into consideration and reduces the frequency with which the unauthorized reseller's "other products will be displayed in response to customer product searches." *Id.* ¶ 16. Amazon "may suspend" an unauthorized reseller's "entire account based on the repeated alleged violations." *Id.* ¶ 17.

Defendant STM sells various consumer products "under the STM and DUX trademarks," and Defendant Lienau "provides sales, marketing, analytics and logistics services to companies" such as STM in the "consumer products sector." *Id.* ¶¶ 18-19. Lienau is "a commission-based sales representative of STM" with authority to "enforce STM's trademark rights by reporting violations of such rights." *Id.* ¶ 21. Lienau has a wealth of experience dealing with Amazon for various clients and was "instrumental in helping [a client] clean up fraudulent products on" Amazon. *Id.* ¶ 20.

Lienau is not alleged to be an owner or licensee of any of STM's trademarks. Rather, it is alleged to have a commercial interest in the successful sales of STM's products. *Id.* ¶ 22.

On February 15, 2022, Lienau reported Plaintiff[3] to Amazon for "selling counterfeit versions of the STM DUX shell sleek case for Apple iPad Pro"; consequently, "Plaintiff's listing

---

[3] To be clear, Lienau's Reports of February 15–17, 2022 pertained to listings from a "Plaza Accessories." Plaintiff does not allege the exact nature of its relationship to, or the existence of, Plaza. Nevertheless, hereinafter we refer to them collectively as "Plaintiff."

for the item had been removed from Amazon." *Id.* ¶ 24.  Plaintiff then "reached out to Lienau" complaining "that the item was authentic and objecting to Lienau's filing the counterfeiting report with Amazon without conducting a test purchase to determine whether the item was authentic." *Id.* ¶¶ 25.

Plaintiff does not allege that Lienau was required by applicable law or Amazon policy, to purchase an allegedly counterfeit product prior to submitting a counterfeiting report.  Nor does Plaintiff allege that it provided any proof of authenticity, such as an invoice or purchase order, to Lienau, STM, or Amazon, or that Lienau otherwise had knowledge of authenticity.  Instead, Plaintiff simply "demanded that Lienau" retract the counterfeiting report.  *Id.* ¶ 25.

Between February 16 and 17, 2022, Defendant Lienau filed additional "reports with Amazon" relating to "nine additional listings for STM cases being sold by plaintiff" that have since been "removed from Amazon[.]"  *Id.* ¶ 26.

While Plaintiff alleges that it "knew the items" to be "authentic," Plaintiff, as discussed *supra*, does not allege that it provided any proof of authenticity to any of Lienau, STM and Amazon.  *Id.* ¶ 27.  Plaintiff alleges "[o]n information and belief" that Defendants made the counterfeiting reports "with fraudulent intent, in bad faith, in reckless disregard for the truth[,] without any legitimate objective basis for concluding the items were counterfeit," for "anticompetitive reasons," "with malice and with the bad faith intent of damaging Plaintiff without justification."  *Id.* ¶¶ 29, 30, 33.

Plaintiff does not allege that it sought to mitigate its damages by providing an invoice or Order ID that demonstrates the authenticity of the Goods, instead bringing this action, alleging that *Defendants* caused Plaintiff to suffer damages, including, for example, "declining sales" and "erosion of Plaintiff's status with Amazon."  FAC ¶¶ 44, 52.

Plaintiff asserts causes of action for defamation, tortious interference with prospective business relations, declaratory judgment of non-infringement, and unfair competition.  Even accepting Plaintiff's allegations as true, as the Court must for purposes of this motion, each of these causes of action is legally deficient and should be dismissed.

<u>Material the Court May Consider as Incorporated by Reference and Integral to the Pleadings</u>

All four causes of action arise out of the ten Reports Lienau submitted to Amazon on co-defendant STM's behalf, pursuant to Amazon's trademark takedown policy, relating to ten Amazon listings for items sold by Plaintiff.  As discussed below, Plaintiff bases its claims on Lienau's Statements contained in the Reports to Amazon.  As allegedly defamatory statements are to be interpreted in their context - textually, procedurally, and otherwise - the Court may consider the Statements, the Reports in which they were made, the Notices sent to Plaintiff by Amazon as requested in the Reports, the correspondence between Plaintiff and Lienau about the Notices, and the takedown procedure under which Amazon administers its polices on intellectual property and counterfeiting.  These documents are all referenced in the Complaint and attached (or excerpted where indicated) to the Powers Decl. and Schwimmer Decl. submitted herewith.

At all relevant times, up to and including today, Plaintiff could have taken action to have its allegedly authentic Goods (FAC ¶ 7), re-listed.  *See, e.g.,* https://sellercentral.amazon.com/gp/help/external/G201361070?language=en_US&ref=efph_G2 01361070_cont_G521 (setting forth policy that sellers may respond to a notice of "Trademark or Counterfeit infringement on the product or packaging" by "[u]s[ing] the Account Health Dashboard present in your selling account **to provide an invoice or Order ID that demonstrates the authenticity** of the product. We will then re-evaluate the notice and your content may be

reinstated").   As a seller of merchandise on Amazon, Plaintiff contractually agreed to certain Amazon polices, including at least:

- "Use the Account Health Dashboard present in your selling account to provide an invoice or Order ID that demonstrates the authenticity of the product. We will then re-evaluate the notice and your content may be reinstated."[4]

- "By selling on Amazon, you agree that … You must provide records about the authenticity of your products if Amazon requests that documentation"[5]

- "Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account."[6]

From February 15-17, 2022, Lienau submitted ten Reports in which Lienau stated to Amazon a variation of "Please note that only CaseMotions and Sportique are authorized by STM to sell on Amazon.  These sellers are not authorized nor are they buying direct from STM therefore we conclude this product is counterfeit" (the "Statement").  Powers Decl. ¶ 2, Ex. 1; *see also id.* Exs. 2–10.  A summary listing of those Reports and the exact Statement made in each case are attached hereto as Schwimmer Decl. Ex. 1 (the "Statement Chart").

Amazon "received, read, and acted upon" the Reports and issued Notices to the Plaintiff. FAC ¶ 39.  The Notices informed Plaintiff that Amazon had temporarily removed the Listings for each of the Goods and "we may let you relist this product again if we receive a retraction for the rights owner."  *Id.*  Plaintiff provided two of the Notices to Lienau via email, the initial Notice in response to the first Report on February 15, 2022, and another Notice in response to a Report submitted on February 17, 2022 for Complaint ID: 9643581831.  Powers Decl. ¶¶ 15–18, Ex. 11– 14; *see also* Schwimmer Decl. ¶3.

---

[4] Schwimmer Decl. Ex. 2 ("Intellectual Property Policy for Sellers - Amazon Seller Central").
[5] *Id.* ("Amazon Anti-Counterfeiting Policy - Amazon Seller Central").
[6] *Id.*

se

## LEGAL STANDARDS

Under Rule 12(b)(6), a claim should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The court must accept all factual allegations in the Complaint as true, but this "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Under Rule 12(b)(1), "'the court must take all facts alleged in the complaint as true.'" *Sasson v. Hachette Filipacchi Presse*, No. 15-CV-00194 (VM)(SN), 2016 WL 1599492, at *2 (S.D.N.Y. Apr. 20, 2016) (citation omitted).  "But 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Id.* (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *BYD Co. Ltd. v. VICE MEDIA LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021), *aff'd,* No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) (citation omitted).

## SUMMARY OF ARGUMENT

Plaintiff's defamation count is entirely based on the alleged defamatory Statements contained in Lienau's Reports to Amazon; these Reports are incorporated by reference and integral to the Complaint and on their face make clear that Lienau's Statements constitute privileged unactionable opinion – they provide notice to Amazon and to Plaintiff that certain listings infringe the claimant's registered trademark rights.  The tortious interference count fails because Plaintiff does not allege that Lienau acted solely for malice, in a manner amounting to an independent crime or tort, as it must to state an actionable claim.  To the contrary, Lienau's Reports used simple

persuasion to protect STM's legitimate interest in policing its intellectual property rights.  Further, Plaintiff cannot establish any interference, and this cause of action is duplicative of the defamation cause of action and fails for these reasons as well.  Plaintiff's declaratory judgment of non-infringement count is not properly asserted against Lienau, who does not have any interest or property rights in STM's trademarks and was merely acting on STM's behalf.  Because Lienau could not bring a trademark infringement action against Plaintiff, Plaintiff cannot assert a declaratory judgment of non-infringement against Lienau.  Count IV must be dismissed because Plaintiff has not articulated a viable theory of unfair competition under New York State law.

In addition, the State of New York recently amended New York's Anti-SLAPP statute to expand its application and bar defamation claims as an improper attempt to intimidate via litigation right-holders from policing infringement of their brands using available ecommerce takedown reporting procedures.  Plaintiff has failed to plead actual malice as required by New York's anti-SLAPP statute as applied to defamation claims warranting dismissal under Rule 12(b)(6).  Accordingly, Lienau respectfully seeks leave to file an anti-SLAPP counterclaim and to seek dismissal of Plaintiff's Count I for defamation as in violation of New York's Anti-SLAPP statute and available relief.

## ARGUMENT

### A.   PLAINTIFF HAS FAILED TO STATE A DEFAMATION CLAIM BECAUSE LIENAU'S STATEMENTS, CONTAINED IN REPORTS TO AMAZON SEEKING PLAINTIFF'S RESPONSE CONSTITUTE PRIVILEGED UNACTIONABLE LEGAL OPINION.

#### 1.   Introduction

The gist of Plaintiff's Count I for defamation is that Lienau, acting on behalf of its client STM in protecting STM's registered trademark rights, allegedly made false statements to Amazon that Plaintiff's Goods were counterfeit, resulting in the Goods being de-listed, pursuant to

Amazon's putatively "automatic" trademark policy. FAC ¶ 14. However, even if the Goods were not counterfeit, the textual context and the procedural context of the Statements shows that the Statements were privileged opinions and pre-litigation demand letters. The Statements on their face disclose the good faith basis for Lienau's conclusion, and Plaintiff has not pleaded a plausible basis for inferring that the Statements were made with knowledge of their falsity or with a reckless disregard for the truth. Such an intent is all the more unlikely because in context, the Notice consists in part of a request by Amazon to Plaintiff to verify the authenticity of its Goods. Plaintiff declined to do so, undermining any argument as to its injury.

There are five elements that a Plaintiff must plead to adequately state a claim for defamation under New York law: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). "Of these elements, the first—whether a statement itself could be defamatory—'should ordinarily be resolved at the pleading stage.'" *Lindell v. Mail Media Inc.*, No. 1:21-CV-667-PAC, 2021 WL 5910000, at *4 (S.D.N.Y. Dec. 10, 2021) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). "Resolving this question at the pleading stage is important given that the filing of a libel lawsuit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself.'" *Id.* (citation omitted).

For purposes of a motion to dismiss, "the Court may consider documents that are either incorporated by reference in the complaint or integral to the claims asserted therein." *Frascatore v. Blake*, 344 F. Supp. 3d 481, 489 (S.D.N.Y. 2018). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Id.* (citation omitted). And even "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted).

        **2.**        **The Context of the Statements Illustrates That Pursuant to Amazon's Brand Policy, Lienau Communicated a good-faith legal opinion to Amazon To Ascertain The Authenticity of Plaintiff's Goods, Which Plaintiff Refused To Do**

                i.    <u>The Reports Themselves Show the Accurate Wording of the Statements And Not Plaintiff's Misquotation</u>

The initial inquiry is to identify the wording of the allegedly defamatory statement and then determine its meaning in proper context.  To determine the meaning of an allegedly false statement, the Court "must give the disputed language a fair reading in the context of the *publication as a whole*."  *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (citation omitted); *see also, e.g.*, *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 535 (S.D.N.Y. 2015) ("[C]ourts should not consider . . . statement[s] in question in isolation, but must analyze statements 'in the context of the entire communication and of the circumstances in which they were . . . written.'" (citation omitted)).  Here, the Amended Complaint bases its claims on purported quotations from the Reports Lienau transmitted to Amazon. FAC ¶ 36. The FAC interprets the significance of the Statements in the context of Amazon's intellectual property and counterfeiting policies (collectively the "Policy").  *See, e.g.*, FAC ¶¶ 12, 14.  Accordingly the Reports and the Policy are incorporated by reference into the Complaint, and even if they were not, the Complaint "relies heavily upon [their] terms and effect," *Nicosia*, 834 F.3d at 230 (citations omitted), rendering them integral.

Plaintiff incorrectly alleges that in **"[e]ach of the ten [R]eports Defendants submitted [to Amazon] falsely stated 'product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)' with respect to each of the products in question."** FAC ¶ 36 (emphasis added).

The Report to Amazon was created by Lienau filling out a form on Amazon's Brand Registry dashboard. To the extent that the Reports contain authorship by Lienau, it occurs in the "Infringement Type" by selecting "Trademark: Counterfeit" in the drop down menu, and providing the explanatory Statement in the "Additional Information" box. Representative here is a Report containing the following language (Powers Decl. Ex. 2, emphasis added):

> Please know STM has authorized only Sportique and CaseMotions to sell on Amazon.com outside of STM selling direct. STM has double checked their records and have no data to support this seller acquired STM product through a legitimate channel therefore we can *safely assume* they are selling counterfeit product. Please remove this seller offer. Thank you.(emphasis added)

The language of the other nine Statements (*see* Statement Chart, Schwimmer Decl. Ex. 1) vary slightly from the first Report; however all Statements indicate that after a review of the facts, there was no indication that Plaintiff had purchased goods from STM or its authorized sellers. This is the basis for Lienau's conclusion or assumption that the Goods are counterfeit. Thus, the Statements in the ten Reports (Powers Decl. Exs. 1–10) Lienau submitted *do not* contain the wording quoted by Plaintiff in the FAC. Nor do the two Notices from Amazon to Plaintiff that Lienau has seen.[7] The wording in the Reports therefore supersedes Plaintiff's allegations characterizing the Reports. *BYD*, 531 F. Supp. 3d at 817.

The difference in the wording is critical. These Statements constitute unactionable opinions on their face because, as discussed *infra*, Section A.3, they are comprised of conclusions based on disclosed facts.

        ii.    <u>Plaintiff Materially Mischaracterizes Amazon's Policy As "Automatic" even though the outcome is dependent on a Seller's Response</u>

---

[7] Plaintiff provided Lienau with the first Notice (Powers Decl. Ex. 11) and the Notice in connection with Complaint ID: 9643581831 (Powers Decl. Ex. 13).

Lienau's Reports are understood in the context of Amazon's Policy, and its takedown process. Plaintiff acknowledges that Amazon reads Lienau's Statements and acted upon them. FAC ¶ 39. However, Plaintiff's pleadings omit important context. Plaintiff materially mischaracterizes the Policy as "automatic," FAC ¶ 14 (which procedure Plaintiff agreed to be bound by when it placed its goods for sale with Amazon). Schwimmer Decl. Ex. 2 (Amazon Anti-Counterfeiting Policy). The Notice (Powers Decl. Ex. 11) and the Policy (Schwimmer Decl. Ex. 2) contradict this allegation as Plaintiff can participate in order to influence the outcome of the process, namely by submitting proof of authenticity to Amazon. Plaintiff omits this key aspect of the Policy when it quotes the Notice from Amazon that "We may let you list this product again if we receive a retraction from *the rights owner*. FAC ¶ 39 (emphasis added).

By identifying only the right owners as being able to retract a Notice, Plaintiff's partial quote may leave the misleading impression that reinstatement of the listings was now up to the sole discretion of the claimant (and presumably unavailable in view of Plaintiff's allegations as to the "anticompetitive" motivations for the Reports, FAC ¶ 30). However, this is not the rigged game Plaintiff suggests. The Notice, as a whole, is a request for information by Amazon, which information Plaintiff, apparently refused to provide. Additionally, as noted above, even assuming that the Goods are not in fact counterfeit, Plaintiff had obligated itself to provide Amazon proof of authenticity when asked. Schwimmer Decl. Ex. 2 (Amazon Anti-Counterfeiting Policy).

The first Notice (forwarded to Lienau by Plaintiff) is reproduced in Schwimmer Decl. ¶ 3 and shows the emphasis Amazon places on a seller's ability to respond to a takedown notice. *See also* Powers Decl. Exs. 1-11. It provides a prominent link to the Plaintiff's Amazon Seller Central Account Health Page, as the means to "reactivate" the listing. The Notice further indicates that Amazon's intellectual policy is available in "Seller Central." In pertinent part below, Amazon

indicates to sellers that it may reinstate the listings in question if Plaintiff provided evidence of authenticity (Schwimmer Decl. Ex. 2 (Intellectual Property Policy for Sellers)).

| Trademark or Counterfeit infringement on the product or packaging | Use the Account Health Dashboard present in your selling account to provide an invoice or Order ID that demonstrates the authenticity of the product. We will then re-evaluate the notice and your content may be reinstated. |
|---|---|
| Trademark or Counterfeit infringement on the product detail page | Modify the product detail page or pages to ensure they do not infringe the trademark and then submit your appeal by going to the Account Health page.<br><br>OR<br><br>If you believe your listing was removed in error, you may submit your appeal by going to the Account Health page. Please provide supporting documentation (e.g., letter of authorization, licensing agreement). We will then re-evaluate the notice, and your content may be reinstated. |

Again, to the extent Plaintiff relies on and characterized the Amazon Notice and Policy as a basis for its allegations, the Court should look to the actual Notice and Policy.  Here, the documents contradict that Amazon's policy is "automatic" in that the Policy is not "involuntary" in its operation.  Amazon reviewed and approved Lienau's Reports (FAC ¶ 39); Plaintiff had the right to respond, and Amazon had the ability to reinstate the listings based on Plaintiff's response. Although Amazon temporarily suspends listings while awaiting a seller's response, the procedure illustrates that Amazon's Notice acts as an inquiry to sellers.

### 3.    The Accurate Statements Read As Opinions On Their Faces

Statements are to be considered in the context in which they were published to a third-party.  *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 128–29 (2d Cir. 2014) ("As with defamation in general, courts make these assessments by looking at the full context of the communication in which the statement appears, while also considering the broader social context or setting surrounding the communication.").  Lienau indicated to Amazon that Lienau had reviewed its records and determined that Plaintiff was neither an authorized seller nor had it purchased its Goods from an authorized seller.  *See* Powers Decl. Exs. 1–10.  On this basis, Lienau assumed or

concluded that the Goods were counterfeit, and therefore it checked off that infringement type box and provided the Statement and requested that Amazon send Plaintiff a takedown notice.  *See id.*

This language plainly constitutes unactionable opinion.  In *Chau v*, the Court set forth the general framework used to determine whether an alleged defamatory statement constitutes an actionable fact, or non-actionable opinion. 771 F.3d 118, 128–29.  At the outset, it is important to note that "[d]etermining whether a statement is an allegation of fact or mere opinion is a legal question for the court."  *Id.* at 128.  The assessment must be made "by looking at the full context of the communication in which the statement appears."  *Id.* at 129.  "[I]f a statement is found to contain opinion, the court must next determine whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable). ***Pure opinion is a 'statement of opinion which is accompanied by a recitation of the facts upon which it is based' or does not imply that it is based on undisclosed facts.***  Mixed opinion, on the other hand, is an opinion that *does* imply a basis in undisclosed facts, or facts known only to the author, and is actionable." *Id.* (citations omitted) (bolded emphasis added).

Here, Lienau's Statements constitute unactionable pure opinion because it consists of a legal assumption based on disclosed facts.  Lienau states that its assumption that the items were counterfeit is based on the fact that STM only authorizes two entities to sell on Amazon and that its investigation produced no evidence that Plaintiff purchased the products legitimately.  This is an opinion that disclosed "the facts upon which it is based" and reflects Lienau's "perception of the facts . . . at the time it is uttered."  *Chau*, 771 F.3d at 129.  Because it is Lienau's opinion, and does not imply a basis in undisclosed facts, it is unactionable as a matter of law.

### 4.    The Statements Are Privileged Demand Letters

As stated above, these Statements made prior to the commencement of litigation are protected by a qualified privilege.  "If the statements are pertinent to a good faith anticipated

litigation, no cause of action for defamation can be based on those statements." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 715 (N.Y. 2015).

In *Lombardo v. Dr. Seuss Enters., L.P.*, No. 16 Civ. 9974 (AKH), 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017), for example, the court held that "the cease-and-desist letters are privileged because—whether or not defendant ultimately prevails on the fair use issue or the infringement counterclaims it intends to file—defendant had a good faith basis for sending the cease-and-desist letters based on the publicly available information about the Play, and defendant's allegedly defamatory statements were pertinent to that potential litigation." *Id.* at *8. A takedown notice pursuant to Amazon's Policy is the means by which a trademark owner can assert a claim against Amazon listings

Further, it makes sense that takedown notices are treated as privileged pre-litigation demand letters, a trademark owner *must* notify Amazon if it wishes to preserve rights against Amazon itself. Amazon, as an intermediary, is liable under the standard set forth in *Tiffany (NJ) Inc. v. eBay, Inc*. 600 F.3d 93, 107-109 (2d Cir. 2010) *only when it is placed on actual notice of a specific infringement*. The takedown process is the only reliable means of placing Amazon on actual notice of a specific infringement and is a prerequisite to bringing suit.

Alternately, Lienau's Statements to Amazon were conditionally privileged statements of common interest between it and Amazon. *See Liberman v Gelstein*, 80 N.Y.2d 429, 437 (N.Y. 1992); *see also Chandok v Klessig*, 632 F.3d 803, 817 (2d Cir. 2011); *Conti v. Doe*, 535 F. Supp. 3d 257, 276 (S.D.N.Y. 2021) (compiling cases). The Statements were limited to an audience of one, Amazon, who shared the common interest under the Policy of monitoring and protecting brand authenticity.

   **5.      Plaintiff Has Not Alleged A Factual Basis For Bad Faith Such that Its Prelitigation Communications Would Lose their Qualified Privilege**

Plaintiff alleges that Lienau acted with actual malice in making the Statements. FAC ¶¶ 33, 40.  "[A]ctual malice" requires a plaintiff to establish that "the defendant either knew his statements were false or acted with reckless disregard as to whether they were false."  *Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021) (citations omitted).

"Actual malice, even by way of recklessness, is . . .  a difficult standard to meet, and quite purposefully so[.]"  *Biro v. Conde Nast*, 963 F.Supp.2d 255, 277 (S.D.N.Y. 2013), *aff'd,* 807 F.3d 541 (2d Cir. 2015).  Even assuming for purposes of this motion that Plaintiff's Goods are not counterfeit, the documents show that Lienau's Statements were not in bad faith because they were based on information in its possession, and were pertinent to STM's enforcement of its trademark rights.  *Lombardo*, 2017 WL 1378413, at *8.  There are no plausible allegations allowing for the inference that Lienau knew the Goods were not counterfeit at the time of the Reports or that Lienau subjectively believed that the Goods were not counterfeit. Given that the Complaint (Dkt. 1) has already been amended, Plaintiff apparently cannot allege such facts.

  i.  <u>Plaintiff did not allege that Lienau had actual knowledge that the goods were not counterfeit</u>

Assuming for purposes of this motion that the Goods are not counterfeit, there are no allegations that Lienau had actual knowledge of this "fact" prior to making its first Report. FAC ¶¶ 33, 40.  As for Reports 2 through 10 made over the next two days, Plaintiff alleges that after it received the first Notice, it reached out to Lienau, and "explained" that the item was not counterfeit. Plaintiff speculates that Reports 2 through 10 were in "retaliation" for this "demand for retraction." FAC ¶¶ 25-26. Plaintiff materially mischaracterizes the actual communication to Lienau, which consisted of an email from Plaza sent 90 minutes after the first Notice, signed pseudonymously by "Litigation Manager."  Powers Decl. Ex. 11 (the "Litigation Manager email"). The Litigation Manager email did not "explain" any aspect of the goods' provenance but contained

an *ipse dixit* assertion of authenticity and a threat to sue.  *See id.*[8]  The Litigation Manager email did not place Lienau on actual notice that the Goods are authentic, nor should it have placed a reasonable person on notice that the Goods might be authentic.

As discussed further below, denials of wrong-doing without more, do not provide a rights holder with reliable information. *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977).   The pseudonymous Litigation Manager email, sent from the email address "plazaaccessories2015@gmail.com," contained misspellings, grammatical mistakes, and inconsistent typefaces.  Most importantly, it did not contain or describe any of the information identified in the Amazon's Seller Central FAQs as to what might constitute evidence of at least the possibility of authenticity, such as invoices or Order IDs, or letters of authorization or licensing agreements.  Plaintiff alleges that at the time it sent the email, it "knew" that the items it listed on Amazon "were authentic because Plaintiff obtained those items from a reputable, publicly traded company that purchased the items from STM."  FAC ¶ 27. As such, there would likely be some IRS compliant documentation of this fact Plaintiff could reveal.  Plaintiff offers no explanation why it deliberately withheld such information from both Lienau and, apparently, Amazon, choosing instead to file this suit.

Accordingly, there are no plausible allegations that Lienau had actual knowledge that the Goods were not counterfeit when it transmitted any of its Reports to Amazon.

ii.   <u>Lienau investigated the nature of the Goods, did not shield itself from information, and *requested* that Amazon ask Plaintiff</u>

Plaintiff alleges that Lienau acted with reckless disregard for the truth – this despite the fact that when asked for information of authenticity, Plaintiff, acting against its self-interest,

---

[8] As Plaintiff bases these allegations as to Lienau's state of mind and intent resulting from its communication contained in the document, the Court may consider the actual document, and again, rely upon the document to the extent it contradicts the allegation. Powers Decl. Ex. 11; *see also id.* Exs. 12–14.

refused to provide it to Lienau or to Amazon.  Again, assuming that the Goods were not counterfeit, there are no plausible facts to support the allegation that Lienau made the Statements with a high degree of awareness that the Goods may not have been counterfeit.  A "person acts with reckless disregard when he publishes the statement at issue entertaining serious doubts as to the truth of the statement or having a high degree of awareness that the statement is probably false." *Conti*, 535 F. Supp. at 279.  "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action." *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011)(citation omitted).

Plaintiff appears to base its allegations as to Lienau's awareness on (1) the protestations within the Litigation Manager email[9]; (2) speculations as to Lienau's motivations; and (3) Lienau not having made test purchases of the 10 items. None of these are sufficient to establish a high degree of awareness that the items were not counterfeit.

The pseudonymous Litigation Manager email, as discussed above, does not reasonably support such an inference of Lienau's awareness of authenticity and in fact, would support the opposite inference to most. The Litigation Manager's denial without documentation itself is insufficient to plant serious doubt in the mind of the rights holder.  *cf. Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) (asserting that the actual malice "standard ... cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error").  Importantly, Plaintiff's failure to accompany its denial with any documentation did not enhance its credibility: if a party had evidence in its possession that could help resolve a claim, and it didn't transmit such evidence immediately, then it would at least

---

[9] As the email was sent to Lienau after the first Report, the alleged "effects" of the email on Lienau would only be applicable to Reports two through ten.

indicate that it could produce such evidence at some point, for example after protecting concerns over confidentiality of the exculpatory information. Also, Plaintiff's refusal to communicate with the identified contact for resolution at STM, further supported the inference that Plaintiff's claim of authenticity was unsupported.

Additionally, Lienau's alleged motivation alone will not establish reckless disregard. Assuming for the purposes of this motion that Plaintiff's allegations as to certain of Lienau's motivations are true – in that not only does Lienau benefit from the lawful sale of STM products, but that Lienau would benefit from "the elimination of lawful unauthorized sales of STM products . . ." FAC ¶ 22, such allegations are irrelevant in establishing reckless disregard for two reasons. First, Lienau's purported attitude towards *Plaintiff* is not relevant to establishing actionable malice, because it is uncontested that Lienau had additional motivation for filing the Reports – namely it acts as agent on behalf of STM in regard to the enforcement of STM's trademark rights. *Liberman*, 80 N.Y.2d at 429 (common-law malice will defeat a privilege only if it is the one and only cause for the publication); *see also Chandok*, 632 F.3d at 816. More importantly, Lienau's commercial motivations do not support a plausible inference that Lienau had *malice towards the truth*. Motivations alone do not create a "high degree of awareness" that the Goods were not counterfeit, for Plaintiff to pursue its claim. *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied sub nom. Brimelow v. The New York Times Co.*, 142 S. Ct. 1210 (2022) (evidence of motive without more is insufficient in establishing actual malice).

Furthermore, Plaintiff's alleges that Lienau did not conduct a test purchase before filings its Reports. Plaintiff seeks to impose upon Lienau not only a duty to investigate but a specific method of how to investigate, one that Amazon doesn't require. As stated on the Reports transmitted to Amazon, Lienau looked into the matter and concluded that the Goods were

counterfeit.  Even if it hadn't done so, "[g]enerally, 'mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (citation omitted).

Finally, Plaintiff's allegations as to failure to investigate impliedly misrepresent the nature of the Amazon procedure. The Amazon Notice to sellers is a question -- one that sellers obligated themselves to answer). *Cf. Biro v. Conde Nast*, 883 F. Supp. 2d 441, 482 (S.D.N.Y. 2012) ("But the mere raising of questions is, without more, insufficient to sustain a defamation suit in these circumstances.").  Amazon is saying: "A rights-owner thinks that you're infringing its rights. Do you have proof of authenticity?"  The Amazon notice procedure *is* the investigation.

## B.  PLAINTIFF HAS NOT ADEQUATELY PLEADED THE ELEMENTS SUFFICIENT TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS.

There are four elements to a claim for tortious interference with prospective business relations: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted).  Plaintiff's Count II should be dismissed because Plaintiff has failed to adequately plead the third element which "sets a high bar."  *Id.* at 262.  It also should be dismissed because Plaintiff has failed to adequately plead the second and fourth elements and as being duplicative of Count I for defamation.

To satisfy the third element, "a plaintiff must allege that a 'defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations.'  '[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. . . .'" *Lombardo*, 2017 WL 1378413, at *4 (citations omitted).

In *Lombardo*, the plaintiff argued that "it was dishonest, unfair and improper for defendant to have sent the cease-and-desist letters without first reading the Play and evaluating whether it is fair use" (*id.* at *5), as Plaintiff here alleges that Lienau should have made test purchases before asserting the Goods were counterfeits (FAC ¶ 28).  Relevant here, the *Lombardo* court concluded: "The cease-and-desist letters reflect defendant's belief-based on publicly available information—that the Play likely infringed on defendant's intellectual property. Whether that belief was right or wrong, defendant did not send the letters for the sole purpose of injuring plaintiffs.  For this reason alone, plaintiffs' tortious interference claim fails." *Lombardo*, 2017 WL 1378413, at *5; *see also, e.g.*, *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426-27 (E.D.N.Y. 2019) (finding third element inadequately pleaded where "Plaintiffs make no plausible allegation that Hirschkorn acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents.  In other words, the only plausible inference drawn from the amended complaint is that Hirschkorn used 'simple persuasion' – specifically, the filing of *pro forma* take down notices – to vindicate his legal rights and protect his intellectual property."); *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360 (MKB), 2021 WL 1193947, at *13-16 (E.D.N.Y. Mar. 29, 2021) (rejecting plaintiff's argument "it has plausibly alleged that Defendant 'interfered with its prospective economic advantage of lost customers through sales on Amazon.com,' as well as with 'its existing economic relationship with Amazon,' when it made a bad-faith take-down request with respect to Plaintiff's product").  In the same way here Plaintiff's allegations, when viewed in conjunction with Lienau's Reports, do not support a plausible inference that Lienau acted *solely* for a wrongful purpose; rather, the Reports show that Lienau believed Plaintiff "likely infringed on [STM's] intellectual property." *Lombardo*, 2017 WL 1378413, at *5

21

With respect to the second and fourth elements, Plaintiff has not plausibly alleged that Lienau interfered with Plaintiff's business relations. Plaintiff's allegation that "But for Defendant's conduct causing the removal of Plaintiff's products from Amazon, Plaintiff would have continued selling the products in question and would have received the revenue associated with those sales, which was lost as a result of Defendant's actions," FAC ¶ 50, cannot not be assumed true because it is contradicted by documents integral to the Complaint, namely the Notice. The Notice contains the prominent heading "How Do I Reactivate My Listing," Powers Decl. Ex. 11, and links to do so. The second Notice lists documents to be provided to Amazon in order to reinstate the listing. Powers Decl. Ex. 13.

Plaintiff's other allegations regarding future adverse effects of the Reports *might have been* correct—but Plaintiff's conclusory "but for" allegation also is contradicted by the Notices. The Amended Complaint only allows for one interpretation: its listings were not reinstated by Amazon because Plaintiff **never asked** that its listings be reinstated. Amazon's Policy, which defines the relationship pleaded by Plaintiff and thus may be considered by the Court on this motion, defines the relationship in relevant part to include "By selling on Amazon, you agree that … You must provide records about the authenticity of your products if Amazon requests that documentation"[10]

Integral to this relationship is that Amazon may inquire about, and a seller on Amazon has an obligation to provide records establishing, product authenticity. Amazon placed no condition on what terms must be satisfied to trigger its request for authenticity records from Plaintiff. Amazon may issue a Notice for any or no reason, and the reason for Amazon's requests does not change Plaintiff's obligation to respond. Hence, Lienau's Reports triggering Amazon's Notices are consistent with, but do not and cannot interfere with Plaintiff's relationship with Amazon with

---

[10] Schwimmer Decl. Ex. 2 (Amazon Anti-Counterfeiting Policy - Amazon Seller Central)

respect to authenticity of products sold on Amazon.  It was not Lienau's Reports, which Amazon might have chosen to disregard, but Amazon's Notices that burdened Plaintiff with establishing the authenticity of the products it was selling.  That Plaintiff chose not to respond to Amazon's requests did not arise from any interference by Lienau in Plaintiff's relationship with Amazon.

Count II also should be dismissed as duplicative of the defamation cause of action.  *See, e.g.*, *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) ("[W]e conclude that the district court correctly dismissed Chao's other tort claims as duplicative of his defamation claim. . . . Here, the factual allegations underlying each of Chao's other tort claims are virtually identical to the facts underlying his defamation claim . . . ."); *see also Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 519–20 (S.D.N.Y. 2017) (dismissing tortious interference with prospective business advantages claim under Rule 12(b)(6) as duplicative of defamation claim).  Here, the entire cause of action flows from the harm allegedly caused by the Reports. *See* FAC ¶¶ 47-50.  Indeed, the injury alleged in Count II, flowing from the Reports, is *identical* to the injury alleged in Count I. *Compare* FAC ¶¶ 43-44, *with* FAC ¶¶ 51-52.

### C.   PLAINTIFF LACKS STANDING TO BRING A DECLARATORY JUDGMENT ACTION OF NON-INFRINGEMENT BECAUSE THERE IS NO LANHAM ACT DISPUTE BETWEEN PLAINTIFF AND LIENAU.

Count III should be dismissed under Rule 12(b)(1) because there is no justiciable controversy between Plaintiff and Lienau under the Lanham Act. Plaintiff seeks a "declaratory judgment that the products . . . are not counterfeit and therefore do not infringe STM's trademarks or constitute a false designation of origin by means of counterfeiting . . ." FAC ¶ 58. Plaintiff acknowledges that STM uses the STM and DUX trademarks, FAC ¶ 18, and that Lienau "has served as a commission-based sales representative of STM authorized by STM to independently enforce STM's trademark rights by reporting violations of such rights." FAC ¶ 21. Plaintiff acknowledges that the Notices it received identified U.S. Registration No. 5410527 for the stylized

STM trademark, as the basis for the Notices.  FAC ¶ 39. The Notices were identified as coming

from Temple Powers, with the address temple@lienau.com, however Plaintiff acknowledges that

Lienau provides services to companies who sell on Amazon. FAC ¶ 20.  One such service was

"helping [a client] clean up fraudulent products on the [Amazon] website." *Id.*

To qualify as "a case of actual controversy" under the Declaratory Judgment Act, the

dispute must be, *inter alia*, "definite and concrete, touching the legal relations of parties having

adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Here, Plaintiff has not and cannot plead that Lienau asserted any ownership interest in

STM's trademarks.  Plaintiffs allege that Lienau has a commercial interest in ***STM's product sales***

(FAC ¶ 21) but does not allege Lienau owns an interest in ***the trademarks*** that may be associated

with those products.  Any licensee, distributor, or re-seller would have a commercial interest in

such sales, which interest alone would not create an inference that the seller can bring a Lanham

Act trademark claim. Lienau has never held itself out as a rights-owner. When Plaintiff contacted

Lienau after receipt of the first Notice, Lienau advised Plaintiff to contact STM – the only entity

that could resolve any issues regarding STM's trademark use or ownership with Plaintiff.

Furthermore, Plaintiff has not pled that Lienau asserted any trademark or unfair

competition claim to STM in Lienau's own name, nor identified a right that Lienau may assert

under the Lanhan Act.

"In determining whether an actual legal dispute exists, some courts have looked to whether

there was an 'underlying legal cause of action that the declaratory defendant *could have brought*

*or threatened to bring,* if not for the fact that the declaratory plaintiff had preempted it.'" *Velvet*

*Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 410 (S.D.N.Y.

2012) (citation omitted) (compiling cases and citing case finding "[w]ithout an underlying legal

cause of action, any adverse economic interest that the plaintiff may have against the declaratory

defendants is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction").

Finally, the Court cannot grant the requested relief of a settlement of rights under the Lanham Act between Plaintiff and Lienau because Plaintiff has not and cannot plead that Lienau has any ownership or property interest in STM's trademark, and therefore Lienau has no Lanham Act rights to resolve in this matter. For the same reasons, then, Plaintiff cannot assert a declaratory judgment of non-infringement against Lienau, and this claim must be dismissed.

### D. PLAINTIFF DOES NOT PLEAD ANY ACTIONABLE THEORY OF PALMING OFF OR MISAPPROPRIATION UNDER NEW YORK STATE UNFAIR COMPETITION LAW.

Count IV in its entirety restates and realleges the Complaint, asserting that "[t]he foregoing acts described herein constitute common law unfair competition. FAC ¶¶ 59-60. Even if the entirety of the allegations were true, Plaintiff fails to articulate an actionable theory of unfair competition. It is hornbook law that "New York law recognize[s] two theories of common-law unfair competition: palming [or passing] off and misappropriation. Palming off . . . is the sale of the goods of one manufacturer as those of another. . . . [M]isappropriation, prevents individuals from misappropriat[ing] the results of the skill, expenditures and labors of a competitor." See, e.g., *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 505-06 (S.D.N.Y. 2018) (internal quotation marks and citations omitted). Courts have declined to expand this tort beyond these two specific theories. In *Ace Arts, LLC v. Sony/ATV Music Publishing, LLC*, 56 F. Supp. 3d 436, 454 (S.D.N.Y. 2014), for example, in response to the exact same argument that Plaintiff raised in its letter that "an unfair competition claim encompasses a broad range of unfair business practices," Dkt. 23 at 3, the court acknowledged unfair competition as a broad and flexible tort but declined to find that it "more broadly encompasses other forms of 'commercial immorality'" beyond the two theories identified above. *Ace Arts*, 56 F. Supp. 3d at 454.

With regard to palming off, the Complaint focuses on Lienau's Statements to Amazon relating to Plaintiff, and not to representations made by Lienau in connection with the sale of its own goods in commerce.  To the extent that Plaintiff alleges that Lienau sells goods, those sales are authorized sales of STM goods.  FAC ¶ 21. There is no allegation that Lienau utilized any trademark or other indicia allegedly belonging to Plaintiff in connection with those sales, or that it represented itself as Plaintiff in any context, ever.

Furthermore, there is no allegation that Lienau utilized any property of Plaintiff, tangible or intangible, in conducting its business. To the extent that Plaintiff asserts ownership in its goodwill, it does not allege that Lienau utilizes that goodwill to its own benefit. Any statements ascribed to Lienau that allegedly damage Plaintiff's goodwill, do not use and do not misappropriate that goodwill.  *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 228–29 (E.D.N.Y. 2020) (misrepresentations made with the intent of maligning plaintiff's reputation fail to state a claim for misappropriation).

Because Plaintiff has not alleged *any* theory of liability in connection with this cause of action, much less an actionable theory of unfair competition, this claim must be dismissed.

E.      **PLAINTIFF'S DEFAMATION SUIT WAS INTENDED TO HARRASS AND INTIMIDATE LIENAU FROM POLICING AND ASSERTING STM'S TRADEMARK RIGHTS IN A PUBLIC FORUM, AND THUS VIOLATES NEW YORK'S ANTI-SLAPP STATUTE**

For the reasons stated in Section A.5, Plaintiff cannot successfully plead actual malice, and thus its defamation cause of action should be dismissed. Plaintiff's defamation also should be dismissed because it fails under New York's anti-SLAPP statute.

The 2020 amendments to New York's anti-SLAPP statute were "intended to deter actions filed to punish or harass a defendant for participating in public life . . . to broaden the applicable standards and to provide additional procedural rights to make those standards more effective."

26

*Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 748128, at *3 (S.D.N.Y. Mar. 11, 2022).[11] District courts in the Second Circuit acknowledged the 2020 anti-SLAPP amendments to be remedial and cover claims like Plaintiff's New York defamation Count I. *See, e.g.*, *Novagold Res. V. J Capital Research LLC*, 20-CV-2875 (LDH) (PK), 2022 WL 900604, at *8–9 (E.D.N.Y. Mar. 28, 2022). In *Margolies* the court dismissed a defamation claim based on the New York anti-SLAPP statute holding "any action 'involving public petition and participation,' including one based on 'any communication in a place open to the public or a public forum in connection with an issue of public interest,' must plead actual malice to recover damages." *Margolies v. Rudolph et al.*, No. 21-CV-02447-SJB, 2022 WL 2062460, *6–8 (E.D.N.Y. June 6, 2022) (citing N.Y. Civ. Rights Law § 76-a(1)(a)(1)–(2)). Lienau submits that *Margolies* is better reasoned than *Carroll.*[12]

Under *Margolies* and *Novagold*, as discussed *supra*, Section A.5, Plaintiff has failed to plead actual malice, and as discussed *infra*, Section E.2–3, Lienau's Statements were made in a public forum in connection with an issue of public interest. Therefore, Plaintiff's Count I for defamation should be dismissed as in violation of New York's anti-SLAPP statute.

As noted above, the instant action is one of multiple lawsuits filed by Plaintiff or related companies (*supra* note 1) targeted at trademark owners attempting to place intermediary ecommerce sites like Amazon, Walmart and eBay on notice that the trademark owners believe that

---

[11] As discussed in *Carroll*, Sections 70-a and 76-a of the Civil Rights Law and Rules 3211 and 3212 of the New York Civil Practice Law and Rules were amended by the New York Legislature to extend coverage to "any communication in a place open to the public or a public forum in connection with an issue of public interest," N.Y. Civ. Rts. L. § 76-a, subd. 1(a), requiring the plaintiff in any covered action to establish by clear and convincing evidence that "any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue," *id.* at subd. 2, and requiring courts, in considering motions to dismiss complaints and other pleadings in actions within the coverage of the statute, to consider supporting and opposing factual affidavits rather than limiting their consideration to the pleadings, N.Y. CPLR § 3211(g), subd. 2. *Carroll*, 2022 WL 748128 at *3 (discussing additional substantive and procedural changes regarding staying discovery, shifting and changing burdens of proof, and recovering fees and costs and compensatory damages by defendants).

[12] Whether the actual malice fault standard under the amended anti-SLAPP law is "manifestly substantive" is pending on appeal. *Coleman v. Grand*, No. 21-800 (2d Cir.) (appealing 523 F. Supp. 3d 244 (E.D.N.Y. 2021).

certain listings on their ecommerce sites are potentially infringing.  These suits mischaracterize the common takedown practices to contrive a "motion-to-dismiss"-proof defamation cause against trademark owners (or their agents) who protested Plaintiff's allegedly infringing activities through the use of ecommerce takedown procedures.  *See* Section A.2, *supra*.  This is just the bad faith litigation scenario that the New York Legislature envisioned the amended Anti-SLAPP statute would be utilized to prevent.

### 1.   The Defamation Cause of Action Was Brought in Bad Faith

Plaintiff's bad faith is evidenced by deciding to forego the expedient measure of responding to (an allegedly erroneous) takedown notice with evidence of authenticity.  Rather, Plaintiff "reached out" ninety minutes after receiving the first Notice, sending the Litigation Manager email to Lienau threatening it with a suit for alleged unspecified damages.  Powers Decl. Ex. 11.  In response, Lienau directed Plaintiff to contact the trademark owner, STM.  Powers Decl. Ex. 12; *see also id.* Ex. 14.  Plaintiff does not allege it ever contacted either STM or Amazon, let alone provided either support for any authenticity of these listings (even though to simply supply an invoice to Amazon would have likely resulted in the reinstatement of its listings).  Powers Decl. ¶ 21.  Plaintiff's pattern of drastically escalating takedown disputes, rather than providing evidence of authenticity, sends a chilling message to all trademark owners: takedown notices will be met with a defamation suit.

### 2.   Takedown Notices Expeditiously Advance the Public Interest In Trademark Enforcement

Takedown notices are favored by public policy and help avoid litigation.  They are practical and sometimes a mandatory first step in enforcing trademark rights.  Civil suits are expensive and not practical alternatives for many businesses.  Many ecommerce marketplaces listings, for example, Amazon, provide neither email nor street addresses for sellers, making demand letters unsuitable.  Indeed, takedown notices act as demand letters and are the most efficient and effective

means by which a trademark owner provides an Amazon seller (and Amazon) with actual notice

of a trademark owner's claims.

### 3.     The Integrity of the Amazon Marketplace is a Matter of Public Concern

By filing its takedown requests, Lienau was exercising its rights to make speech that, while

certainly in its and STM's interests, also were in the public interest.  Public interest is to be

construed broadly under the Anti-SLAPP statute.  N.Y. Civil Rights Law § 76-a(1)(a).

The Amazon website is a public market.  The prerequisites for a user to leave comments

on the site are minimal.  In their totality, Amazon listings, user comments, seller commentary, and

the dialogue between sellers, trademark owners, and Amazon, constitute a public forum about

those ecommerce listings.

The public Amazon marketplace forum and Amazon's public practices resonate throughout

the ecommerce world. Amazon sets the pace in all aspects for ecommerce – including for brand

protection. Plaintiff acknowledges in its FAC that the communications and decisions within

Amazon's takedown process have public ramifications, when it alleges that Defendants' actions

will result in changes to Plaintiff's reputation but also to "Plaintiff's status with Amazon and

potentially other online sales platforms . . . ."[13] (Dkt. 29 at ¶ 44); *see also Margolies*, 2022 WL

2062460, at *7 (finding that anti-SLAPP law applies to forum supported by counterclaim

defendant's allegation of injury occurring outside of forum).

The integrity of Amazon's marketplace is a matter of legitimate public concern. Amazon's

Brand Protection Reports notes that it has spent $900 million and employs 12,000 employees to

ensure brand integrity.  *See* Schwimmer Decl. Ex. 4 (stating that a critical component of its brand

protection strategy relies on providing the notice and takedown tools to brand owners).

---

[13] Plaintiff's reference to other platforms confirms the clear relevance of the other three lawsuits.

The chilling effect of these suits will degrade the brand integrity of Amazon's marketplace. If the takedown system is eviscerated by the prospect of bad faith defamation suits, those consumers will simply be at the mercy of those who abuse marketplace brand protection policies and who abuse the legal system as well.

Because the pleadings and evidence this Court may properly consider on this Rule 12(b)(6) motion support dismissal of the defamation claim based on an anti-SLAPP claim, Lienau respectfully requests leave to file an anti-SLAPP counterclaim to pursue such remedies and relief as may be available to Lienau under New York law in this Court.

## **CONCLUSION**

For the foregoing reasons, Lienau respectfully requests this motion be granted and entry of an Order: (i) dismissing the Complaint with prejudice, (ii) granting leave to file an anti-SLAPP counterclaim; and (iii) granting such other relief as the Court deems just and proper.

Dated: August 15, 2022

Respectfully Submitted,

LEASON ELLIS LLP

Robert M. Isackson (RM 4303)
Martin B. Schwimmer (MS 7011)
Stefanie M. Garibyan (SL 6170)
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Fax: (914) 288-0023
Email: : isackson@leasonellis.com;
schwimmer@leasonellis.com;
garibyan@leasonellis.com

*Attorneys for Defendant Lienau Sales and Marketing, LLC (d/b/a Lienau)*