**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CDC NEWBURGH INC.,<br><br>Plaintiff,<br><br>v.<br><br>STM BAGS, LLC and LIENAU SALES<br>AND MARKETING, LLC (d/b/a LIENAU),<br><br>Defendants**.** | Case No: 7:22-cv-1597-NSR |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LIENAU**
**SALES AND MARKETING, LLC'S MOTION TO DISMISS**

Jason B. Lattimore
**The Law Office of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Jason@LattimoreLaw.com

*Counsel for Plaintiff,*
*CDC Newburgh Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND AND RELEVANT PROCEDURAL HISTORY................................2

ARGUMENT ........................................................................................................5

    I.      THE STANDARD ON A MOTION TO DISMISS. ................................5

    II.    THE FAC STATES A CAUSE OF ACTION FOR DEFAMATION. ...................6

        A.    The FAC Pleads an Actionable Statement of Fact and Falsity and Lienau's Attempt to Introduce Evidence Outside the Pleadings is Procedurally Improper. ................................................................6

            1.    The Court Cannot Properly Consider the Documents Lienau Represents are the Reports at Issue Because There is a Genuine Question of Whether the Documents Accurately Reflect the Reports........................................................................6

            2.    The Documents Lienau Relies Upon to Argue Amazon's Policies are not Integral to the First Amended Complaint..............7

        B.    Even Considering the "Additional Information" Purportedly Submitted to Amazon, Plaintiff's Defamation Claims Remain Valid. ..........................................................................................................9

        C.    The Question of Whether a Privilege Applies Cannot be Decided at this Stage of the Case, and There is Nothing to Support the Application of Any Privilege. ...........................................................11

            1.    The Pre-Litigation Privilege is Inapplicable and Nothing In the FAC Supports the Assertion that Lienau's Reports Were Pre-Suit Cease and Desist Letters. .................................................11

            2.    Plaintiff's Assertion of Qualified Privilege, Including the Common-Interest Privilege, Does Not Provide a Basis for a Valid Motion to Dismiss. .................................................................12

                a.    Applicability of the Qualified Privilege Cannot Be Determined on the Face of the First Amended Complaint........................................................................12

                b.    The FAC Sufficiently Pleads Malice. ...............................13

III.    THERE IS A JUSTICIABLE CONTROVERSY BETWEEN PLAINTIFF
        AND LIENAU FOR THE PURPOSES OF THE DECLARATORY
        JUDGMENT ACT. ...................................................................................16

IV.     PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS PROPERLY
        PLED.......................................................................................................19

V.      PLAINTIFF HAS PROPERLY PLED A CLAIM FOR COMMON LAW
        UNFAIR COMPETITION.......................................................................20

VI.     LIENAU'S REQUEST FOR LEAVE TO FILE A COUNTERCLAIM
        UNDER NEW YORK'S ANTI-SLAPP STATUTE IS NOT WELL
        FOUNDED AND SHOULD BE DENIED AS FUTILE.....................................21

        A.    The New York Anti-SLAPP Statute Does Not Apply to the
              Statements at Issue....................................................................21

              1.    The Communications at Issue Were Not Made in a Public
                    Forum...............................................................................22

              2.    The Communications at Issue Were Matters of Purely
                    Private Concern.................................................................22

        B.    The Anti-SLAPP Statute's Counterclaim and Attorney-Fee
              Provisions Are Inapplicable........................................................23

              1.    Section 70-a of New York's Anti-SLAPP Statute Does Not
                    Apply in Federal Court. .....................................................24

              2.    Plaintiff's Claims Are Clearly Not Frivolous. ...............................25

VII.    IN THE EVENT THE COURT DISMISSES ANY ASPECT OF
        PLAINTIFF'S CLAIMS, PLAINTIFF SHOULD BE GRANTED LEAVE
        TO AMEND.............................................................................................25

CONCLUSION............................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Am. Time Exch., LLC v. Tissot SA*, No. 17-4737, 2017 U.S. Dist. LEXIS 160090
(S.D.N.Y. Sept. 26, 2017) ................................................................................ 17

*Amazon.com, Inc. v. Nat'l Ass'n of College Stores, Inc.*, 826 F. Supp. 2d 1242
(W.D. Wash. 2011) ........................................................................................... 17

Aristocrat Plastic Surgery, P.C. v. Silva, 169 N.Y.S.3d 272 (N.Y. App. Div. 2022).................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 5

*Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98-5408, 2001 U.S. Dist. LEXIS 18738
(S.D.N.Y. Nov. 16, 2001) ................................................................................. 18

*Carroll v. Trump*, No. 20-cv-7311-LAK, 2022 U.S. Dist. LEXIS 43512, *2, __ F. Supp. 3d __
(S.D.N.Y. March 10, 2022) ................................................................... 21, 24

*Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011) ........................................................ 14

*Conti v. Doe*, 535 F. Supp. 3d 257 (S.D.N.Y. 2021) ............................................. 11, 13

*Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009) ....................................................... 16

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411 (2d Cir. 2015)..................... 16

*Davis v Boeheim*, 24 N.Y.3d 262 (NY 2014) ............................................................. 10

*Donovan v. Aeolian Co.*, 270 N.Y. 267 (N.Y. 1936)..................................................... 20

Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749 (1985)................................. 23

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)............................................................. 6

*Friedman v. Bloomberg, L.P.*, No. 3:15-cv-443, 2022 U.S. Dist. LEXIS 62141

(D. Conn. April 4, 2022) ......................................................................... 24

*Front, Inc. v Khalil*, 24 N.Y.3d 713 (N.Y. 2015) ......................................... 12

*Giuffre v. Maxwell*, No. 15-7433, 2017 U.S. Dist. LEXIS 64405

(S.D.N.Y. March 27, 2017) ...................................................................... 12

*Hangman Ridge Training Stables, Inc. v. Safeco Title Insur. Co.*, 719 P.2d 531 (1986) ............. 26

*Harfenes v. Sea Gate Ass'n*, 167 Misc. 2d 647 (Sup. Ct. NY County 1995) ............................... 22

*Hettler v. Entergy Enters.*, 15 F. Supp. 3d 447 (S.D.N.Y. 2014) .................................. 16

*Hillel v. Iqvia, Inc.*, No. 21-666-cv, 2022 U.S. App. LEXIS 8198

(2d. Cir. Mar. 29, 2022) ..................................................................... 12, 13

*Hotaling & Co., LLC v. LY Berditchev Corp.*, 2022 U.S. Dist. LEXIS 70556

(D.N.J. April 18, 2022) ........................................................................ 12

*Huggins v. Moore*, 94 N.Y.2d 296 (N.Y. 1999) ......................................... 23

*Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir. 1980) ................................. 18

*Kesner v. Buhl*, No. 20 Civ. 3454-PAE, 2022 U.S. Dist. LEXIS 43094

(S.D.N.Y. March 10, 2022) ...................................................................... 24

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ........................................... 5

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d. Cir. 2007) ........................................ 21

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ............................... 16, 17, 18

*Microchip Tech. Inc. v. Chamberlain Group*, 441 F.3d 936 (Fed. Cir. 2006) ............................. 18

*Miller v. Appadurai*, No. 160329/2020, 2022 N.Y. Misc. LEXIS 539

(N.Y. Sup. Ct., NY Cnty, Feb. 4, 2022) ........................................................ 22, 23

*Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F. Supp. 332 (S.D.N.Y. 1982)................ 20

*Murphy v. Provident Mut. Life Ins. Co.*, 756 F. Supp. 83 (D. Conn. 1990) ................................ 18

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408
(S.D.N.Y. 2021).................................................................................................................. 24

*Purgess v. Sharrock,* 33 F.3d 134 (2d Cir. 1994) ......................................................................... 11

*Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647 (2d Cir. 1987) .......................... 25

*Roy Exp. Co. Establishment of Vaduz v. CBS*, 672 F.2d 1095 (2d Cir. 1982).............................. 20

*Rupert v. Sellers*, 411 N.Y.S.2d 75 (4th Dep't 1978)), *aff'd*, 50 N.Y.2d 881 (1980)............ 12, 13

*Sackler v American Broadcasting Cos., Inc.*, 71 Misc. 3d 693 (S. Ct., N.Y. County, 2021) ....... 21

*Saleh v. Sulka Trading, Ltd.*, 957 F.3d 348 (2d Cir. 2020).................................................... 16, 19

*Silverstar Enters. Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982) ............................................ 18

*Sokol v Leader*, 904 N.Y.S.2d 153 (N.Y. App. Div. 2010) ......................................................... 13

*Studio 010 Inc. v. Digit. Cashflow LLC*, No. C20-1018, 2022 U.S. Dist. LEXIS 75232
(W.D. Wash. Apr. 4, 2022) ............................................................................................ 17, 26

*Stukuls v. New York*, 397 N.Y.S.2d 740 (N.Y. 1977) ............................................................ 13, 14

*Transit Com. v. Long I. R. Co.*, 253 N.Y. 345 (N.Y. 1930)........................................................... 22

*Verbena Prods. LLC v. BeSweet Creations Inc.*, No. 21-cv-23797, 2022 U.S. Dist. LEXIS 27936
(S.D. Fla. Feb. 16, 2022) ...................................................................................................... 16

*Weldy v. Piedmont Airlines*, 985 F.2d 57 (2d Cir. 1993)....................................................... 14, 15

*Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176 (E.D.N.Y. 2018)....................................... 20

*Yukos Capital S.A.R.L. v. Feldman*, No. 15-4964, 2016 U.S. Dist. LEXIS 125287 (S.D.N.Y.

   Sept. 14, 2016) ................................................................................................................. 13

## STATUTES

NY CLS Civ R § 76-a ................................................................................................. 21, 22, 23

Rev. Code Wash. (ARCW) §§ 19.86.020, 19.86.090 ................................................. 25

## RULES

Fed. R. Civ. P. 8(d) ...................................................................................................... 15, 19

Fed. R. Civ. P. 11 .............................................................................................................. 24

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 16

Fed R. Civ. P. 12(b)(6) ......................................................................................................... 5

Fed. R. Civ. P. 15(a) .......................................................................................................... 25

Fed. R. Civ. P. 56 ............................................................................................................... 24

## PRELIMINARY STATEMENT

Plaintiff, CDC Newburgh Inc. ("Plaintiff"), submits this memorandum of law in opposition to the motion to dismiss of Defendant Lienau Sales and Marketing, LLC ("Lienau").

Tacitly acknowledging that its motion to dismiss is unsupportable on the facts as pled, Lienau seeks to have Plaintiff's defamation claim tried on the papers at the pleading stage based on disputed documents and a disputed characterization of Amazon.com ("Amazon") policies and practices that directly contradicts the allegations of the First Amended Complaint ("FAC").  That is not permissible under federal procedure.  There are no specific documents on which the claims of the FAC depend with respect to Amazon's policies, and there are issues concerning the authenticity, accuracy and completeness of the documents Lienau characterizes as the "reports" that preclude consideration of those documents in connection with Lienau's motion.

Even considering the evidence Lienau offers, its motion still should not be granted.  The argument Lienau makes in support of its reliance on Amazon policy documents (that Plaintiff "misrepresented" Amazon automatically removes items reported as counterfeit) is just a pretext for Lienau to employ its blame-the-victim-style smear tactics to paint Plaintiff as the wrongdoer. Lienau would have the Court believe that, rather than simply providing Amazon with invoices that, according to Lienau, would have resolved this entire dispute, Plaintiff (a small business with limited resources) was determined to engage in expensive federal litigation to try to intimidate the defendants.  That is absurd.

Lienau is one of a number of bad actors in the e-commerce realm who exploit Amazon's hair-trigger anti-counterfeiting practices by filing false counterfeiting claims to eliminate non-authorized, but lawful, product offerings.  Lienau knows Amazon, as a matter of policy and practice, does not enforce exclusive distribution rights in the United States.  Amazon will not remove a product listing merely because the seller is not a part of an authorized distribution

network.  Amazon's policies state that it will not even accept a rights violation report that is based on exclusive distribution rights.

That knowledge is what makes Lienau's arguments regarding the purported "additional information" it claims to have provided to Amazon so disingenuous.  In light of Amazon's policy of non-enforcement with respect to reports founded on exclusive distribution, Lienau's only purpose in submitting its reports had to have been for Amazon to understand them to be reports of counterfeiting based on facts other than the mere assertion that Lienau did not know where Plaintiff obtained the products.

Lienau's argument that it is not a proper declaratory judgment defendant also is not correct. Lienau admits it is vested with independent enforcement authority with respect to the trademarks at issue.  That license and conveyance of authority, alone, is sufficient for the purposes of the Declaratory Judgement Act.  Further the trademark owner is a declaratory judgment co-defendant and, as a seller of competing products under the trademarks at issue, Lienau would have standing to assert a claim for false designation of origin under the Lanham Act regarding any counterfeiting of STM's trademarks.  Accordingly, Lienau is a proper declaratory judgment defendant.

As discussed in greater detail below, Lienau's motion to dismiss should be denied in all regards.  Further, its motion for leave to file a counterclaim should be denied as futile because New York's Anti-SLAPP statute does not apply to the communications at issue in this case and the section of that statute that provides for a counterclaim does not apply in federal court.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiff sells various consumer products online.  FAC ¶ 8.   Plaintiff's business model largely centers on the sale of products acquired from resellers, distributors and other reputable sources, rather than directly from the manufacturer.  *Id.* ¶ 10.  Plaintiff acquires authentic products from such sources – sold as excess inventory – and offers the products for resale, often at a

discount.  *Id*.

Consumer product manufacturers often implement exclusive authorized reseller programs under which, in order to purchase products directly from the manufacturer, the seller must be approved by the manufacturer.  FAC ¶ 9.  The fact that a manufacturer has an authorized reseller program, however, does not prevent sellers such as Plaintiff from acquiring inventory of products subject to such a program and lawfully reselling it.  *Id.*

In this case, Plaintiff acquired a number of computer and tablet cases manufactured by Defendant STM Bags, LLC ("STM") and offered them for sale on Amazon.com.  FAC ¶¶ 18, 24-26.  Plaintiff acquired the cases from a reputable, publicly traded company that purchased the items from STM.  *Id.* ¶ 27.  The invoice dates for the cases range between October 13 and 19, 2020.  *See* Declaration of Jason B. Lattimore ("Lattimore Decl.") ¶ 2.

Lienau is admittedly an "independent, commissions-based sales representative retained by STM to sell its products on Amazon" and "independently enforce STM's trademark rights by reporting violations of such rights."  *See* Lienau's Brief at 23; FAC ¶ 21.  On or about February 15, 2022, Lienau reported to Amazon that one of the STM products offered by Plaintiff was "counterfeit."  FAC ¶¶ 24, 36, 37.  As is Amazon's practice with respect to counterfeiting reports made against non-authorized resellers by brand owners or their representatives, the listing for the product was removed from Amazon without prior notice to Plaintiff (*i.e.*, automatically removed).  *Id.* ¶¶ 24, 39.  Plaintiff reached out to Lienau in response representing that the product was authentic and demanding retraction.  *Id.* ¶ 25.  In retaliation for Plaintiff's response, and insistence that Lienau withdraw the baseless reports, Lienau filed reports with Amazon between February 16 and 17, 2022, that nine more of the STM products Plaintiff was selling were "counterfeit."  *Id.* ¶¶ 26, 36, 37. Amazon also removed those products without prior notice to Plaintiff.  *Id.* ¶¶ 26, 39.

Lienau easily could have ordered a sample of any of the products at issue and confirmed that they were authentic.  *Id.*  ¶ 28.  Yet, Lienau refused to do so, even after Plaintiff put Lienau on notice that the products were authentic.  *Id.* ¶¶ 25, 28.  Instead it filed nine additional false reports.  Of course, Lienau had no interest in making an accurate report to Amazon.  Its objective was to remove Plaintiff's products regardless of authenticity.  *Id.* ¶¶ 26, 28-30.

Lienau disputes the precise language that was included in its reports to Amazon, admitting that it represented the products were "counterfeit" (see Lienau's Brief at 11) but denying that it represented the "product or packaging has an unlawful reproduction of a registered trademark" (as set forth in FAC ¶ 36).  Defendant's denial is rooted in the fact that Amazon provides two separate versions of its intellectual property rights infringement forms.  One may be used by anyone with an Amazon account.  The other can be used by sellers who have trademarks registered on Amazon's Brand Registry.  *See* Lattimore Decl. ¶ 4, Exs. A-B.  The more broadly available form contains Amazon's definition of "counterfeit" in parenthesis next to the word "counterfeit" in the portion of the form where the reporting party selects the description of its complaint.  *Id.* Ex. A. The reporting form on the Brand Registry does not appear to contain the same parenthetical (id. Ex. B).  The distinction Lienau attempts to draw here, however, is one without a difference given that Amazon publishes its definition of "counterfeit" in its intellectual property infringement reporting guidelines (id. Ex. C).  By representing that the items were "counterfeit," Lienau necessarily represented that they bore unlawful reproductions of a registered trademark.

Amazon received, interpreted and acted upon the reports as "report[s] from a rights owner that [Plaintiff was] listing counterfeit products."  FAC ¶ 39; *see also* Declaration of Temple Powers ("Powers Decl.") Ex. 11.  Amazon does not remove products based on reports that the products were not purchased through authorized channels (*i.e.*, that the products are non-authorized).  FAC

4

¶ 15.  Indeed, Amazon explicitly informs brand owners and their agents that Amazon does not assist manufacturers or sellers with enforcing exclusive distribution agreements or exclusive distribution rights.  Lattimore Decl. ¶ 6, Ex. D.

Plaintiff filed this action against STM and Lienau on February 25, 2022.  *See* Dkt. 1.  STM answered the Complaint.  *See* Dkt. 19 and 20.  However, on May 5, 2022, Lienau filed a request for, among other things, a pre-motion conference and leave to file a motion to dismiss, which the Court subsequently granted.  *See* DKT. 21 and 24.  In an attempt to "narrow and focus" the issues to be addressed on the motion, the parties stipulated to Plaintiff's amending its Complaint and Plaintiff filed the FAC on June 6, 2022.  *See* Dkt. 28.

## ARGUMENT

### I.    The Standard on a Motion to Dismiss.

Dismissal under Rule 12(b)(6) is only appropriate if, taking the well-pled allegations of the complaint in the light most favorable to the opposing party, the complaint fails to state a claim for which relief can be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The allegations of a complaint must be sufficient to raise the plaintiff's right of relief above the level of sheer speculation such that the claim, as pled, is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id*.  For the purpose of resolving a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## II.    The FAC States a Cause of Action for Defamation.

### A. The FAC Pleads an Actionable Statement of Fact and Falsity and Lienau's Attempt to Introduce Evidence Outside the Pleadings is Procedurally Improper.

The FAC alleges Lienau made false reports to Amazon that the STM products Plaintiff was selling were "counterfeit," that Amazon understood that to be what Lienau had represented, and that Amazon took action consistent with that understanding. *See* FAC ¶¶ 24-27, 35-39.  Based on the face of the FAC, Plaintiff clearly has pled Lienau made a false statement of fact, not opinion.  Lienau's quibbling over whether the statement also included the parenthetical definition of "counterfeit" is irrelevant.  Whether a branded item is authentic is a verifiable fact, and the FAC alleges Plaintiff's reports that the items at issue were "counterfeit" were false.  *See Id.* ¶ 37.

While tacitly acknowledging the sufficiency of the allegations of the FAC, Lienau asks the Court to consider documentary evidence outside of the four corners of the FAC (in the form of documents Lienau represents to be the reports at issue and materials from Amazon) under the theory that the documents are either incorporated by reference into the FAC or integral to the FAC.  Neither sets of documents are proper to consider in connection with Lienau's motion to dismiss.

Several conditions must be met before documents outside the complaint may be considered on a motion to dismiss under Rule 12(b)(6).  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  *Id.*  Lienau cannot meet these conditions.

### 1. The Court Cannot Properly Consider the Documents Lienau Represents are the Reports at Issue Because There is a Genuine Question of Whether the Documents Accurately Reflect the Reports.

Plaintiff does not dispute that the reports Lienau made to Amazon are integral to the FAC;

however, it does dispute that the documents Lienau has characterized as the "reports" accurately represent how the information was presented to Amazon or the full content of the information presented to Amazon.  Assuming without acknowledging the general authenticity of the documents Lienau attached to the Powers Decl., they appear to be summaries of select information, not the actual reports.  *See* Lattimore Decl. ¶ 4, Ex. B.  The information in the documents is not arranged in the same manner as it is in the Brand Registry version of the reporting system (see id.), and they lack the indicia of being the actual reports (such as a submission box, an indication of whether a test purchase was made, or a statement of confirmation regarding the accuracy of the information provided (see id. at Ex. A).

Plaintiff did not and does not have access to the actual reports submitted by Lienau and suspects that neither does Lienau – they are private and not publicly accessible.  *See* Lattimore Decl. ¶ 7.  Plaintiff initially had to rely on the Amazon reporting form generally available for use by members and Amazon's notifications in response to Lienau's reports, which state that Lienau reported the items as "counterfeit" (FAC ¶¶ 39), to determine the content of the reports.  Lattimore Decl. ¶ 7.  There was no mention of the purported "additional information" in the notices Amazon provided to Plaintiff.  *See, e.g.*, Powers Decl. Ex. 11.

Discovery of Amazon will likely be necessary to establish the full contents and format of the reports at issue.  And because there are genuine questions regarding whether the documents Lienau has presented accurately and completely reflect the form and content of the reports, they are not proper to consider on this motion.

### 2.  The Documents Lienau Relies Upon to Argue Amazon's Policies are not Integral to the First Amended Complaint.

With respect to documents pertaining to Amazon's policies, they are not properly considered because the policies are not integral to the claims in the FAC and the FAC does not

specifically incorporate by reference, rely upon or depend upon the policies. Lienau uses Plaintiff's allegation regarding automatic removal of products reported as counterfeit as a pretext for discussing Amazon policy. However, Plaintiff's claims would still be just as valid if removal of product was not automatic. Amazon did what it did. Amazon could have had no policy at all with respect to removing products in response to counterfeiting claims and it would not change that it did so in this case in response to Lienau's reports.

Lienau's intent in focusing on this issue is transparent: It believes it can use the argument to cast Plaintiff as the wrongdoer by (a) misrepresenting that Amazon required Plaintiff to submit its invoices for these products and Plaintiff did not do so; and (b) arguing that Plaintiff acted unreasonably by filing this action instead of simply submitting invoices to Amazon.

There is nothing about litigating this type of case that is attractive to a small business, like Plaintiff. It is expensive and time consuming. The purpose of this lawsuit, and any others like it, is to seek redress for the fraudulent and deceptive practice of making false reports of counterfeiting regarding non-authorized, but lawful, product listings. *See* FAC at *passim*.

The type of reporting abuse Lienau practices is, unfortunately, a reality of e-commerce and can be extremely damaging. *See* FAC ¶¶ 14-17. If the response to these types of reports was as simple as submitting an invoice to have a product reinstated, Plaintiff clearly would have done that rather than pay an attorney to pursue an expensive lawsuit.

The truth is that Amazon will not accept an invoice that is older than one year. *See* Lattimore Decl. ¶ 8, Ex. E. The invoices for the products at issue in this case were older than one year (dated October 2020) at the time Lienau submitted its reports. Lattimore Decl. ¶ 2. Thus, Lienau's argument that Plaintiff's claims were contrived and brought in bad faith is completely baseless and misleading. Plaintiff had no way of appealing removal of the products.

And although Amazon requires submission of invoices if it specifically requests them, that did not occur in this case.  Lienau's representation that Amazon requires sellers that receive a counterfeit notice to provide an invoice is plainly not correct, even based on the information Lienau relies on.  *See* Lienau's Brief at 13 (excerpt from policies, non-highlighted portion reflecting optional nature of appeal).

Lienau also faults Plaintiff for not turning over its invoices to Lienau after Lienau made its false reports.  That argument, considered in context, is terribly misguided.  Brand owners are notoriously hostile to non-authorized resellers because of price competition.  *See* FAC ¶¶ 10, 14, 31-32.  Lienau's suggestion that Plaintiff should have turned over its confidential product source and pricing information to Lienau – a company with a vested interest in interfering with Plaintiff's sourcing of products – after Lienau had already employed unethical tactics against Plaintiff is not reasonable.  That Lienau can be so cavalier about its use of the Amazon reporting system to, in effect, extort confidential product sourcing information from non-authorized sellers speaks volumes.

In sum, the Amazon policy information Lienau relies on is not integral to the FAC and Lienau's arguments that are based on such information both inaccurately describe Amazon policy and are otherwise incorrect.

**B. Even Considering the "Additional Information" Purportedly Submitted to Amazon, Plaintiff's Defamation Claims Remain Valid.**

The fundamental flaw in Lienau's argument regarding the "additional information" lies in Lienau's assertion that the purported statements render the reports to Amazon pure opinions.  As Lienau acknowledges, a pure opinion is a <u>statement of opinion</u> which is accompanied by the facts upon which it is based or does not imply that it is based on undisclosed facts.  *See* Lienau's Brief at 14.  The reports here fall into neither category.  Here, the reports contain a statement of fact –

that the items at issue are counterfeit – accompanied by what amounts to a footnote that is unclear in its meaning and significance.  Lienau's assertion to Amazon that the products at issue are counterfeit was unequivocal.  That Lienau submitted additional statements corroborating that its assertions of counterfeiting were correct does not transform the statements into opinion.

And even if one considers, for the sake of argument, that the additional statements add an element of opinion to the reports, which they do not, they do not render the reports pure opinion. On the contrary, they are very reasonably taken as implying that Lienau was in possession of facts supporting that Plaintiff had no way of obtaining the products apart from the source identified in the statements (which would be false and defamatory).  *See Davis v Boeheim*, 24 N.Y.3d 262, 272-73 (NY 2014) ("That, as defendants argue, Boeheim denied knowledge of facts, or prefaced some statements by saying 'I believe,' is insufficient to transform his statements into nonactionable pure opinion, because in context, a reasonable reader could view his statements as supported by undisclosed facts despite these denials."); *id.* at 269 ("[A]n opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, . . . is a mixed opinion and is actionable.")

Further, considering the statement in the context of Amazon's rules, which spell out that reports of non-authorized sales will not be acted upon by Amazon (see Lattimore Decl. Ex. D), it is evident that Lienau intended Amazon to receive its reports as definitive assertions of counterfeiting.  Knowing that Amazon does not take down products simply because they are non-authorized, Lienau's only purpose in submitting the reports had to be for Amazon to understand them as conveying that the items were, in fact, counterfeit based on more than just the fact that they were not purchased through STM's authorized dealer program.  Lienau therefore has no legitimate grounds to argue that its statements were pure opinion.

And it is clear from Amazon's communications to Plaintiff that Amazon understood, received and acted upon the reports as representing that Plaintiff was selling counterfeits.  FAC ¶ 39 ("We received a report from a rights owner that you are listing counterfeit products").  Thus, it is not only evident that Lienau's statements are susceptible to defamatory meaning, but that they were so understood.  *See Purgess v. Sharrock,* 33 F.3d 134, 140 (2d Cir. 1994) (the fact that the statements at issue were, in fact, understood as defamatory supported the conclusion that the statements were susceptible to defamatory connotation).

At best, Lienau presents an issue of fact regarding the meaning of its statements that cannot be resolved on a motion to dismiss.  *See Conti v. Doe*, 535 F. Supp. 3d 257, 270 (S.D.N.Y. 2021) ("If any defamatory construction is possible, it is a question of fact for the jury whether the statements were understood as defamatory.") (citing *Purgess*, 33 F.3d at 140; internal quotation marks omitted).

Accordingly, Lienau's arguments for dismissal are not valid.

### C.  The Question of Whether a Privilege Applies Cannot be Decided at this Stage of the Case, and There is Nothing to Support the Application of Any Privilege.

Lienau's arguments regarding the application of privilege rely on a fact narrative that impermissibly contradicts the allegations of the FAC and ignores the fact-intensive exceptions and prerequisites to application of the privileges Lienau cites.  These issues cannot be resolved at the pleading stage.

#### 1.  The Pre-Litigation Privilege is Inapplicable and Nothing In the FAC Supports the Assertion that Lienau's Reports Were Pre-Suit Cease and Desist Letters.

Lienau attempts to recharacterize its reports as pre-litigation cease and desist letters.  That argument overreaches and does not fit the facts of the case, much less the allegations of the FAC.

The purpose of New York's qualified pre-litigation privilege is to protect attorneys from

defamation suits arising out of cease-and-desist letters sent by attorneys.  *See Front, Inc. v Khalil*, 24 N.Y.3d 713, 718-20 (N.Y. 2015).  This qualified privilege does not apply to pre-suit communications by non-attorneys.  *See Giuffre v. Maxwell*, No. 15-7433, 2017 U.S. Dist. LEXIS 64405, *23 (S.D.N.Y. March 27, 2017) ("Where the statement cannot be attributed to an attorney, there is no justification for protecting it by privilege.").

Further, even assuming for the sake of argument that such a privilege could apply, which it does not, Lienau's assertion of privilege would present fact questions not appropriate for a motion to dismiss.  *See* discussion in Section II.C.2 below.

### 2. Plaintiff's Assertion of Qualified Privilege, Including the Common-Interest Privilege, Does Not Provide a Basis for a Valid Motion to Dismiss.

#### a. Applicability of the Qualified Privilege Cannot Be Determined on the Face of the First Amended Complaint.

Lienau provides no authority for the proposition that any qualified privilege applies in the context of this case, nor does Lienau explain how all of the elements for application of the privilege are conclusively met on the face of the FAC.  Instead, Lienau presumes applicability then proceeds to argue that Plaintiff has not pled malice.  The Court should reject Lienau's argument on those grounds alone.  *See Hotaling & Co., LLC v. LY Berditchev Corp.*, 2022 U.S. Dist. LEXIS 70556, *9 (D.N.J. April 18, 2022)  (denying motion to dismiss for largely the same reasons).

The FAC does not plead that the statements at issue were directed to a matter of common interest.  The FAC alleges Lienau's interest was in abusively exploiting STM's trademark rights for the purpose of removing Plaintiff's listings from Amazon (see id.), an interest Amazon surely does not share and which cannot support assertion of the privilege.  "There . . . is no qualified privilege to make a defamatory attack merely to protect one's business interest."  *Rupert v. Sellers*, 411 N.Y.S.2d 75, 82-83 (4th Dep't 1978)), *aff'd*, 50 N.Y.2d 881 (1980); *accord Hillel v. Iqvia, Inc.*, No. 21-666-cv, 2022 U.S. App. LEXIS 8198, *4 (2d. Cir. Mar. 29, 2022).

The applicability of a qualified privilege is not susceptible to determination on a motion to dismiss, at least not in this case, because it raises fact issues that go beyond the pleadings. There are several fact intensive requirements and exceptions to the privilege. *See Conti*, 535 F. Supp. 3d at 275 (the privilege does not apply where a defendant 'act[s] beyond the scope of the privilege, act[s] with common law malice, or act[s] with knowledge that the statement was false or with a reckless disregard as to its truth.'") (citations and internal quotation marks omitted). Further, to come within the scope of the privilege, the speaker must have a "reasonabl[e] belief" that the information conveyed exists. *See id.* With respect to the common interest privilege specifically, the communication at issue must be reasonably calculated to serve the common interest. *See Hillel*, 2022 U.S. App. LEXIS 8198 at *4. And the statement at issue must have been made in "good faith." *Rupert*, 411 N.Y.S.2d at 82.

Further, the burden to establish the applicability of the privilege is on the defendant. *See Conti*, 535 F. Supp. 3d at 275; *see also Sokol v Leader*, 904 N.Y.S.2d 153, 156 (N.Y. App. Div. 2010) (holding plaintiff was not required to demonstrate facts establishing malice on a motion to dismiss). The plaintiff does not have the burden of pleading facts establishing that a privilege does not apply and therefore it would be inappropriate to address privilege defenses at this stage.

**b.    The FAC Sufficiently Pleads Malice.**

Even if the FAC somehow establishes the applicability of a qualified privilege (which it does not), the allegations of the FAC are sufficient with respect to malice to warrant discovery on those issues. *See Yukos Capital S.A.R.L. v. Feldman*, No. 15-4964, 2016 U.S. Dist. LEXIS 125287, *21 (S.D.N.Y. Sept. 14, 2016) (a plaintiff need only plead facts suggestive enough to warrant discovery with respect to the exceptions to the qualified privilege) (citing *Stukuls v. New York*, 397 N.Y.S.2d 740, 746 (N.Y. 1977)); *see also* Fed. R. Civ. P. 9(b) ("Malice . . . of a person may be averred generally.").

"Malice," for the purposes of overcoming the qualified privilege, means either actual malice, which is a "knowing or reckless disregard for the truth" (*Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011)), or common law malice, which is found when the speaker's motivation for making the statements at issue was solely for "an improper purpose," including "spite or ill will" (*Stukuls*, 397 N.Y.S.2d at 746).   A party may establish actual malice with respect to a statement by demonstrating that the speaker had serious doubts as to the truth of the statement (*Conti*, 535 F. Supp. 3d at 279) or was "highly aware that it [was] probably false" (*Chandok*, 632 F.3d. at 815).

Plaintiff pleads facts that, if true, are sufficient to support a finding of actual malice.  The FAC alleges Lienau filed the reports at issue as a tactic for removing unauthorized products from the market without any genuine basis for asserting the items were counterfeit and with intentional disregard for the accuracy of the reports.  *See* FAC ¶¶ 7, 15, 25-26, 28-29, 33.   That is not a mere failure to investigate, as Lienau suggests.  This is not a dispute over an irresponsibly published newspaper article – the context in which the cases discussing failure to investigate arose and where considerations of freedom of the press and a higher standard of proof (clear and convincing vs. preponderance) is typically applicable (see *Weldy v. Piedmont Airlines*, 985 F.2d 57, 65 (2d Cir. 1993)).  This dispute arises in a commercial context and involves an intentional repeated practice of reporting products as inauthentic without any regard for the truth of the assertions.  Lienau's submission of these reports without regard for their accuracy alone demonstrates a high awareness that the reports probably were not accurate or at least support the inference that Lienau had serious doubt as to the truth of the reports.

Further, the fact that Lienau engaged in this conduct despite that the authenticity of the items in question could quickly, easily and inexpensively have been determined by making test

14

purchases, and the potentially devasting consequences of the reports to Plaintiff (see FAC ¶ 17), also supports a finding of actual malice.  Lienau's failure to make such a purchase under these circumstances, even in the face of Plaintiff's response to Lienau's first report, supports the inference that Lienau knew doing so would likely confirm the items were authentic.  At a minimum, the allegations of the FAC justify discovery on this issue.

The FAC also alleges common-law malice.  *See id.*; *see also Weldy*, 985 F.2d at 63 (jury could have found abuse of the qualified privilege by determining the defendant had the improper purpose of exaggerating events to cause the discharge of a co-worker).  The FAC alleges Lienau had the improper purpose of filing false counterfeiting reports in order to cause Amazon to remove Plaintiff's products from the marketplace.  *See* FAC ¶¶ 7, 15, 25-26, 28-29, 33.  That, alone sufficiently pleads common-law malice and that Lienau acted beyond the scope of the privilege (see *Weldy*, 985 F.2d at 62).

Plaintiff also alleges Lienau's reports were motivated by spite or ill-will.  *See* FAC ¶¶ 7, 15, 25-26, 28-29, 33.  Lienau misinterprets the allegations of the FAC as suggesting it had an independent financial motive in filing the reports.  That is not the inference that should be drawn from those allegations.  Rather, the FAC alleges Lienau filed the reports with the sole purpose of harming Plaintiff and that Lienau's motive for filing the reports stemmed from spite and ill-will arising out of Plaintiff's status as an unauthorized reseller and Plaintiff's demand for retraction. FAC ¶¶ 25-26, 28-29, 31, 33.[1]  It is of no moment that Lienau's spite and ill-will stems from an adverse financial relationship.  Its sole motive was to harm Plaintiff, regardless.  Again, at a minimum, the allegations of the FAC warrant discovery on this issue.

_____

[1] To the extent there is any inconsistency in the allegations of the FAC in this regard, it does not deprive Plaintiff of this argument.  Fed. R. Civ. P. 8(d)(2)-(3)

**III.    There is a Justiciable Controversy Between Plaintiff and Lienau for the Purposes of the Declaratory Judgment Act.**

Lienau argues that the Court does not have declaratory judgment jurisdiction over it because there is purportedly no Lanham Act dispute between Plaintiff and Lienau.  That is not correct.

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) at the pleadings stage, the Court "'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'"  *Hettler v. Entergy Enters.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (quoting *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).

The FAC pleads facts sufficient to establish declaratory judgment jurisdiction over Lienau. Notably, although Lienau was permitted to contest those facts with evidence outside of the pleadings, such as its agreement(s) with STM (see *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 419, n.5 (2d Cir. 2015)), it chose not to do so.

For a court to have jurisdiction under the Declaratory Judgment Act, there need only exist "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations and internal quotation marks omitted); *see also Saleh v. Sulka Trading, Ltd.*, 957 F.3d 348, 353-54 (2d Cir. 2020) (discussing the *Medimmune* standard).

The circumstances of this case present an actual controversy under the Declaratory Judgment Act with respect to the relative rights of the parties under federal trademark law.  *See Verbena Prods. LLC v. BeSweet Creations Inc.*, No. 21-cv-23797, 2022 U.S. Dist. LEXIS 27936, at *11 (S.D. Fla. Feb. 16, 2022) (actual controversy existed where "[t]he Disputed Listings were removed from the Amazon marketplace based on [declaratory judgment] defendants'

representation to Amazon that the Disputed Listings infringed on [their] trademark rights"); *Amazon.com, Inc. v. Nat'l Ass'n of College Stores, Inc.*, 826 F. Supp. 2d 1242, 1250 (W.D. Wash. 2011) (court had "little trouble concluding" actual controversy existed under the Lanham Act based on complaints of false advertising to the Better Business Bureau); *Studio 010 Inc. v. Digit. Cashflow LLC*, No. C20-1018, 2022 U.S. Dist. LEXIS 75232, *10, 19-20 (W.D. Wash. Apr. 4, 2022) (actual controversy existed based on a patent infringement report to Amazon causing Amazon to delist the accused product); *see also MedImmune*, 549 U.S. at 128-134 (actual controversy exists where a declaratory judgment plaintiff's self-avoidance of injury is prompted by a claim of intellectual property rights); *Am. Time Exch., LLC v. Tissot SA*, No. 17-4737, 2017 U.S. Dist. LEXIS 160090, *6 (S.D.N.Y. Sept. 26, 2017) (actual controversy existed based on statements to third parties amounting to accusation that plaintiff infringed defendant's trademarks).

There is no dispute that Lienau made the infringement reports at issue based on its admittedly independent authority to take enforcement action with respect to STM's trademarks, which are governed by the Lanham Act.  *See* FAC ¶¶ 18, 21-22, 39; Lienau's Brief at 23-24.  The mere fact that Lienau is not the owner of the rights does not alter that it has the power to enforce the rights independently to the detriment of Plaintiff and that it did, in fact, do so.  Further, it is fair to infer from the fact that Lienau is a commission-based seller of STM products on Amazon that its independent right to enforce STM's trademarks is linked to its financial interest in selling the products.  *See* FAC ¶¶ 21-22.  Thus, the parties' adverse interests are tied not only to Lienau's right to enforce the STM trademarks, but also the parties' competitive relationship in the market, making Lienau the equivalent of a rights owner for all practical purposes.

Lienau takes the position that declaratory judgment jurisdiction does not exist where the defendant does not have a cause of action against the plaintiff that mirrors the declaratory judgment

claim.   Even accepting Lienau's position, for the sake of argument, declaratory judgment jurisdiction would still exist here because, Lienau would have standing to bring a claim against Plaintiff for false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) with respect to any counterfeiting of STM's marks.  *See Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98-5408, 2001 U.S. Dist. LEXIS 18738, *18-19 (S.D.N.Y. Nov. 16, 2001) (a plaintiff "need only show 'potential commercial or competitive injury' from a violation of § 1125(a) to establish standing to sue under Section 43(a) of the Lanham Act).  "[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks." *Murphy v. Provident Mut. Life Ins. Co.*, 756 F. Supp. 83, 86 (D. Conn. 1990) (citing *Silverstar Enters. Inc. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y. 1982)); *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980) (addressing standing under Section 43(a) in the context of false advertising).   Therefore, even Lienau's standard for declaratory judgment standing is met here.

Lienau's challenge to declaratory judgment jurisdiction also fails because its interpretation of the Declaratory Judgment Act as being limited to those instances where a defendant has a cause of action against the Plaintiff is inconsistent with the Supreme Court's holding in *Medimmune*. Adopting Lienau's approach would exclude from the scope of the Declaratory Judgment Act a host of activity giving rise to legitimately concrete adverse legal interests susceptible to resolution by the courts, including the precise scenario addressed in *Medimmune* (where the defendant had no cause of action against the plaintiff because the plaintiff continued to pay royalties).  *See Medimmune*, 549 U.S. at 128.

The line of cases Lienau cites in support of its position trace back to the Federal Circuit's pre-*Medimmune* holding in *Microchip Tech. Inc. v. Chamberlain Group*, 441 F.3d 936, 943 (Fed.

Cir. 2006).  That holding was based on the "reasonable apprehension" test the Supreme Court held invalid in *Medimmune. Id.; see also Saleh*, 957 F.3d 348, 354 (2d Cir. 2020) (confirming the reasonable apprehension test is no longer valid in light of *Medimmune*).

Here, Plaintiff is seeking a declaration that Lienau did not and does not have a legal basis to enforce the STM trademarks against Plaintiff on the grounds asserted in Lienau's reports to Amazon.  Plaintiff's declaratory judgment count is rooted in Lienau's actual enforcement efforts, the continued suspension of Plaintiff's products from Amazon, the negative impact of Lienau's reports on Plaintiff's Amazon account (see FAC ¶¶ 16-17), and the threat of future enforcement action by Lienau and/or STM.  The Lanham Act provides the legal framework for declaring the relative rights between Plaintiff and Lienau with respect to this dispute and fully resolving the dispute.  This dispute is therefore appropriate for resolution under the Declaratory Judgment Act and the Court has jurisdiction to hear Plaintiff's declaratory judgment claim.

## IV.    Plaintiff's Tortious Interference Claim is Properly Pled.

Plaintiff's Tortious interference claim is not based solely on defamation and therefore is not duplicative of Plaintiff's defamation claim.  Even if Lienau prevailed on the defamation claim, which it should not, Plaintiff's tortious interference claim would still stand.  Specifically, the claim would survive under the theory that Lienau filed the report with the intent of inducing Amazon to remove Plaintiff's products by (a) fraudulently omitting information necessary for Amazon to ascertain the actual basis (or lack thereof) for the reports; and (b) thereafter allowing Amazon to proceed under the false impression caused by the omission.  *See* FAC ¶ 49; *see also* Fed. R. Civ. P. 8(d)(2)-(3) (Plaintiff is entitled to plead in the alternative and plead as many separate claims and defenses as it has, regardless of consistency).

Under that theory, Lienau intended and expected Amazon to incorrectly believe Lienau had a basis for reporting the items as counterfeit (apart from merely not having been purchased

through authorized channels) and allowed Amazon to proceed under that incorrect belief by removing Plaintiff's products and maintaining the delisting of the products. "'Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous. Both are fraudulent.'" *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F. Supp. 332, 336 (S.D.N.Y. 1982)) (quoting *Donovan v. Aeolian Co.*, 270 N.Y. 267 (N.Y. 1936)). Lienau's fraud by omission provides an alternative ground for recovery that is distinct from and independent of the basis for Plaintiff's defamation claim. And because fraud by omission is independently tortious, Plaintiff has also pled the third element of a tortious interference claim.

Accordingly, the tortious interference claim should not be dismissed.

## V.   Plaintiff has Properly Pled a Claim for Common Law Unfair Competition.

Under New York common law, an unfair competition claim encompasses an "incalculable variety" of illegal practices. *See Roy Exp. Co. Establishment of Vaduz v. CBS*, 672 F.2d 1095, 1105 (2d Cir. 1982) (citations and internal quotation marks omitted). Although the claim is not without its limits, it does encompass misappropriation of commercial benefits, including goodwill, of a competitor through false or misleading conduct. *See Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 209 (E.D.N.Y. 2018).

Here, the FAC pleads facts supporting that Lienau gained a competitive benefit, and Plaintiff suffered damage to sales and goodwill, as a result of Lienau's false reports to Amazon, and failure to withdraw those reports when demanded, despite Lienau's knowing it had absolutely no genuine basis for making the reports. FAC at ¶¶ 7, 14-22, 24-29. The FAC further alleges Lienau did so with the intention of harming Plaintiff and preventing customers from purchasing products from Plaintiff. *Id.* ¶¶ 30-32. These allegations, as well as the allegations discussed with respect to Plaintiff's tortious interference claim, are sufficient to state a claim for common law

unfair competition.

**VI.    Lienau's Request for Leave to File a Counterclaim Under New York's Anti-SLAPP Statute Is Not Well Founded and Should Be Denied as Futile.**

The Court may deny leave to amend where amendment would be futile (*i.e.*, where the proposed amended claim would not survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure).  *See Carroll v. Trump*, No. 20-cv-7311-LAK, 2022 U.S. Dist. LEXIS 43512, *2, __ F. Supp. 3d __ (S.D.N.Y. March 10, 2022) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d. Cir. 2007)).  As set forth in detail in the sections that follow, New York's Anti-SLAPP statute does not apply to private communications such as those at issue here and the section of the statute that authorizes a counterclaim does not apply in federal court.

**A.  The New York Anti-SLAPP Statute Does Not Apply to the Statements at Issue.**

Section 76-a of New York's Anti-SLAPP statute – the portion of the statute that governs whether a communication falls within the statute's scope – states:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false . . . .

NY CLS Civ R § 76-a(2).  An "action involving public petition and participation" is defined under the statute in relevant part as "any communication in a place open to the public or a public forum in connection with an issue of public interest."  NY CLS Civ R § 76-a(1)(a).  Thus, in order for a communication to fall within the scope of the statute the communication must (1) take place in "a place open to the public or a public forum" and (2) concern an "issue of public interest."  *See also Sackler v American Broadcasting Cos., Inc.*, 71 Misc. 3d 693, 698 (S. Ct., N.Y. County, 2021) (stating that the purpose of the current iteration of New York's Anti-SLAPP statute is to protect free speech in a public forum); Lienau's Brief at 27.

21

**1.   The Communications at Issue Were Not Made in a Public Forum.**

Without citing any authority, Lienau argues that the communications at issue were made in a public forum.  *See* Lienau's Brief at 26, 27, 29.  Lienau's rationale for its argument is that Amazon is a "public market" and, according to Lienau, "[i]n their totality, Amazon listings, user comments, seller commentary, and the dialogue between sellers, trademark owners, and Amazon, constitute a public forum about those ecommerce listings" (id. at 29).

Lienau's argument attempts to attribute to the Anti-SLAPP statute a scope that is entirely unsupported by its text and contrary to the legal principles applicable to its construction.  *See Harfenes v. Sea Gate Ass'n*, 167 Misc. 2d 647, 653 (Sup. Ct. NY Cnty 1995) (stating that, because the Anti-SLAPP statute is in derogation of the common law, Courts are to construe the statute narrowly) (citing, *inter alia*, *Transit Com. v. Long I. R. Co.*, 253 N.Y. 345, 348 (N.Y. 1930)).

The fact that Amazon hosts a public market and has public content does not mean that reports of counterfeiting communicated privately to Amazon are somehow made in a public forum. A "public forum" is, at a minimum, one open to access by the public.  Amazon's rights infringement reports are not accessible to the public, nor are they open for public comment.  They are private communications that are not even seen by the sellers accused of counterfeiting.  *See* Lattimore Decl. ¶ 7.  The communications at issue therefore clearly do not constitute communications in a public forum.  *See Miller v. Appadurai*, No. 160329/2020, 2022 N.Y. Misc. LEXIS 539, *11 (Sup. Ct., NY Cnty, Feb. 4, 2022) ("It can hardly be said that the Letter, transmitted by email to two people, qualifies as a communication made in a public forum.").

**2.   The Communications at Issue Were Matters of Purely Private Concern.**

New York's Anti-SLAPP law does not apply here for the additional reason that the statements at issue do not concern "an issue of public interest," as required under Section 76-a(1)(a).  Section 76-a(1)(d) excludes "purely private matter[s]" from the definition of "Public

Interest."  *See* NY CLS Civ R § 76-a(1)(d).

Lienau argues that the issue of counterfeiting is one of public concern.  While that may be so, it is irrelevant in this context.  This case does not concern the public issue of counterfeiting.  Rather, it concerns Lienau's private commercial interests or, at most, a private matter between Lienau, STM, Amazon and Plaintiff.  Lienau did not make a public posting to discuss counterfeiting or invite public comment, it made private reports of counterfeiting regarding a single entity.

Under governing precedent, statements "directed only to a limited private audience" by their nature do not fall "'within the sphere of legitimate public concern.'"  *Huggins v. Moore*, 94 N.Y.2d 296, 303 (N.Y. 1999) ("[P]ublications directed only to a limited, private audience are 'matters of purely private concern.'") (quoting *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 759 (1985)); *accord Aristocrat Plastic Surgery, P.C. v. Silva*, 169 N.Y.S.3d 272, 275 (N.Y. App. Div. 2022); *Miller*, 2022 N.Y. Misc. LEXIS 539 at *11 (letter published to two people in the same organization was a communication involving a purely private matter).  The rule of *Huggins* precludes a finding that the statements that are the subject of this case concern an issue of public interest.[2]

### B. The Anti-SLAPP Statute's Counterclaim and Attorney-Fee Provisions Are Inapplicable.

Lienau relies on NY CLS Civ R § 70-a as the basis for its request for leave to seek relief pursuant to the Anti-SLAPP statute.  However, by its terms, Section 70-a only applies to statements falling within the scope of NY CLS Civ R § 76-a.  *See* NY CLS Civ R § 70-a(1).  Because, as

---

[2] Lienau mentions, in passing, the actual malice requirement under Section 76-a.  Even if that section applied here, which it does not, Plaintiff has pled actual malice (as discussed above) and Section 76-a, by its terms, does not reach Plaintiff's claims for injunctive relief.  *See* FAC at ¶ 45 and Prayer for Relief.

discussed above, Section 76-a is inapplicable to this case, Section 70-a also does not apply and Lienau's filing a claim for relief thereunder would therefore be futile.

Further, as discussed in greater detail below, Section 70-a is not applicable in federal court and, even if it was applicable, Lienau cannot meet the standard of demonstrating that Plaintiff's claims are frivolous, as required under that section.

**1. Section 70-a of New York's Anti-SLAPP Statute Does Not Apply in Federal Court.**

As the Court has held in at least three other cases addressing the issue, Section § 70-a does not apply in federal court because it conflicts with federal procedure and pleading standards. *See Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("New York's Anti-SLAPP law is inapplicable in federal court. Accordingly, the counterclaim premised on New York's Anti-SLAPP law must be dismissed.") (Caproni, J.); *accord Kesner v. Buhl*, No. 20 Civ. 3454-PAE, 2022 U.S. Dist. LEXIS 43094, *46 (S.D.N.Y. March 10, 2022) ("This Court finds Judge Caproni's analysis as to why the § 70-a standard cannot be applied in diversity actions to be well-reasoned and clearly correct, and adopts it here."); *Carroll*, 2022 U.S. Dist. LEXIS 43512 at *15, __ F. Supp. 3d __ (S.D.N.Y. March 10, 2022) (agreeing with the analysis in *National Academy* and noting that the same holding applies to CPLR 3211(g)); *Friedman v. Bloomberg, L.P.*, No. 3:15-cv-443, 2022 U.S. Dist. LEXIS 62141, *2 (D. Conn. April 4, 2022) (attorney fee award provision of "New York's Anti-SLAPP law . . . conflicts with the standards under Federal Rules of civil Procedure 12 and 56 and impermissibly imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure.") (citations and internal quotation marks omitted).

For the reasons set forth in the cases cited above, and on the authorities cited therein, Lienau cannot rely on Section 70-a as the basis for asserting a counterclaim, seeking an award of attorney

fees or otherwise seeking relief in this case.  Section 70-a is inapplicable for the additional reason

that a fee award under that section would conflict with Rule 11 in that it provides for an award of

fees without the protections of Rule 11's 21-day safe-harbor provision.

### 2.   Plaintiff's Claims Are Clearly Not Frivolous.

Even assuming for the sake of argument that NY CLS Civ R § 70-a applied here, Lienau

cannot make a credible argument that Plaintiff's claims are frivolous.  As discussed above,

Lienau's argument that this case was brought for an improper purpose is premised on a false

account of how Plaintiff supposedly could have avoided this lawsuit by providing Amazon with

an invoice.  And the fact that Lienau dedicated nearly thirty pages to arguing for dismissal of

Plaintiff's claims belies the assertion that the claims lack merit.

## VII.   In the Event the Court Dismisses Any Aspect of Plaintiff's Claims, Plaintiff Should Be Granted Leave to Amend.

To the extent any of Plaintiff's claims are dismissed, dismissal should be without prejudice.

*See* Fed. R. Civ. P. 15(a); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6

(2d Cir. 1987).  Although, as Lienau points out, Plaintiff has amended its pleadings once, that was

done to narrow and focus the dispute on this motion in light of Lienau's request for a pre-motion

conference (Dkt. 22).  *See* Dkt. 28.  Plaintiff's position at the time of amendment was that the

claims addressed on this motion should not be dismissed.  To the extent the Court disagrees in any

regard, Plaintiff should not be precluded from, at a minimum, seeking leave to amend in light of

the Court's ruling.

Plaintiff also has very recently become aware of an additional cause of action available to

it under the Washington Consumer Protection Act ("WCPA").  The WCPA provides a statutory

right of action to anyone harmed by another's "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce." Rev. Code Wash. (ARCW)

§§ 19.86.020, 19.86.090.

To prevail in a private WCPA action, a plaintiff must establish "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Insur. Co.*, 719 P.2d 531, 535 (Wash. 1986).  One may bring a private action under the WCPA against a defendant with whom one is not in a consumer or other business relationship. *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 568 (Wash. Ct. App. 2017).

The purpose of the WCPA's broad private right of action is to "to protect the general public . . . as a whole." *Hangman Ridge*, 719 P. 2d at 537.  The cause of action's third element, which in effect requires a showing that the conduct at issue had an impact on consumers, embodies that intent.

The WCPA applies in this case.  Amazon, the entity to which the fraudulent acts of Defendants were directed, has its headquarters in Washington, and Washington consumers were impacted by the removal of Plaintiff's STM products from the Amazon marketplace.

Plaintiff can allege all of the elements necessary to support a claim under the WCPA.  Making false or misleading reports of counterfeiting is an unfair and deceptive practice.  The reporting was to Amazon and impacted the availability of Plaintiff's products on Amazon.com, and therefore occurred in trade or commerce.  Consumers in Washington and those shopping on Washington-based Amazon (*i.e.*, the public) were impacted because they have an interest in the availability of products and healthy price competition on the Washington-based Amazon platform. Plaintiff suffered injury both to its business and sales.  And Lienau's actions caused the harm.  The United States District Court for the Western District of Washington recently denied a motion to dismiss claims under the WCPA in circumstances almost identical to those of this case.  *See Studio*

*010 Inc.*, 2022 U.S. Dist. LEXIS 75232 at *10, 15-16 (allegations of false reporting of patent infringement to Amazon, causing delisting of products).

Accordingly, Plaintiff has a valid claim under the WCPA and should be allowed an opportunity to plead it specifically.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Lienau's motion to dismiss in its entirety and deny its request for leave to file an Anti-SLAPP counterclaim as futile.  To the extent the Court grants any aspect of Lienau's motion, dismissal should be without prejudice and Plaintiff should be given the opportunity to amend its pleadings.


Date:  September 14, 2022                    Respectfully submitted,


                                   s/ Jason B. Lattimore
                                   Jason B. Lattimore
                                   **JASON B. LATTIMORE, ESQ.**
                                   55 Madison Avenue, Suite 400
                                   Morristown, NJ 07960
                                   Tel: (973) 998-7477
                                   Jason@LattimoreLaw.com

                                   *Counsel for Plaintiff,*
                                   *CDC Newburgh Inc.*

## **CERTIFCATE OF SERVICE**

I, Jason B. Lattimore, hereby certify that, on this date, I served the above document, and the supporting Declaration of Jason B, Lattimore, on all counsel by delivering the same to them by email at the email addresses supplied by them for notice through the court's ECF electronic filing system.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of September, 2022.


_s/  Jason B. Lattimore_____

Jason B. Lattimore