UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/18/2023
```

CDC NEWBURGH INC.,

                          Plaintiff,

        -against-

STM BAGS, LLC and LIENAU SALES AND
MARKETING, LLC (d/b/a LIENAU)

                          Defendants.

22-cv-1597 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff CDC Newburgh Inc. (CDC) commenced this action on February 25, 2022 against Defendants STM Bags, LLC ("STM" or "Defendant") and Lienau Sales and Marketing, LLC ("Lienau" or "Defendant) (collectively, "Defendants"), alleging violations of New York state and federal law arising from Defendant's involvement in the removal of ten of its product listings from Amazon.com. (ECF No. 1.) In its Amended Complaint ("AC"), Plaintiff advances the following claims against both Defendants: (1) defamation; (2) tortious interference with prospective business relations; (3) a declaratory judgment of non-infringement; and (4) common law unfair competition. (ECF No. 29, "AC".) Defendant STM, in response, asserts the following counterclaims against Plaintiff: (1) trademark infringement under both federal and New York state common law; (2) false advertising; (3) unfair competition; and (4) trademark dilution. (ECF No. 35, "Answer".)

Before the Court are Defendant Lienau's motion to dismiss Plaintiff's Amended Complaint and add a counterclaim (ECF No. 43), as well as Plaintiff's motion to dismiss Defendant STM's counterclaims (ECF No. 36). For the reasons that follow, the Court GRANTS Defendant Lienau's motion to dismiss Plaintiff's Amended Complaint in its entirety, but GRANTS in part, and DENIES in part, Plaintiff's motion to dismiss Defendant STM's counterclaims.

1

## BACKGROUND

### I.   Factual Background

#### A.   Factual Allegations in the Complaint

The following facts are drawn from Plaintiff's Amended Complaint and are accepted as true and construed in the light most favorable to Plaintiff for purposes of Plaintiff's motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

#### i.   Description of Plaintiff's Business and Amazon's Intellectual Property Infringement Policy

Plaintiff is a "non-authorized reseller" of consumer products that it purchases from resellers and distributors, among other sources, in order to resell these products at a discount. (AC ¶¶ 8-10.) Although Plaintiff does not usually purchase its inventory directly from the relevant manufacturers, it claims that its products are authentic. (*Id.*) Plaintiff sells its products through online marketplaces like Amazon.com ("Amazon"). (*Id.* ¶ 11.)

Plaintiff alleges that Amazon's policy regarding reports of intellectual property infringement (the "Policy") are known to Defendants, given Defendants' familiarity with e-commerce. (*Id.* ¶ 12.) The Policy purportedly encompasses the following procedures: (1) when a trademark owner submits a report that a seller is listing a counterfeit product on Amazon, Amazon automatically removes the listing without warning to the seller; and (2) Amazon does not remove product listings in response to reports that a non-authorized seller is selling authentic products (*Id.* ¶¶ 12-14.) Additionally, Plaintiff alleges that, following Amazon's removal of a product in response to a counterfeiting report, Amazon's algorithm considers this history of removal when determining how frequently the accused seller's other products appear in consumer's searchers.

(*Id.* ¶ 16.) Plaintiff claims that this practice reduces the accused seller's sales of all products that it lists on Amazon. (*Id.*)

### ii.   Description of Defendants' Businesses and Relationship

Defendant STM sells cases, bags, sleeves, and other accessories for electronic devices under the "STM" and "DUX" trademarks. (AC ¶ 19.) Defendant Lienau offers sales, marketing, analytics, and logistics services to companies operating in the consumer products sector, including assisting clients with removing fraudulent products from Amazon's website. (*Id.* ¶ 20.)

Plaintiff alleges that Defendant Lienau has served as a commission-based sales representative of Defendant STM at all relevant times. (*Id.*) Moreover, Plaintiff alleges that STM has authorized Lienau to independently enforce STM's trademark rights by reporting violations of these rights. (*Id.* ¶ 21.) Plaintiff thereby claims that Lienau acted on its own behalf and as STM's agent when reporting Plaintiff's products to Amazon, on the basis that Lienau has a financial interest in eliminating lawful non-authorized sales of STM's products. (*Id.* ¶¶ 22-23, 31.)

### iii.   Defendants' Reports to Amazon that Plaintiff's Products were Counterfeit

On February 15, 2022, Plaintiff received a notice from Amazon that Defendant Lienau had reported Plaintiff to Amazon for selling counterfeit versions of Defendant STM's DUX shell sleek case for the Apple iPad Pro and that, as a result, Plaintiff's listing for this item was removed. (*Id.* ¶ 24.) In response, Plaintiff contacted Lienau to explain that this item was authentic, object to Lienau's filing of this report without conducting a test purchase, and demand that Lienau retract this report. (*Id.* ¶ 25.) Between February 16 and 17, 2022, Lienau filed additional reports with Amazon (collectively, with its initial report, the "Reports") that instigated the removal of nine more of Plaintiff's listings on Amazon for STM cases. (*Id.* ¶ 26.)

Plaintiff alleges that it knew that the items it sold through these ten listings (the "Products") were authentic because it obtained them from a reputable, publicly traded company that purchases these items from STM. (*Id.* ¶ 27.) Additionally, Plaintiff claims that Lienau filed the Reports for anticompetitive reasons after it, STM, and/or both Defendants suspected or confirmed the products were genuine. (*Id.* ¶¶ 28, 30.)

### B. Factual Allegations in the Counterclaims

The following facts are drawn from the allegations in Counterclaim Plaintiff's counterclaims and are accepted as true and construed in the light most favorable to Counterclaim Plaintiff for purposes of Counterclaim Defendant's motion to dismiss. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Oteze Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005).

### i.    Counterclaim Plaintiff and its Trademarks

STM develops, manufactures, markets, and sells mobile device, smartphone, and tablet cases and accessories under the STM, STM Goods, and DUX brands.[1] (Answer ¶ 4) It sells its products through a network of authorized dealers (the "Authorized Dealers"). (*Id.*) STM claims that it has established several trademarks (the "Trademarks"), through either the use of the trademarks in commerce or by registering them with the United States Patent and Trademark Office (the "USPTO").[2] (*Id.* ¶ 6.) Additionally, STM alleges that it actively uses, advertises, and markets the STM Trademarks throughout the United States and that the "general consuming

---

[1] The STM, STM Goods, and DUX brands are registered trademarks. (Answer ¶ 4.)
[2] The Registration Numbers for these trademarks are: 4,532,588; 4,005,830; 5,777,610; 4,636,983; 5,412,682; 4,826,440; 5,729,584; 5,729,585; 4,587,377; 5,410,527; 3,150,771; 6,309,599; 6,567,386; 5,397,362; and 5,052,114. (*Id.* ¶ 6.) However, the Court recognizes that Counterclaim Plaintiff has not tied any of these registration numbers to a particular trademark.

4

public" thereby associates the STM Trademarks with high-quality mobile device cases and accessories. (*Id.* ¶¶ 9-13.)

### ii.    STM has implemented quality controls to address problems endemic to online retail.

STM alleges that online marketplaces threaten a manufacturer's ability to maintain its brand integrity because customers cannot easily distinguish between the authorized and unauthorized sellers of a manufacturer's products. (Answer ¶¶ 14-23.) In response to this issue, STM developed quality controls to ensure that purchasers of STM products receive the "special characteristics" they purportedly expect from products sold under the STM Goods and DUX names, which include the STM Warranty. (*Id.* ¶¶ 24-27.) STM further claims that its ability to exercise these quality controls is essential to the quality of its products as well as the value of its Trademarks. (*Id.* ¶¶ 27-28.)

One such quality control is STM's practice of conducting all sales directly or through its authorized dealers (the "Authorized Dealers"). (*Id.* ¶ 29.) STM's Authorized Dealers are required to abide by a specific policy (the "Policy"). (*Id.* ¶ 30.) The Policy prohibits Authorized Dealers from selling products on third-party websites, including marketplaces like Amazon, without express authorization from STM, requires Authorized Dealers to adhere to STM's quality control requirements as they relate to returns and warranties, and imposes requirements pertaining to how STM's Trademarks, trade names, and product images and description are used and displayed. (*Id.* ¶¶ 31-34.) STM products purchased from STM and Authorized Dealers also include the STM Warranty (the "Warranty"), which provides that a customer can receive a repair or replacement product if that product possesses a defect in manufacturing, materials, or workmanship during the applicable warranty period. (*Id.* ¶ 37.) The STM Warranty is purportedly a "material component"

of "genuine" STM products because consumers factor the existence of this Warranty into their decision to purchase an STM product. (*Id.* ¶¶ 39-40.)

STM alleges that these quality control requirements are "material," because consumers consider it relevant to their purchasing decision whether the STM product they may buy is sold by an authorized seller subject to such requirements, rather than a non-authorized seller who does not need to abide by them. (*Id.* ¶¶ 35-36.)

### iii.    STM alleges that Counterclaim Defendant does not abide by STM's quality controls and customer service requirements.

Counterclaim Defendant is not an Authorized Dealer. (Answer ¶ 41.) STM reasons that, in consequence, it does not follow STM's quality control measures, particularly as it has not provided STM with its business information or given STM an opportunity to vet it. (*Id.* ¶ 42.) Specifically, STM notes that Counterclaim Defendant does not comply with STM's quality control requirements because it sells the Products on its Amazon storefront without prior approval, has not disclosed to STM where it acquired the Products, and sell the Products as "new" when they were previously sold, and potentially opened or repackaged. (*Id.* ¶¶ 43-45.) Counterclaim Defendant's failure to comply allegedly prevents STM from exercising control over the quality of the Products. (*Id.* ¶ 46.) STM asserts, too, that Counterclaim Defendant does not comply with STM's customer service requirements because it cannot provide the type of instruction and support that STM requires its Authorized Dealers to offer to consumers. (*Id.* ¶¶ 47-48.)

STM claims that the Products are not "genuine," given the failure of Counterclaim Defendant to abide by STM's quality controls and customer service requirement and that the Products do not include the STM Warranty. (*Id.* ¶¶ 50-54, 59.) According to STM, the sale of these purportedly counterfeit products infringes on STM's Trademarks and diminishes their value

because consumers associate negative experiences that may result from purchasing them with STM's brands. (*Id.* ¶¶ 55-67.)

## II.   Procedural Background

On February 25, 2022, Plaintiff commenced the instant action by filing a complaint against Defendants. (ECF No. 1.) Subsequently, on March 6, 2022, Defendant STM answered Plaintiff's complaint. (ECF No. 19.) STM filed an amended answer, with the addition of five counterclaims, on April 27, 2022. (ECF No. 20.)

With the approval of the Court, Plaintiff filed an Amended Complaint on June 6, 2022. (ECF No. 29.) Defendant STM answered Plaintiff's Amended Complaint on August 15, 2022, again including five counterclaims in its Answer. (ECF No. 35.)

On September 14, 2022, Plaintiff filed a motion to dismiss Defendant STM's counterclaims, with supporting papers. (ECF No. 36.) Defendant STM opposed Plaintiff's motion to dismiss its counterclaims that same day. (ECF No. 41.)

Additionally, on October 3, 2022, Defendant Lienau filed a motion to dismiss Plaintiff's Complaint and add a counterclaim, with supporting papers. (ECF No. 43.) Plaintiff opposed Defendant Lienau's motion to dismiss that same day. (ECF No. 47.)

## LEGAL STANDARD

## I.   Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual

allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679.  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013) (citation omitted).

## II.    Consideration of Extrinsic Documents on a Rule 12(b)(6) Motion to Dismiss

When a party submits materials "outside the complaint" for consideration in adjudicating a 12(b)(6) motion to dismiss, Rule 12(d) of the Federal Rules of Civil Procedure provides a court with two options: the court may either (1) exclude the extrinsic documents from review, or (2) "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56" of the Federal Rules of Civil Procedure ("Rule 56"). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002). However, "[a]ny written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," as well as any matters of which judicial notice may be taken, are deemed included in the complaint, so the Court may consider them without converting the motion to dismiss into a motion for summary judgment. *Id.* at 152

(quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)); *see Chambers*, 282 F.3d at 153.

Further, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext*, 62 F.3d at 72). "A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (emphasis in original) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991)).

Under Rule 201(b) of the Federal Rules of Evidence, a court may also take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir.2005). Moreover, matters of which the Court takes judicial notice are not considered matters outside the pleadings; the Court may therefore consider them when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir.2008). In particular, "courts routinely take judicial notice Of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991).

## DISCUSSION

I.    **Defendant Lienau's motion to dismiss Plaintiff's claims for defamation, tortious interference with prospective business relations, unfair competition, and a declaratory judgment of non-infringement is GRANTED in its entirety.**

### A. Defendant's motion to dismiss Plaintiff's defamation claim is granted.

Plaintiff argues that Defendant Lienau's Reports are defamatory, as these Reports: (1) falsely claimed that Plaintiff's Products were counterfeit; (2) Amazon interpreted the Reports as factual assertions that the Products were counterfeit; and (3) Amazon removed these Products' listings consistent with that interpretation. (ECF no. 47, at 13.)  Defendant, however, argues that the alleged defamatory statements that Plaintiff's Products were counterfeit (the "Statements") are not actionable because they are expressions of pure opinion, not statements of fact or mixed opinion. (ECF No. 44, at 14-17.)

To state a claim for defamation under New York law, a plaintiff must allege: (i) a false statement of fact of and concerning the plaintiff, (ii) published to a third party without authorization or privilege, (iii) made with the applicable level of fault ("negligence or actual malice depending on the status of the [defamed] party") on the part of the publisher, (iv) that either caused special harm or constitutes defamation *per se*. *Electra v. 59 Murray Enters.*, 987 F.3d 233, 259 (2d Cir. 2021); *see Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001)). A plaintiff must plead the defamatory statements with some particularity. N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." (emphasis added)). Under Federal Rule of Civil Procedure 8's liberal pleading standards, this requires a plaintiff to "identify the allegedly defamatory

statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Neal v. Asta Funding, Inc.*, 13-CV-2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014).

As discussed *infra*, the Court agrees with Defendant that Plaintiff has failed to satisfy the first element of a defamation claim under New York state and federal law (i.e., a false statement of fact of and concerning Plaintiff)— the allegation in the Reports that Plaintiff's products are counterfeit are statements of opinion, not fact.

"Under both New York and federal law, statements of pure opinion are not actionable as defamation." *Qureshi*, 430 F.Supp.2d at 288 (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163, 1166 (1993)); *see also Levin*, 119 F.3d at 196 ("[E]xpressions of opinion are not actionable...."); *Mann v. Abel*, 10 N.Y.3d 271, 856 N.Y.S.2d 31, 885 N.E.2d 884, 885–86 (2008) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and no matter how offensive, cannot be the subject of an action for defamation."). An expression of pure opinion is protected "however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner*, 551 F.2d at 913 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Buckley v. Littell*, 539 F.2d 882, 888 (2d Cir. 1976)). Whether a statement is one of fact or opinion is a question of law for the court to determine. *Mann*, 10 N.Y.3d 271, 856 N.Y.S.2d 31, 885 N.E.2d at 885.

The principle that expressions of opinion are protected "belies an often complicated task of distinguishing between potentially actionable statements of fact and nonactionable expressions of opinion." *Qureshi*, 430 F.Supp.2d at 288. To distinguish statements of fact from opinion, New York courts may consider the following three factors:

(1) whether the specific language in issue has a precise meaning which is readily

understood; (2) whether the statements are capable of being proven true or false;

and (3) whether either the full context of the communication in which the statement

appears or the broader social context and surrounding circumstances are such as to

signal readers or listeners that what is being read or heard is likely to be opinion,

not fact.

*Id.* (quoting *Gross*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d at 1166).  Moreover, "[w]hen

the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or

speculation, this signals the reader that what is said is opinion, and not fact." *Levin*, 119 F.3d at

197 (citation omitted).

It follows that a statement of opinion is one which is either "accompanied by a recitation

of the facts upon which it is based" or "does not imply that it is based upon undisclosed facts."

*Steinhilber*, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d at 552; *see also  Gross*, 82 N.Y.2d 146,

603 N.Y.S.2d 813, 623 N.E.2d at 1168 ("a proffered hypothesis that is offered after a full recitation

of the facts on which it is based is readily understood by the audience as conjecture"). However, a

statement may become a "mixed opinion," and therefore actionable, if it "impl[ies] that the

speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader."

*Levin*, 119 F.3d at 197; *see also Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 66 (S.D.N.Y. 2021)

("While a pure opinion cannot be the subject of a defamation claim, an opinion that implies that it

is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a

'mixed opinion' and is actionable") (quoting *Davis v. Boeheim*, 24 N.Y.3d 262, 269, 22 N.E.3d

999, 1004 (2014) (internal quotations omitted)).

In the present case, Plaintiff alleges that, between February 15 and 17, 2022, Defendants submitted ten reports pertaining to ten of Plaintiff's Amazon product listings that purportedly stated, "product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)." Plaintiff, however, admits that it "did not and does not have access to the actual reports submitted by Lienau."[3] (ECF No. 47, at 14.) Moreover, Defendant has provided what it describes as copies of the Reports, and these copies include allegations of counterfeiting that are markedly different from those that Plaintiff alleges. (*See* ECF No. 45-1.)

Although Plaintiff does not dispute that the Reports are integral to its Amended Complaint (ECF No. 47, at 14), it asserts that the documents Defendant describes as copies of the Reports "[do not] accurately represent how the information was presented to Amazon or the full content of [that information]." (ECF No. 47, at 14.). To support this contention, Plaintiff has provided blank copies of documents that it claims are Amazon counterfeit reporting forms and which contain a different format to the copies of the Reports that Defendant provided. (*See* ECF No. 48-1.) Defendant responds that: (1) Plaintiff's admission that it never accessed the Reports discredits their assertion that the copies of the Reports Defendant provided, and which the employee who submitted the Reports declared under penalty of perjury are true copies of them, are inaccurate; and (2) questioning the formatting of the Reports does not challenge its contents. (*See* ECF No. 49, at 5; ECF No. 45, at 3.)

The Court finds Plaintiff's assertion that the copies of the Reports are inaccurate unconvincing. First, Plaintiff concedes that it does not possess actual knowledge of the Reports. (ECF No. 47, at 14.) Second, the blank reporting form it submitted to the Court appears to contain

---

[3] Additionally, Plaintiff asserts that it "suspects" Defendant Lienau also does not have access to the Reports, as they are "private and not publicly accessible." (*Id.*) Plaintiff's suspicion strains credulity, however, given the Defendant Lienau is indisputably the entity that submitted the Reports to Amazon.

the "additional comments" section that also exists in Defendant's copies of the Reports and in which the allegedly defamatory statements were ostensibly made. (*See* ECF No. 48-1.) And, finally, the employee of Defendant who submitted the Reports attested that the documents Defendant provided are true copies of the Reports she sent to Amazon. (*See* ECF No. 45.) Thus, the Court may consider in its determination the allegedly defamatory statements that are included in the Reports Defendant provided, as it is also undisputed that the Reports are integral to the AC. *See Chambers*, 282 F.3d at 153.

Defendant included either one or the other of the following assertions that Plaintiff's Products were counterfeit in each of the ten Reports:

(1) "Please note only CaseMotions and Sportique are authorized by STM to sell on Amazon. These sellers are not authorized nor are they buying direct from STM therefore we conclude this product is counterfeit."; and (2) "Please know STM has authorized only Sportique and CaseMotions to sell on Amazon.com outside of STM selling direct. STM has double checked their records and have no data to support this seller acquired STM product through a legitimate channel therefore we can safely assume they are selling counterfeit products."

(*See* ECF No. 45-1.) The allegedly defamatory statements "we conclude this product is counterfeit" and "we can safely assume they are selling counterfeit products" are statements of pure opinion, as they are assumptions that are clearly drawn from the information that precedes them. Plaintiff, for instance, presents the statements "*we conclude* this product is counterfeit" (emphasis added) and "*we can safely assume* they are selling counterfeit products" (emphasis added) as inferences that arise from the information that STM only authorized Sportique and CaseMotions to sell their products on Amazon,

that Plaintiff did not purchase their products from STM directly, and that Defendant was unable to locate data indicating that Plaintiff acquired the Products from a legitimate source. *See Gross*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d at 1168 ("a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture"). Thus, the alleged defamatory statements are pure opinions and not actionable, rather than facts or mixed opinions. *See Frascatore v. Blake*, 344 F. Supp. 3d 481, 499 (S.D.N.Y. 2018) (finding that the alleged defamatory statement that an incident involved racial profiling was an opinion because the speaker "disclosed…. the basis for any implication that the incident involved racial profiling").

Defendant's motion to dismiss Plaintiff's defamation claim is thereby granted, as Plaintiff has failed to plausibly allege that Defendant made a false statement of fact.

**B. Defendant's request to file an "anti-SLAPP" counterclaim is denied.**

Defendant requests that the Court permit it to file an "anti-SLAPP" counterclaim pursuant to New York's anti-SLAPP statute, N.Y. Civil Rights Law §§ 70-a and 76-a (the "Statute"). (ECF No. 43, at 1.) Specifically, Defendant argues that it possesses a cognizable claim under the Statute because Plaintiff has failed to plead actual malice in connection with its defamation claim and Defendant's allegedly defamatory statements were made in a public forum in connection with an issue of public interest. (ECF No. 44, at 34.) Plaintiff responds that the Court should not permit Defendant to file an anti-SLAPP counterclaim because Defendant's statements were not made in a public forum and do not concern an issue of public interest. (ECF No. 47, at 29-30.) Additionally, Plaintiff argues that New York's anti-SLAPP law does not apply in federal court. (*Id.*, at 30-32.)

The Statute applies to communications on matters of public interest. *Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022), *aff'd sub nom*. *Kesner v. Dow Jones & Co., Inc.*, No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023) (citing N.Y. Civ. Rights Law § 76-a). It imposes an "actual malice" standard for "any communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." *Id.*

The Court agrees with Plaintiff that it should deny Defendant's request to file an anti-SLAPP counterclaim. Numerous other courts in this Circuit have concluded that New York's anti-SLAPP law does not apply in federal court. This Court agrees for the reasons outlined at length in these decisions— that New York's anti-SLAPP law conflicts with the procedures and pleading standards established in Federal Rules of Civil Procedure 12 and 56. *See Carroll v. Trump*, 590 F. Supp. 3d 575, 584 (S.D.N.Y. 2022) (noting, "the requirement of consideration of affidavits [in New York's anti-SLAPP law] conflicts with Federal Rule 12, which permits consideration only of the pleadings and documents incorporated therein by reference unless affidavits are submitted to and not excluded by the court" and that the requirement of New York's anti-SLAPP law that "summary judgment of dismissal in a covered action 'shall be granted unless the party responding to the motion demonstrates that the action ... has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law'… makes summary judgment more readily available in covered actions than would Federal Rule 56, which permits summary judgment of dismissal only if 'there is no genuine

16

dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."); *see also Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,* 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("§ 70-a of New York's anti-SLAPP law is inapplicable in federal court. Accordingly, the counterclaim premised on New York's anti-SLAPP law must be dismissed."); ("[D]efendants' amendment would be futile because New York's anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure"); *Friedman v. Bloomberg, L.P.*, No. 3:15-CV-443 (AWT), 2022 WL 1004578, at *1 (D. Conn. Apr. 4, 2022); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (holding that the D.C. anti-SLAPP Act was inapplicable in federal court because it required a plaintiff to meet a higher burden at the pre-trial stage by showing a "likelihood of success on the merits").

The Court thereby rejects Defendant's request to file an anti-SLAPP claim, as New York's anti-SLAPP law does not apply in federal court.

**C. Defendant's motion to dismiss Plaintiff's claim for tortious interference with prospective business relations is granted.**

Plaintiff argues that Defendant tortiously interfered with its business relations with Amazon because Defendant filed the Reports with the intent of inducing Amazon to remove Plaintiff's Products by: (1) fraudulently omitting information necessary for Amazon to determine the basis of the reports; and (2) permitting Amazon to remove Plaintiff's listings under the false impression that this omission caused. (ECF No. 47, at 26.). Defendant, however, contends that their filing of the Reports does not constitute interference with Plaintiff's business relations with

Amazon, that their conduct was not motivated by an improper purpose, and that Plaintiff's claim is duplicative of its defamation claim, which the Court discussed *supra*. (ECF No. 44, at 26-30.)

Under New York law, a plaintiff must plead four elements to establish a claim for tortious interference with prospective business relations: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). "[T]he plaintiff must allege that it was 'actually and wrongfully prevented from entering into or continuing in a specific business relationship.'" *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-CV-10769 (LJL), 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, No. 17-CV-2913 (NGG) (RER), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017)).

As noted *supra*, Plaintiff's claim rests entirely on its allegation that that Amazon removed the listings that Defendant reported as infringing on their Trademarks. (AC ¶¶ 38, 42.) However, removal of listings on an e-commerce platform does not constitute harm to the underlying business relationship with the platform. *See Eminah Properties LLC v. Energizer Holdings, Inc*., 531 F. Supp. 3d 593, 607 (E.D.N.Y. 2021) (stating that "black marks" placed on a sellers account and the removal of listings are not sufficient to establish an injury to the underlying relationship); *RFP LLC v. SCVNGR, INC.*, 788 F.Supp.2d 191 (S.D.N.Y. 2011) (holding that the underlying relationship was undisturbed despite listings being removed). The Court thereby grants Defendant's motion to dismiss Plaintiff's claim for tortious interference with business relations, as Plaintiff has failed to sufficiently allege that Defendant interfered with its business relations

with Amazon.

**D. Defendant's motion to dismiss Plaintiff's claim for unfair competition under New York state common law is granted.**

Defendant argues that Plaintiff has not asserted a cognizable claim for unfair competition under New York state common law because Plaintiff has not sufficiently pled a theory of "palming off" or "misappropriation." (ECF No. 44, at 31-32.) Plaintiff, however, contends that it has sufficiently plead this claim because its allegations encompass the misappropriation of commercial benefits, including goodwill, of a competitor through false or misleading conduct. (ECF No. 47, at 27.) Specifically, Plaintiff argues that it suffered damages to its sales and goodwill due to Defendant's Reports— these Reports (which Plaintiff alleges Defendant knew were false) resulted in the removal of its product listings from Amazon. (*Id.*) Plaintiff further claims that Defendant benefitted from this removal at Plaintiff's expense because Defendant has a financial interest in eliminating lawful non-authorized sales of STM's products, as they are: (1) a commission-based sales representative of Defendant STM; and (2) independently enforce STM's trademark rights by reporting violations of these rights. (AC ¶¶ 21-23, 31.).

"The standard of unfair competition under New York law is a virtual cognate of the federal Lanham Act and is predicated on the theory of the misappropriation of a claimant's commercial goodwill." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 255 (S.D.N.Y.2004) (internal citation omitted). "The essence of both sources of protection is the likelihood that the consuming public will be confused about the source of the allegedly infringing product." *E.R. Squibb & Sons, Inc. v. Cooper Labs., Inc.*, 536 F. Supp. 523, 526 (S.D.N.Y.1982). "In order for [a] defendant to succeed in demonstrating unfair competition under both the Lanham Act and the common law, defendant must show a likelihood of confusion or deception of the

consuming public as to the source of the allegedly infringing product and bad faith on the part of plaintiffs." *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 269 (S.D.N.Y. 2005).

New York law "'recognize[s] two theories of common-law unfair competition: palming [or passing] off and misappropriation.'" *Carson Optical Inc.*, 202 F.Supp.3d at 267 (quoting *ITC Ltd. v. Punchgini*, Inc., 9 N.Y.3d 467, 476, 850 N.Y.S.2d 366, 880 N.E.2d 852 (2007) ). "Palming off ... is the 'sale of the goods of one manufacturer as those of another.'" *Id.* at 267-68 (citations omitted); *Punchgini*, 9 N.Y.3d at 477 n. 2, 850 N.Y.S.2d 366, 880 N.E.2d 852 ("'One of the most obvious forms' of palming off 'occurs when the copier of an article overtly and explicitly misrepresents its source[, for example], where [a] defendant ... substituted its product for plaintiff's when customers specifically asked for plaintiff's product.' " (alterations in original) (citations omitted)). "The second theory, misappropriation, prevents individuals from 'misappropriat[ing] the results of the skill, expenditures and labors of a competitor.'" *Carson Optical Inc.*, 202 F.Supp.3d at 268 (quoting *Punchgini*, 9 N.Y.3d at 477, 850 N.Y.S.2d 366, 880 N.E.2d 852). To state a claim for the misappropriation theory of unfair competition, a plaintiff must allege "that the defendant: (1) 'misappropriated the plaintiff[ ]'s labors, skills, expenditures, or good will'; and (2) 'displayed some element of bad faith in doing so.'" *Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 446 (S.D.N.Y.2011) (quoting *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692, 833 N.Y.S.2d 138 (2d Dep't 2007)).

Defendant is correct that Plaintiff has failed to plead either palming off or misappropriation. Regarding palming off, Plaintiff does not offer any credible allegations that Defendant copied its products or substituted its products for Plaintiff's products— indeed, Plaintiff sells products that the entity for which Defendant provides services (i.e., Defendant STM) initially

manufactures and sells. Moreover, concerning misappropriation, Plaintiff advances the tenuous argument that Defendant misappropriated Plaintiff's expenditures and good will because it filed reports alleging that Plaintiff's listings violated STM's trademark rights, resulting in the removal of these listings; their removal purportedly benefitted Defendant because STM hired Defendant to enforce its trademark rights and as a "commission-based sales representative." (AC  ¶¶ 21-23, 31.) Although this circuitous reasoning may indicate that Defendant received an indirect benefit from filing the Reports, as their removal of Plaintiff's listings presumably benefits Defendant's employer, Defendant STM, the act of filing them hardly represents a misappropriation of Plaintiff's expenditures or good will. And even if the Court agreed with Plaintiff that Defendant committed misappropriation, Plaintiff's conclusory accusations that Defendants Lienau and STM "acted with actual malice or with reckless disregard for the truth of [the Reports]" and submitted the Reports to Amazon "with the intent to injure Plaintiff without regard for the accuracy of the statements" are, absent supporting factual allegations, conclusory, and thereby plainly insufficient to show that Defendant did so in "bad faith," as is necessary to state a plausible claim for misappropriation. (ECF No 29 ¶¶ 40, 43); *Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 446 (S.D.N.Y.2011).

As Plaintiff has not plausibly alleged New York state common law unfair competition under either a palming off or misappropriation theory, the Court grants Defendant's motion to dismiss this claim.

**E. Plaintiff's request for a declaratory judgment that the products that were delisted from Amazon are not counterfeit and therefore do not infringe STM's trademarks or**

**constitute a false designation of origin by means of counterfeiting is denied, as the Court should not exercise jurisdiction over Plaintiff's request.**

Plaintiff asserts that it is: (1) entitled to a declaratory judgment that the Products are not counterfeit (and thereby do not infringe on STM's Trademarks) because it has sufficiently demonstrated that it sells "genuine" STM products; and (2) that the Court has jurisdiction to issue this judgment because Defendant is a rights owner of STM's Trademarks "for all practical purposes." (ECF No. 47, at 24.) However, Defendant claims that it is inappropriate for the Court to exercise jurisdiction over Plaintiff's request, as Plaintiff has not sufficiently alleged that Defendant possesses ownership rights in the STM Trademarks. (ECF No. 49, at 12.)

"Federal courts may generally hear cases asking for declarations of trademark noninfringement." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18-CV-02442, 2022 WL 4280403, at *7 (S.D.N.Y. Sept. 15, 2022). A court must ask "whether the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020). This requires the plaintiff to "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* Even if a plaintiff seeking declaratory relief meets this burden, the Declaratory Judgment Act "vests a district court with discretion to exercise jurisdiction over a declaratory action." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021) (*citing Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023) (recognizing that the Second Circuit has regularly interpreted the Declaratory Judgment Act to confer "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be

empowered to hear"). In *Admiral Insurance*, the Second Circuit established six factors that "should inform a district court's exercise of such discretion":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

57 F.4th at 99-100 (citing *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012)). District courts have "broad discretion to weigh the factors" enumerated in *Admiral Insurance*, and "no one factor is sufficient, by itself, to mandate that a district court exercise – or decline to exercise – its jurisdiction to issue a declaratory judgment." *Id.* at 100. "Likewise, these factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.*

Here, the initial question of whether Plaintiff has met its burden to adequately allege that it "has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product" is unnecessary for the Court to determine, as the first

and second factors enumerated in *Admiral Insurance* clearly indicate that the Court should not exercise jurisdiction over Plaintiff's request for a declaratory judgement. *Saleh*, 957 F.3d at 354.

As noted *supra*, Plaintiff seeks a court determination that it did not sell counterfeit STM products. With respect to the first *Admiral Insurance* factor, this fundamentally factual question "is not a legal issue for the court to declare, and therefore declaratory judgment is not appropriate." *Exec. Park Partners LLC v. Benicci Inc.*, No. 22-CV-02560 (PMH), 2023 WL 3739093, at *4 (S.D.N.Y. May 31, 2023) (quoting *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, No. 20-CV-03702, 2022 WL 3586746, at *4 (E.D.N.Y. Aug. 22, 2022)) (internal quotations omitted). Moreover, with respect to the second *Admiral Insurance* factor, the declaratory judgment Plaintiff seeks will not "finalize the controversy" or "offer relief from uncertainty." 57 F.4th at 99. Plaintiff's requested declaratory relief does not remedy the chief harm Plaintiff asserts in this action— the removal of its product listings by Amazon. (*Id.*) Plaintiff's declaratory judgment, too, does not resolve Plaintiff's claims for defamation, tortious interference, and unfair competition. (*Id.*) Thus, declaratory relief on the non-infringement of the STM Trademarks will not resolve the underlying dispute in this action. (*Id.*)

As the first and second *Admiral Insurance* factors weigh strongly against the exercise of jurisdiction over Plaintiff's request for a declaratory judgment of non-infringement, Defendant's motion to dismiss this claim is granted.

I. **Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's counterclaims for trademark infringement, unfair competition, false advertising, and trademark dilution is GRANTED in part, and DENIED in part.**

A. **Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's counterclaims for trademark infringement and unfair competition under federal law is denied, but**

**its motion to dismiss Counterclaim Plaintiff's claim for unfair competition under New York state common law is granted.**

Counterclaim Plaintiff's first, third, and fifth claims allege trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A), and (with respect to trademark infringement) New York state common law, and they are premised on Counterclaim Defendant's sale of the Products. Specifically, Counterclaim Plaintiff argues that the STM Trademarks are registered with the United States Patent and Trademark Office and that the Products are counterfeit because they do not come with the STM Warranty and are not subject to the same quality controls or customer service requirements as "real" STM products. (Answer ¶¶ 73-94, 117-138, 163-185.) Counterclaim Defendant, however, contends that Counterclaim Plaintiff's allegations regarding quality controls and customer service requirements are vague and conclusory. (ECF No. 37, at 15-20.) Counterclaim Defendant also asserts that the allegation that the STM Warranty does not apply to the Products is immaterial, as the absence of STM Warranty does not render these products materially different from those that possess the STM Warranty. (ECF No. 37, at 20-22.) Lastly, Counterclaim Defendant argues that the "first sale doctrine" immunizes it from claims of trademark infringement and unfair competition, as this doctrine provides that a seller holds the right to resell a branded product without liability. (*Id.*)

Section 32(1) of the Lanham Act prohibits the "use in commerce ... of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Correspondingly, Section 43(a) prohibits the "use[ ] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false

designation of origin, false or misleading description of fact, or false or misleading representation

of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or

approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §

1125(a)(1)(a).

The standards governing claims for unfair competition, under Section 43(a) of the Lanham

Act, and for trademark infringement, under Section 32, are substantially similar. *See Twentieth*

*Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("[T]he

standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C.

§ 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114).");

*Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) ("[A] federal claim of false

designation of origin ... is also referred to as a claim for unfair competition."). Both claims are

considered under a "familiar two-prong test." *Coty Inc. v. Excell Brands*, LLC, 277 F. Supp. 3d

425, 440 (S.D.N.Y. 2017) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 237

(S.D.N.Y. 2012)). "The test looks first to whether the plaintiff's mark is entitled to protection, and

second to whether defendant's use of the mark is likely to cause consumers confusion as to the

origin or sponsorship of the defendant's goods." *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp.

2d 471, 486 (S.D.N.Y. 2008) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.

2003)); *see Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) ("The crucial issue in an

action for trademark infringement is whether there is any likelihood that an appreciable number of

ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.") (internal quotation marks and alterations omitted).

Additionally, a successful unfair competition or trademark infringement claim must establish that the defendant made "use in commerce" of the plaintiff's trademark. *See* 15 U.S.C. § 1114(1)(a) (restricting the "use in commerce" of "a registered mark"); 15 U.S.C. § 1125(a)(1)(a) (establishing liability for "[a]ny person who ... uses in commerce ..." a registered or unregistered mark in a manner likely to cause confusion). A court must decide "use" as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005).

Under New York common law, the standards for trademark infringement and unfair competition are "virtually identical" to the standard under the Lanham Act, "except that [New York law] requires an additional showing of bad faith." *Lopez v. Adidas Am., Inc.*, 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020) (quoting *TechnoMarine SA v. Jacob Time, Inc.*, 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012)).

Counterclaim Defendant clearly made "use in commerce" of Counterclaim Plaintiff's Trademarks by selling products bearing these Trademarks on Amazon. Moreover, as Counterclaim Plaintiff alleges that its Trademarks are registered with the USPTO, its Trademarks are entitled to protection. Counterclaim Plaintiff's claims for trademark infringement and unfair competition, then, hinge on whether Counterclaim Defendant's use of the Trademarks is likely to confuse consumers as to the origin of the Products.

Counterclaim Defendant relies on the "First Sale Doctrine" to argue that its use of the STM Trademarks is not likely to confuse consumers as to the origin of the Products— in other words, it

claims that it is not liable to Counterclaim Plaintiff for trademark infringement or unfair competition because the Products are "genuine" STM products. (ECF No. 37, at 12-22.) However, Counterclaim Plaintiff asserts that Counterclaim Defendant cannot use this doctrine as a defense to the likelihood of confusion element because the Products: (1) are not subject to the same quality controls as "real" STM products; and (2) are materially different from such products because they do not contain the STM Warranty. (ECF No. 40, at 9.) Counterclaim Plaintiff also argues that, in any case, an inquiry into the "likelihood of confusion" element for claims of trademark infringement and unfair competition is inappropriate at the pre-answer stage. (*Id.*)

The Court agrees with Counterclaim Plaintiff— courts in this Circuit typically do not conduct a full analysis into the question of "likelihood of confusion" at the motion to dismiss stage due to its fact-intensive nature. *Van Praagh v. Gratton*, 993 F.Supp.2d 293, 303 (E.D.N.Y.2014) ("[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss.") (quoting *The Name LLC v. Aria*s, No. 10 Civ. 3212 (RMB), 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010)); *see also Peek & Cloppenburg KG v. Revue, LLC*, No. 11 Civ. 5967 (DAB), 2012 WL 4470556 at *5 (S.D.N.Y. Sept. 19, 2012) ("[A] likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties.") (quoting *DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26 (2d Cir.1982)); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 446 (S.D.N.Y.2012) (collecting cases).Where, as here, a plaintiff alleges that the defendant used a mark identical to the mark for which the plaintiff holds a trademark to advertise or sell the same type of goods that the plaintiff sells, "[t]his suffices to support an allegation of consumer confusion at the motion to

dismiss stage.'" *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

Counterclaim Plaintiff has plausibly alleged at this stage in the proceedings that: (1) Counterclaim Defendant made "use in commerce" of the Trademarks; (2) its Trademarks are "entitled to protection"; and (3) Counterclaim Defendant's products use of the Trademarks is likely to confuse consumers as to the origin of its products. Therefore, Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's claims for trademark infringement and unfair competition under federal law is denied. However, the Court grants Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's New York state common law claim for trademark infringement, as Counterclaim Plaintiff has failed to show that Counterclaim Defendant acted in bad faith. *Lopez v. Adidas Am., Inc.*, 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020) (quoting *TechnoMarine SA v. Jacob Time, Inc.*, 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012)). The only allegations of bad faith that Counterclaim Plaintiff offers in its counterclaims, for instance, are wholly conclusory— the counterclaims only allege that "[Counterclaim] Defendants have acted with fraud, malice, and willful and wanton conduct" and "Counterclaim Defendants willfully intentionally, maliciously, and in bad faith infringed on the STM and DUX Trademarks." (Answer ¶¶ 162, 184.)

**B. Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's claim for false advertising is denied.**

Counterclaim Defendant argues that the Court should dismiss STM's claim for false advertising under 15 U.S.C. § 1125(a)(1)(B) because STM failed to allege facts indicating that Counterclaim Defendant made a false or misleading statement; specifically, Counterclaim Defendant posits that STM did not allege that Counterclaim Defendant advertised that its products

came with the STM Warranty. (ECF No. 37, at 27-28). STM responds, however, that they have plausibly alleged a claim for false advertising because, as noted in their counterclaims, Counterclaim Defendant "used, and continued to use, the STM Trademarks to falsely advertise the products they sell, including, but not limited to, falsely advertising that the products they sell come with the STM Warranty when, in fact, they do not." (Answer ¶¶ 101-105.)

Section 43(a)(1)(B) of the Lanham Act "permits anyone who 'believes that he or she is likely to be damaged' to [bring a false advertising claim against] a person who 'uses in commerce any word ... or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Adweek LLC v. Carnyx Grp. Ltd.*, No. 1:18-CV-09923-GHW, 2019 WL 8405297, at *2 (S.D.N.Y. June 3, 2019) (quoting 15 U.S.C. § 1125(a)(1)(B)). For the reasons stated below, Plaintiff has sufficiently pled a claim for False Advertising under the Lanham Act.

To plead a claim for False Advertising under the Lanham Act, Plaintiff must allege standing, which is "an element of the cause of action under the statute." *Lexmark*, 134 S.Ct. at 1391 n.6. Plaintiff must also allege: "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *Sussman–Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 269 (E.D.N.Y.2014).

### i.        *Standing and Injury*

The Supreme Court most recently examined the standing requirement for Lanham Act claims in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014). Under *Lexmark*, a claim for false advertising brought under the Lanham Act must first fall into the

"zone of interests" the Lanham Act protects, meaning that a claimant must allege "injury to a commercial interest in reputation or sales." *Lexmark*, 134 S.Ct. at 1390. Second, the claim must be "proximately caused" by a violation of the statute; the Court noted that proximate cause requires that the economic or reputational injury "flow[s] directly from the deception wrought by the defendant's adverting," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 134 S.Ct. at 1377. It follows that a Lanham Act claimant's injury is proximately caused even "where a third party, and not the plaintiff ... relied on it." *Lexmark*, 134 S.Ct. at 1391 (quotation marks omitted). Likewise, the fact that a step of "consumer[ ] deception" intervenes between the defendant's misrepresentation and the claimant's injury is "not fatal to the proximate cause showing the statute requires," presuming the claimant alleges there was no "discontinuity" between injury to direct and indirect victims. *See Lexmark*. 134 S.Ct. at 1382.

Here, Counterclaim Plaintiff has sufficiently alleged standing, and that it was damaged, for purposes of Counterclaim Defendant's motion. Counterclaim Plaintiff alleges, for instance, that Counterclaim Defendant's advertisement that the Products include the STM Warranty misleads consumers because the Products do not actually include this warranty. (Answer ¶¶ 95-116.) Counterclaim Plaintiff reasons that this purportedly false advertisement "is likely to cause confusion, cause mistake, or deceive because it suggests that the products Counterclaim Defendants offer for sale are sponsored, authorized, or otherwise connected with STM when, in fact, they are not." (*Id.*) According to Counterclaim Plaintiff, this deception damages its "business, goodwill reputation, and profits." (*Id.*) Thus, Counterclaim Plaintiff has articulated an economic or reputational injury that flows directly from Counterclaim Defendant's purportedly false advertisement that the Products include the STM Warranty.

ii.     ***False or Misleading Statement and Materiality***

31

To plead a false or misleading statement, a claim must raise a plausible inference that the defendant's false advertising is either "literally false" or "likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir.2010). Here, as indicated *supra*, Counterclaim Plaintiff advances a claim of literal falsity— that the Products do not include the STM Warranty, despite Counterclaim Defendant's advertisement that they include it.

A claim based on literal falseness "is best supported by comparing the statement itself with the reality it purports to describe." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir.1999). Under the "false by necessary implication" doctrine, "a district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context" and find literal falsity where "the words or images, considered in context, necessarily imply a false message." *Time Warner*, 497 F.3d at 158 (internal quotation marks omitted). Thus, even where "no combination of words" on the page is untrue, a message can be "literally false" if the clear meaning of the statement, considered in context, is false. *Id.* at 154–55. To be literally false, however, the message must be unambiguous; if the representation "is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false" and the advertisement is actionable under the Lanham Act only upon a showing of actual consumer confusion. *Id.* at 158. When a court finds that an advertisement is literally false, it is unnecessary to rely on extrinsic evidence of consumer deception or confusion. *Id.* at 153. Additionally, "[o]nce it is determined that a statement is false, it is presumed to be material." *Telebrands Corp. v. E. Mishan & Sons*, No. 97 Civ. 1414(RPP), 1997 WL 232595, at *22 (S.D.N.Y. May 7, 1997).

As suggested *supra*, Counterclaim Plaintiff has sufficiently alleged literal falseness (and thereby materiality). Counterclaim Plaintiff, for instance, alleges that Counterclaim Defendant "advertise[s] that the products they sell bearing the STM Trademarks come with the STM

Warranty," as their "product listings specifically state that they come with the STM Warranty"; however, these products  purportedly do not come with this warranty because they are sold by an unauthorized seller (i.e., Counterclaim Defendant), and "products bearing the STM Trademarks that are sold by unauthorized sellers who do not comply with STM's quality controls do not come with the STM warranty." (Answer ¶ 106.) Thus, Counterclaim Plaintiff alleges that Counterclaim Defendants advertise products bearing Counterclaim Plaintiff's Trademarks with a plainly false statement— that these products contain the STM Warranty.

### iii.    Commercial Advertising or Promotion and Interstate Commerce

A statement constitutes commercial advertising or promotion if it is: "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004).

Here, the alleged statement underlying Counterclaim Plaintiff's false advertising claim— that the Products include the STM Warranty—is clearly commercial speech that was made in interstate commerce and intended to induce consumers into buying the Products. This allegedly false statement, for instance, is part of a product listing on Amazon, a leading online marketplace used throughout the United States. (Answer ¶ 106.) Therefore, this "unambiguous" statement is specifically intended to reach as large a portion of consumers as possible who live across the United States and are looking to purchase the types of products STM sells. *See Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 158 (2d Cir.2007) ("To be literally false, the message must be unambiguous…"); *EventMedia Int'l, Inc. v. Time Inc.*, 1992–2 Trade Cas. (CCH) ¶ 70,029 at 69,055, 1992 WL 321629, at *4, 1992 U.S. Dist. LEXIS 16385, at *8 (S.D.N.Y. Oct. 26, 1992)

("only commercial speech that a competitor employs for the express purpose of influencing consumers to buy the competitor's goods or services is actionable under section 43(a)"); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1534 (S.D.N.Y. 1994) (noting that the Lanham "Act's reach is broader than merely the "classic advertising campaign").

In sum, Counterclaim Plaintiff has sufficiently stated a claim for false advertising under the Lanham Act, as it has plausibly alleged each of the requisite elements for this claim. Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's false advertising claim is, therefore, denied.

**C. Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's claim for trademark dilution is granted.**

Counterclaim Defendant moves to dismiss Counterclaim Plaintiff's claim for trademark dilution on the basis that Counterclaim Plaintiff's STM Trademarks are not sufficiently famous to support a claim under the Trade Dilution Revision Act ("TDRA"). (ECF No. 37, at 24-25.) However, Counterclaim Plaintiff argues that it has adequately alleged that its Trademarks are famous and that the actions of Counterclaim Defendant "blurred" and "tarnished" its Trademarks. (ECF No. 40, at 23-25.)

The TDRA, 15 U.S.C. section 1125(c), provides that:

the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by

tarnishment of the famous mark, regardless of the presence or absence of actual or

likely confusion, of competition, or of actual economic injury.

15 U.S.C.A. § 1125(c) (Westlaw current through P.L. 117-166).

Therefore, "to prevail on a claim under the TDRA, a plaintiff must establish that: (1) the senior mark is famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's use of the junior mark began after the senior mark became famous; and (4) a likelihood of dilution." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (citation omitted). "The element of fame is the key ingredient because, among the various prerequisites to a dilution claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the TDRA." *GMA Accessories, Inc. v. Croscill, Inc.*, No. 06-CV-6236-GEL, 2008 WL 591803, at *10 (S.D.N.Y. Mar. 3, 2008) (quoting S*avin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004)) (internal alterations omitted). Specifically, the TDRA provides that:

> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C.A. § 1125(c)(2) (Westlaw current through P.L. 117-166) (emphasis added).

Courts in this district have consistently construed the fame requirement to impose a heavy burden on parties seeking to assert a trademark dilution claim. "Only trademarks that enjoy such broad renown as to at least approach (if not attain) the status of 'household names' may qualify as famous brands under federal law." *Schutte Bagclosures Inc. v. Kwik Lok Corporation*, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016) (collecting cases). "[A]s courts have noted, the inclusion in the TDRA of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, *i.e.*[,] fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" *Luv N' Care, Ltd. v. Regent Baby Products Corp.*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (quoting *Dan-Foam A/S v. Brand Named Beds*, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007)). Indeed, "[o]ne of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Id.* (quotation and citation omitted). Other brands that have been considered sufficiently famous to support a claim under the TDRA include Nike and Mattel's Hot Wheels. *See Nike, Inc. v. Nikepal Int'l, Inc.*,

36

No. 05-CV-1468-GEB-JFM, 2007 WL 2782030, at *5-6 (E.D. Cal. Sept. 18, 2007) (Nike*); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008) (Hot Wheels).

Counterclaim Plaintiff has not plausibly alleged that the STM Trademarks are famous to the extent that they approach the status of "household names." *See Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 430 (S.D.N.Y. 2022). Indeed, Counterclaim Plaintiff offers only spare, conclusory allegations that the STM Trademarks "are widely recognized by the general consuming public of the United States" and "STM has expended substantial time, effort, money, and resources advertising and promoted STM Products with the STM trademark." (Answer ¶¶ 12, 14). These assertions of fame, which Counterclaim Plaintiff fails to support with any factual allegations concerning, *inter alia*, its advertising budget, similarity of fame to marks that courts have considered famous in the TDRA context, and the amount of sales of goods offered under the mark, are plainly insufficient to support a claim for trademark dilution under the TDRA. *See Walker Wear LLC*, 624 F. Supp. 3d at 431 (noting that allegations that Plaintiff "has invested substantial time and money in the [M]arks" and that clothing items featuring the Marks remain "best-sellers" for Plaintiff, "are, without more, conclusions, which are not a proper factual basis for a finding of fame"); *see also Bd. Of Regents, Univ. of Tex. Sys. v. KST Elec.*, Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (determining that a logo associated with the University of Texas football team was not famous, despite its frequent, high-profile appearances on national television); *Luv N' Care*, 841 F. Supp. 2d at 757-58 (noting that the inclusion of language limiting fame to brands recognized by the general consuming public "was intended to reject dilution claims based on niche fame"); *Heller Inc. v. Design Within Reach, Inc.*, No. 09 CIV 1909 (JGK), 2009 WL 2486054, at *4

(S.D.N.Y. Aug. 14, 2009) (noting that the plaintiff's failure to "include any information about the [mark]'s advertising budget" supported a finding that the mark was not famous).

Thus, Counterclaim Defendant's motion to dismiss Counterclaim Plaintiff's claim for trademark dilution is granted, as Counterclaim Plaintiff has failed to plausibly allege that the STM Trademarks are sufficiently famous to support this claim under the TDRA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Lienau's motion to dismiss Plaintiff's claims for: (1) defamation; (2) tortious interference with prospective business relations; (3) a declaratory judgment of non-infringement; and (4) common law unfair competition, and thereby dismisses all of Plaintiff's claims against Defendant Lienau. However, the Court DENIES Defendant Lienau's request to file an anti-SLAPP counterclaim against Plaintiff.

The Court also GRANTS Plaintiff's motion to dismiss Defendant STM's counterclaims for trademark infringement under New York state common law and trademark dilution.

Yet, the Court DENIES Plaintiff's motion to dismiss Defendant STM's counterclaims for: (1) trademark infringement under federal law; (2) false advertising; and (3) unfair competition.

As Plaintiff's Amended Complaint, and Defendant's counterclaims, were the first complaint and counterclaims for which motion practice occurred, the foregoing claims that are deemed dismissed without prejudice and the parties are granted leave to file amended pleadings, as outlined below.

Specifically, Plaintiff is granted leave to file a Second Amended Complaint by October 18, 2023, consistent with this Order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the Amended Complaint, and so any claims that they wish to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file a Second Amended

Complaint, all Defendants in this action are directed to answer or otherwise respond by November 17, 2023. For the avoidance of doubt, Defendant STM may include amended counterclaims for trademark infringement under New York state common law and trademark dilution in its Answer and counterclaims, as these counterclaims are dismissed without prejudice. However, if Plaintiff fails to file a Second Amended Complaint, or Defendant STM fails to file amended counterclaims, within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

Finally, as Plaintiff's motion to dismiss was denied as to Defendant STM's counterclaims for: (1) trademark infringement under federal law; (2) false advertising; and (3) unfair competition, Plaintiff is directed to file an answer, or otherwise respond, to these counterclaims by December 18, 2023, following the filing of Defendant STM's Answer and counterclaims by November 17, 2023.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 36 and 43.

Dated: September 18, 2023
　　　　White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE