### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CDC NEWBURGH INC., <br><br> Plaintiff, <br><br> v. <br><br> STM BAGS, LLC and LIENAU SALES AND MARKETING, LLC (d/b/a LIENAU), <br><br> Defendants. | Case No: 7:22-cv-1597-NSR |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF SEPTEMBER 18, 2023 OPINION & ORDER

Jason B. Lattimore
**The Law Office of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Jason@LattimoreLaw.com

*Counsel for Plaintiff/Counterclaim-Defendant CDC Newburgh Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTS & PROCEDURAL HISTORY .........................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE LEGAL STANDARD. .............................................................................................2

    II.    THE COURT ERRED IN DISMISSING PLAINTIFF'S DEFAMATION CLAIM. ..........................................................................................................................2

        A.    The Court Should Not Have Considered the Incomplete Documents Submitted as Evidence of the Statements at Issue. ...................2

        B.    Even Considering the Incomplete Documents Lienau Submitted, the Court Overlooked Key Facts Precluding Dismissal of Plaintiff's Defamation Claim. .........................................................................6

            1.    Incomplete Versions of the Report Contents, Viewed Out of Context, Could Not Properly Support Dismissal Under Controlling Authority. .........................................................................6

            2.    The Court Overlooked that the Statements Lienau Mischaracterized as "The Reports" Imply that they are Based on Facts Known to Lienau But Not Disclosed to Amazon. ......................................................................................................9

    III.    THE COURT SHOULD EITHER VACATE THAT PORTION OF ITS ORDER DISMISSING PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM OR GRANT RECONSIDERATION. .....................................................................12

CONCLUSION .............................................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Eminah Properties LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593 (E.D.N.Y. 2021) ...... 12

*Fams. for Freedom v. U.S. Customs & Border Prot.*, No. 10 CIV. 2705 SAS, 2011 WL 4599592 (S.D.N.Y. Sept. 30, 2011) ................................................................................................ 2

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ............................................................................. 3

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000) ......................................... 7, 9

*Floyd v. City of New York*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011) ............................................... 2

*Global Supplies NY, Inc. v. Electrolux Home Products.*, 21-674, 2022 U.S. App. LEXIS 7108, 2022 WL 815795 (2d Cir. 2022) .............................................................................. 13

*Grant v. County of Erie*, 542 F. App'x 21 (2d Cir. 2013) .......................................................... 13

*Gross v. New York Times Co.*, 82 N.Y.2d 146, 623 N.E.2d 1163, 603 N.Y.S.2d 813 (N.Y. 1993) ................................................................................................................... 3, 9

*Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281 (E.D.N.Y. 2022) ..... 13, 14

*See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 501 N.E.2d 550, 508 N.Y.S.2d 901 (N.Y. 1986) .... 7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................................... 2

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 501 N.E.2d 550, 508 N.Y.S.2d 901 (N.Y. 1986) ........... 3

*Thomas v. Scully*, 943 F.2d 259 (2d Cir. 1991) ......................................................................... 13

*Wachtler v. County of Herkimer*, 35 F.3d 77 (2d Cir. 1994) .......................................................... 13

*Williams v. Cnty. of Nassau*, 779 F. Supp. 2d 276 (E.D.N.Y. 2011), *aff'd*, 581 F. App'x 56

  (2d Cir. 2014) ............................................................................................................................. 2

## PRELIMINARY STATEMENT

Plaintiff, CDC Newburgh Inc. ("Plaintiff"), submits this memorandum of law in support of its motion to for reconsideration of the portion of the Court's September 18, 2023 Opinion & Order dismissing Plaintiff's claims for defamation and tortious interference.

For the reasons set forth in the following sections, Plaintiff respectfully submits that the Court overlooked key facts and controlling legal authority that would have led the Court to deny dismissal with respect to those claims had the Court been cognizant of them. Plaintiff further submits that it was not afforded the requisite notice and opportunity to be heard with respect to the grounds on which the Court dismissed the claim for tortious interference and, therefore, to the extent reconsideration is not granted with respect to that claim, the Court should vacate its ruling under controlling authority.

## FACTS & PROCEDURAL HISTORY

The facts and procedural history of this matter are reflected in the pleadings and prior submissions to the Court, and therefore are not repeated here. The materials in the record pertinent to this motion include:

1. Plaintiff's First Amended Complaint (ECF No. 29) ("FAC");

2. Defendant Lienau Sales & Marketing, LLC's ("Lienau") Brief in support of its Motion to Dismiss (ECF No. 44) ("MTD Brief");

3. The declaration of Lienau employee Temple Powers (ECF No. 45) ("Powers Decl.");

4. Plaintiff's Brief in opposition to the motion (ECF No. 47) ("Opposition Brief");

5. The declaration of Jason B. Lattimore (ECF No. 48) ("Lattimore Decl.");

6. Lienau's Reply Brief (ECF No. 49) ("Reply"); and

7. The Court's September 18, 2023 Opinion & Order (ECF No. 56) ("Opinion").

# ARGUMENT

## I. The Legal Standard.

Reconsideration may be granted where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration may also be granted to correct a clear error or prevent manifest injustice." *Fams. for Freedom v. U.S. Customs & Border Prot.*, No. 10 CIV. 2705 SAS, 2011 WL 4599592, at *2 (S.D.N.Y. Sept. 30, 2011) (internal quotation omitted).

"[I]n this Circuit, the law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Floyd v. City of New York*, 813 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (internal quotation omitted). Ultimately, "[a] district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal." *Williams v. Cnty. of Nassau*, 779 F. Supp. 2d 276, 280 (E.D.N.Y. 2011), *aff'd*, 581 F. App'x 56 (2d Cir. 2014); see also Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

## II. The Court Erred In Dismissing Plaintiff's Defamation Claim.

### A. The Court Should Not Have Considered the Incomplete Documents Submitted as Evidence of the Statements at Issue.

The Court mistook the documents Lienau provided to the Court as Exhibits 1-10 of the Powers Decl. as constituting the complete "Reports" submitted to Amazon when, in fact, they were only excerpts of the submissions. That misperception was due, ostensibly, to Lienau's

2

mischaracterizations regarding the nature of the documents. Regardless, because the documents submitted by Lienau did not reflect the complete submissions to Amazon, the Court could not properly consider those documents under controlling authority.

The evaluation of whether a statement is susceptible to defamatory connotation is highly context specific and requires evaluation of the complete communication. *See Gross v. New York Times Co.*, 82 N.Y.2d 146, 155, 623 N.E.2d 1163, 1169, 603 N.Y.S.2d 813, 819 (N.Y. 1993) ("[T]he courts are **obliged to consider the communication as a whole**, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact." (emphasis added)) ; *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290, 501 N.E.2d 550, 553, 508 N.Y.S.2d 901, 904 (N.Y. 1986) ("The essential task is to decide whether the words complained of, **considered in the context of the entire communication and of the circumstances in which they were spoken or written**, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." (emphasis added)).

Further, the Second Circuit has made clear that "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). The incomplete documents Lienau provided and misidentified to the Court, do not meet that standard.

The Court relied on the fact that "the employee of Defendant who submitted the Reports attested that the documents Defendant provided are true copies of the Reports she sent to Amazon" to support its decision to consider the documents in question. Opinion at 14. The Court further relied on the misperception that Plaintiff conceded it did not have knowledge of the contents of

3

the actual reports, which is not correct.  The employee's declaration (the Powers Decl.) also was not accurate and is justifiably disputed.

The Court appears to have misunderstood Plaintiff's arguments as conceding Plaintiff did not have actual knowledge of the ten reports, as the Court indicated on page 13 of the Opinion. Plaintiff conceded **only that it did not have the actual reports in making the point that Lienau did not provide those reports to the Court**. See Opposition Brief at 7.  Plaintiff pled and argued that it had Amazon's notices specifying what Lienau reported. *See* FAC ¶¶ 24, 39; Opposition Brief at 11.  And Plaintiff attached report templates as Exhibits A and B to the Lattimore Decl. What the templates show is that the documents attached to the Powers Declaration are not the reports submitted to Amazon and, instead, **merely contain excerpts of some of the information submitted**.

The Amazon notices to Plaintiff indicated Lienau reported the items to be "counterfeit" (See FAC ¶ 39 ("We received a report from a rights owner that you are listing counterfeit products"); Powers Decl. Ex. 11), which is consistent with the stand-alone statement Lienau made to Amazon (in the online counterfeit reporting form) that the products at issue infringe STM's trademarks because they are "counterfeit" (see Lattimore Decl. Ex. B).  As demonstrated by Exhibit B to the Lattimore Declaration, that statement was made separately from the "additional information" Lienau mischaracterized as "the Reports."

Exhibits A and B to the Lattimore Declaration further reflect that there were additional representations in Amazon's counterfeit reporting form that were not reflected in the excerpts Lienau submitted to the Court.  For example, a full counterfeiting report on the non-Brand Registry reporting form requires a certification that the information provided is "correct and accurate."  *See*

4

Lattimore Decl. Ex. A.[1]  Under the cited controlling authority, the Court was required to consider corresponding statements of that sort in the Brand Registry version of the reporting template, and other statements or electronic dialogue boxes in the form, in order to reach fully informed conclusions regarding how the statements at issue should be construed in context.  The court did not have the complete set of statements Lienau made to Amazon in the reports and could not view those statements in context because Lienau did not provide the full reports to the Court.

In the absence of the complete reports, it was not appropriate for the Court to consider the excerpts Lienau submitted, much less make determinations regarding how those excerpts should be interpreted.  It was Lienau's burden to provide the complete report – or at least all of the information submitted in the report – if it wanted to provide the Court with proper grounds for considering it.  Because Lienau did not do so, the Court should not have considered the incomplete information Lienau did provide.

In footnote 3 of the Opinion, the Court wrote that Plaintiff's suggestion Lienau does not have access to the reports it submitted to Amazon "strains credulity."  It is not clear what information or perception about Amazon's online software interface the Court relied on to reach that conclusion but, respectfully, the Court overlooked facts demonstrating that the assertion is both plausible and ostensibly accurate.

Counterfeiting reports are submitted online on the Amazon.com platform.  *See* Reply at 1; Lattimore Decl. ¶ 4, Exs A, B.  They are not stored on an Amazon user's hard drive – they exist on Amazon's servers.  Lienau has access to a "History of [its] reported violations" (see Powers

---

[1] As explained in the Opposition Brief at 4, there are two avenues on Amazon.com for reporting counterfeit items: the online form available through the general reporting interface and the online form available through Amazon's Brand Registry.  There are fact issues regarding the full contents of the Brand Registry form, which Lienau did not provide to the Court.

5

Decl. Exs 1-10), but that history provides only summary information, not the complete set of statements and representations submitted to Amazon in the reports, which must be considered under controlling law. *See* Opposition Brief at 6-7. Even on their face, the documents are not the actual reports. *See* Powers Decl. Exs. 1-10. The fact that Lienau did not even attempt to rebut Plaintiff's assertion those documents were not the complete reports (see Reply at *passim*), and instead chose to ignore and mischaracterize Plaintiff's arguments, further corroborates Plaintiff's assertion that the Court did not have the complete reports before it.

The critical point is that that Lienau did not present the complete and accurate set of statements included in the reports to the Court. Because the documents presented are not the complete reports, they should not have been considered.

Finally, even if the suggestion that Lienau did not have the actual reports did strain credulity, which it did not, it did not break it. The issue concerning what representations and statements the complete reports contained, at its core, is a disputed fact issue – and a crucial one – that precludes consideration of the documents. Plaintiff has not even had a chance to question Lienau's witnesses regarding the matter, much less develop a factual record sufficient to conclusively resolve the issue.

Respectfully, the Court was misled into considering the documents it treated as the "Reports" and, under the circumstances, should not have considered those documents.

  **B.**  **Even Considering the Incomplete Documents Lienau Submitted, the Court Overlooked Key Facts Precluding Dismissal of Plaintiff's Defamation Claim.**

    **1. Incomplete Versions of the Report Contents, Viewed Out of Context, Could Not Properly Support Dismissal Under Controlling Authority.**

The same reasons precluding consideration of the summary documents attached as Exhibits 1-10 of the Powers Decl. as the "Reports" also rendered premature the Court's resolution of the issue of whether the "additional information" could be considered pure opinion. As discussed

6

above, controlling authority required the Court to consider each entire report Lienau made to Amazon in full context. The misperception that the "additional information" constituted the full reports led the court to decide the issue on an incomplete record – one that could not properly be developed in the absence of discovery.

Contextual issues not considered by the Court, and that require fact discovery, include (1) the full contents of the reports; (2) reasonable expectations regarding how the statements submitted by Lienau would be received and interpreted in light of Amazon policy (see Opposition Br. at 4-5, 10; Lattimore Decl. ¶ 6, Ex. D); (3) how Amazon receives and processes reports of counterfeiting (see FAC ¶ 12); and (4) Lienau's understanding, as a group of former Amazon employees, regarding how Amazon would understand its statements (see Opposition Brief at 10; FAC ¶ 20).

Items 3 and 4 warrant further discussion and illustrate why the Court should not have rendered its ruling on the record before it. The question of how Amazon receives and processes these reports, what information it considers in acting on the reports, and Lienau's knowledge regarding that issue are central to the determination of whether the reports should be deemed pure opinion. If Lienau submitted its reports with actual or constructive knowledge that Amazon would treat the entirety of the communication as an assertion of counterfeiting as a matter of fact rather than opinion, then taken in context the statements at issue could not justly or properly be deemed pure opinion. *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 293, 501 N.E.2d 550, 555, 508 N.Y.S.2d 901, 906 (N.Y. 1986) (how a statement would be expected to be understood in context is key to making the distinction between fact and opinion); *accord Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153-54 (2d Cir. 2000).

7

The Court overlooked facts in the record indicating these open contextual issues existed.[2] Plaintiff pled that merely reporting an item as "counterfeit" on an Amazon rights violation form will result in Amazon's removing the item from the Amazon.com website, and that Amazon will not honor reports based solely on the fact that items were not obtained through authorized channels. FAC ¶¶ 12, 13, 15, 39. Plaintiff further pled that Lienau touts itself as being comprised of former Amazon employees who are regularly in contact with Amazon. *See* FAC at ¶ 20.

The undisputed factual record on the motion to dismiss was that Lienau made reports which included stand-alone statements that the items at issue were "counterfeit." The reporting screenshots attached to the Lattimore Decl. and the records attached to the Powers Decl. confirm as much:

| Powers Declaration Exs. 1-10 | Lattimore Declaration Ex. B |
|---|---|
| amazon Manage Protect Monitor S[...] <br> Home > Monitor: Submission history > Con[...] <br> **Complaint details**<sup>BETA</sup> <br> Status: ⚠ Partially accepted <br> Date submitted: Feb 15, 2022, 11:33 AM <br> Amazon store: 🇺🇸 amazon.com <br> **Infringement type:** Trademark: Counterfeit <br> Brand: STM <br> Trademark: 5410527 <br> Contact name: Temple Powers | amazon Manage Protect Monitor Support <br> **Report a violation** Learn how to best use this tool <br> **Report summary** <br> Issue type: Trademark infringement <br> Amazon store: 🇺🇸 amazon.com <br> Content type(s) selected <br>    Complete ASIN(s): 1 on 1 ASIN(s) <br> **Additional Information** <br> What best describes your issue? <br> ○ A product detail page is unlawfully using my trademark (e.g. in pro[...] <br> ○ A product or its packaging has my trademark on it. <br> ● **A product is counterfeit** |

---

[2] Plaintiff is not just speculating regarding these issues. Plaintiff will detail in its amended pleading that the additional comments section of counterfeiting reports does not factor into Amazon's understanding of the reports when submitted, nor does it alter Amazon's automatic takedown response – the only statement that is pertinent to Amazon's processing and acting upon such reports is the stand-alone statement that the item is "counterfeit." As former Amazon insiders, Lienau would have, or at least should have, known this.

Lienau's assertion that it included in the reports the additional statements reflected in Exhibits 1-10 of the Powers Decl. raises several issues concerning the workings of Amazon, including the question of what about Amazon's processing of such reports caused it to understand the reports as reports of counterfeiting in-fact (see FAC ¶ 39; Powers Decl. Ex. 11), and whether Lienau knew Amazon would do so.

These allegations, and the dispute over the significance of the additional statements Lienau mischaracterized as "the Reports" (Opposition Brief at 9-10), reflect that the Court lacked key contextual facts regarding how Amazon would reasonably be expected to understand the reports Lienau submitted and Lienau's knowledge of how Amazon would view the reports.  The presence of these open issues was overlooked by the Court and should have precluded dismissal had the Court perceived them.

> **2. The Court Overlooked that the Statements Lienau Mischaracterized as "The Reports" Imply that they are Based on Facts Known to Lienau But Not Disclosed to Amazon.**

Focusing, for the sake of argument, solely on the statements Lienau mischaracterized as "the Reports," the Court overlooked that, in the context in which Lienau submitted its reports, it was reasonable to view them as assertions of fact or mixed opinion, not pure opinion.  In a fact-laden context, such as a report of counterfeiting, "the reasonable reader would be 'less skeptical and more willing to conclude that [a statement] stated or implied facts.'" *Flamm*, 201 F.3d at 154 (quoting *Gross*, 82 N.Y.2d at 156, 603 N.Y.S.2d at 819, 623 N.E.2d at 1169).

The Court appears to have misconstrued Plaintiff's argument regarding why the "additional information" statements Lienau submitted were, at best, mixed opinions.  The Court interpreted the argument as follows:

> Plaintiff, for instance, presents the statements "*we conclude* this product is counterfeit" (emphasis added) and "*we can safely assume* they are selling counterfeit products" (emphasis added) as inferences that arise from the

9

> information that STM only authorized Sportique and CaseMotions to sell their products on Amazon, that Plaintiff did not purchase their products from STM directly, and that Defendant was unable to locate data indicating that Plaintiff acquired the Products from a legitimate source.  See *Gross*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d at 1168 ("a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture").  Thus, the alleged defamatory statements are pure opinions and not actionable, rather than facts or mixed opinions.

Opinion at 14-15.  That is not the argument Plaintiff made.  Rather, Plaintiff argued those statements, in context, imply that STM was in possession of facts justifying the conclusion that its products could not be purchased through other than authorized channels and, therefore, Plaintiff's products were counterfeit (Opposition Brief at 10).

In its Opinion, the Court indicated there were two versions of the "additional information" statements.  That conclusion appears to stem from misleading information Lienau provided to the Court.  *See* Opinion at 14; MTD Brief at 11.  As reflected in Exhibits 1-10 of the Powers Decl., there are *eight* different versions of the ten (total) statements.  Each of the statements is set forth and addressed below.[3]

- **Powers Declaration Exhibit 1:** "Please note only CaseMotions and Sportique are authorized by STM to sell on Amazon. These sellers are not authorized *nor are they buying direct from STM* therefore we conclude this product is counterfeit."

This statement reasonably implies that Lienau was aware of facts supporting the conclusion that genuine STM products could only be acquired directly from STM (which is false) and, therefore, the item at issue was counterfeit (also false).

- **Powers Declaration Exhibit 2:** "Please know STM has authorized only Sportique and CaseMotions to sell on Amazon.com outside of STM selling direct. *STM has double checked their records and have no data to support this seller acquired STM product through a legitimate channel therefore we can safely assume* they are selling counterfeit product. Please remove this seller offer. Thank you!"

---

[3] Emphasis is added in the bullet-pointed quotes that follow.

- **Powers Declaration Exhibit 3:** "Please be aware the only parties authorized by STM to sell on Amazon is Sportique and CaseMotions. *STM has checked their records* and *cannot locate any documentation supporting this sellers legitimate purchase of STM product therefore we can safely assume* this product is counterfeit. Please remove this seller offer. Thank you!"

- **Powers Declaration Exhibit 4:** "Please be aware STM has only authorized Sportique and CaseMotions to sell on Amazon. *STM has checked their records and not see a party resembling this seller that has purchased STM product legitimately therefore we can safely assume* this product is counterfeit. Please remove this seller offer. Thank you!"

- **Powers Declaration Exhibit 5:** "Please be aware STM has authorized only Sportique and CaseMotions to sell on Amazon. *After double checking our records we have no evidence this seller purchased their STM inventory legitimately therefore we can safely assume* this product is counterfeit. Please remove this seller offer. Thanks!"

By indicating STM "checked" or "double checked" its records, the statements in Exhibits 2 through 5 of the Powers declaration further reinforce the notion that Lienau was in possession of undisclosed facts supporting the conclusion that the items at issue were counterfeit because they could not have been purchased through channels unknown to STM/Lienau.

The portion of the statement indicating "it is safe to assume" similarly suggests that Lienau possessed such facts justifying the conclusion the items were counterfeit as a matter of fact. A safe assumption is one that is not based on first-hand observation but is nevertheless represented as accurate because it is based on other facts that render it reliable. Here, the reliability of the assumption the products were counterfeit necessarily must be grounded in the notion that legitimate STM products were not available through other than authorized sources – a false implication of fact conveyed by the statement.

- **Powers Declaration Exhibit 6:** "Please note STM has authorized only Sportique and CaseMotions to sell on Amazon. *After checking our records we cannot find any evidence this seller legitimately purchased product directly from us or an authorized*

11

- *distributor therefore we can safely assume* this is counterfeit. Please remove this seller offer. Thank you!"

- **Powers Declaration Exhibit 7:** "STM has authorized only Sportique and CaseMotions to sell on Amazon. *After checking our records and authorized distribution partners we have no record of selling STM branded products to this seller therefore we can safely assume* this is counterfeit. Please remove this seller offer. Thank you!"

- **Powers Declaration Exhibits 8-10:** "STM has authorized ONLY Sportique and CaseMotions to sell on Amazon. *After checking our records and reaching out to authorized distribution partners we cannot locate any evidence this seller legitimately purchased this product therefore we can safely assume* it's counterfeit. Please remove this seller offer. Thanks for your support!"

The statements in Exhibits 6 through 10 are similar to the statements in Exhibits 2 through 5, but add that Lienau reached out to authorized distributors, which further suggests Lienau was in possession of facts supporting the notion that the items could only be acquired through authorized channels and the ancillary notion that Lienau had confirmed that only its current authorized distribution partners were in possession of genuine STM inventory (another false implication).

The Court overlooked these facts, which respectfully warranted denial of Lienau's motion to dismiss Plaintiff's defamation claim.

### III. The Court Should Either Vacate that Portion of Its Order Dismissing Plaintiff's Tortious Interference Claim or Grant Reconsideration.

The Court relied on the holding in *Eminah Properties LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 607 (E.D.N.Y. 2021) in dismissing Plaintiff's tortious interference claim. Following the reasoning in *Eminah*, the Court in this case opined that "Plaintiff's claim rests entirely on its allegation that Amazon removed the listings that Defendant reported as infringing on their Trademarks. (AC ¶¶ 38, 42.)," and that mere allegations of suspension or removal of products from Amazon does not rise to the level of interference with the business relationship.

12

Opinion at 18. The Court therefore concluded that Plaintiff had not pled "harm to the underlying business relationship with the Platform." *Id.*

The Court raised these arguments for dismissal *sua sponte*. They were not included in Lienau's briefing. *See* MTD Brief and Reply at *passim*. This, alone, warrants the Court's vacating its order with respect to this claim. *See Grant v. County of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) (dismissal on grounds not raised by the moving party, and without oral argument, is improper unless the nonmoving party is provided "notice of the grounds for dismissal and an opportunity to be heard") (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)). No such notice and opportunity to be heard was provided in this case.[4] The first time Plaintiff became aware of these grounds was in the Court's Opinion. The Court should therefore vacate its Order.

Alternatively, the Court should grant reconsideration with respect to the tortious interference claim. Reconsideration is warranted (1) in light of the Second Circuit's opinion in *Global Supplies NY, Inc. v. Electrolux Home Products.*, 21-674, 2022 U.S. App. LEXIS 7108, *6, 2022 WL 815795 (2d Cir. 2022) and the opinion in *Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281 (E.D.N.Y. 2022); and (2) in light of overlooked allegations in the First Amended Complaint demonstrating Plaintiff pled economic harm to the business relationship.

*Eminah* was decided prior to the Second Circuit's ruling in *Global Supplies* (which also involved a claim of tortious interference based on false infringement reports to Amazon). After *Global Supplies* was decided, the Eastern District of New York, deciding the same issue the Court addressed here, held that allegations of economic injury stemming from product removal by

---

[4] The Second Circuit vacated the district court's order of dismissal in *Grant*. *Id.*

Amazon (in response to reports of intellectual property infringement) suffice to plead a claim for tortious interference. *Josie Maran*, 624 F. Supp. 3d at 294.  In reaching its holding, the Court wrote, regarding *Global Supplies*:

> [T]he Circuit's reasoning is not limited to scenarios in which there was termination of the business relationship; it can apply to any situation in which there was an "economic injury" that had a "specific effect" on a business relationship. *Id.* Here, Shefa claims that the Amazon Reports "directly and proximately caused disruption of Shefa's relationship and contract with Amazon," and "Shefa was damaged by the suspension of these listings by losing revenue related to Josie Maran Products." (Countercl. ¶¶ 115, 124.) **While temporary suspension may result in less harm to the relationship and associated revenues than termination, Shefa's claim asserts an "economic injury" resulting from even the temporary interference with its business relationship with Amazon.** (See Countercl. ¶¶ 116, 124.)

*Id*.

Plaintiff, here, pled more than just mere removal of products.  It pled economic injury due to Plaintiff's tortiously influencing Amazon to alter its relationship with Plaintiff.  *See* FAC ¶¶ 41, 44, 47-52.  Plaintiff pled that the reports caused Amazon not only to remove the products, but also to treat unfavorably Plaintiff's entire line of products by limiting their presentation to customers, all of which caused economic injury to Plaintiff.  *See* FAC ¶¶ 16, 52.  Given the presence of these allegations in the First Amended Complaint, and the legal authority cited above, Plaintiff's claim should not have been dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for reconsideration and reinstate Plaintiff's claims for defamation and tortious interference.

Date:  October 2, 2023                                              Respectfully submitted,

                                                                                    s/ Jason B. Lattimore

                        Jason B. Lattimore
                        THE LAW OFFICE OF
                        JASON B. LATTIMORE, ESQ.
                        55 Madison Avenue, Suite 400
                        Morristown, NJ 07960
                        Tel: (973) 998-7477
                        Jason@LattimoreLaw.com

                        *Counsel for Plaintiff/Counterclaim-*
                        *Defendant CDC Newburgh Inc.*